## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ARCHER WESTERN CONTRACTORS, LLC** | **CIVIL ACTION** |
| **VERSUS** | **NO. 22-5323** |
| **THE MCDONNEL GROUP, LLC** | **SECTION: D (5)** |

### ORDER AND REASONS

Before the Court is a Motion to Dismiss for Failure to Join a Required Party and Lack of Subject Matter Jurisdiction filed by the Defendant, The McDonnel Group, LLC.[1]  The Plaintiff, Archer Western Contractors, LLC, has filed a response in opposition to the Motion.[2]  The Defendant filed a Reply in support of its Motion.[3] After careful consideration of the parties' memoranda, the record, and the applicable law, the Court **DENIES** the Motion.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

This case concerns the alleged failure of Defendant The McDonnel Group, LLC ("TMG") to abide by certain agreements and commitments made in a Joint Venture Agreement with Plaintiff Archer Western Contractors, LLC ("AWC").  On May 2, 2011, TMG and AWC entered into a Joint Venture Agreement (the "Agreement") establishing the McDonnel Group, LLC/Archer Western Contractors, Ltd. Joint Venture (the "Joint Venture") for the purpose of submitting a bid and obtaining a contract for the construction of the Orleans Parish Sheriff's Office Inmate Processing Center/Templeman III & IV Replacement Administration building (the "Project")

---

[1] R. Doc. 29.
[2] R. Doc. 32.
[3] R. Doc. 38.

from the Law Enforcement Division of Orleans Parish, State of Louisiana (the "Owner").[4]  Not long thereafter, on July 28, 2011, the Joint Venture entered into a contract with the Owner to construct the Project for a sum of $144,929,000.00 (the "Contract").[5]

According to the terms of the Agreement, AWC and TMG are to share any profits and any losses accruing to the Joint Venture from performance of the Contract in accordance with their proportional interest in the Joint Venture; at the outset, AWC held a seventy percent share of the Joint Venture while TMG held the other thirty percent.[6]  The Agreement establishes that a party cannot "assign, transfer, pledge or hypothecate its interest . . . in the Joint Venture or in the Contract or in this Agreement or in any property or monies of the Joint Venture except with prior written consent of the other party[.]"[7]  AWC is designated as the Managing Party of the Joint Venture, giving AWC "charge and supervision over the timely and satisfactory performance of the Contract, subject, however, to the superior authority and control of the Executive Committee."[8]  The Executive Committee is also largely controlled by AWC; the representatives of each party on the Executive Committee have "a vote equal to his party's Proportionate Share."[9]

The Joint Venture's need for working capital to perform the Contract necessitates that TMG and AWC "shall" make certain capital contributions "in

---

[4] R. Doc. 42 at ¶¶ 19–20.
[5] *Id.* at ¶ 21.
[6] *Id.* at ¶ 22.
[7] *Id.* at ¶ 35 (Article 16).
[8] *Id.* at ¶ 26 (Article 5(a)).
[9] *Id.* at ¶ 28 (Article 4).

accordance with their proportionate share."[10]   Per the Agreement, the Managing Party, *i.e.*, AWC, determines the need for capital contributions and the date on which the capital is to be furnished to the Joint Venture.[11]   All working capital contributions are to be deposited in the Joint Venture bank account opened by AWC.[12]   Crucially, Article 7(e) of the Agreement provides that:

> Should any party (the "Defaulting Party") be unable or fail or neglect to contribute its Proportionate Share of the working capital within 7 calendar days after the date set for the contribution thereof by the Managing Party, the other Party (the "Non-Defaulting Party") may, at their option, pay the share of the Defaulting Party (the "Defaulting Party's Contribution").  If the Non-Defaulting Party pays all or part of the Defaulting Party's Contribution, such payments shall be deemed to be demand loans made by the Non-Defaulting Party to the Defaulting Party.   Such loans shall be immediately repayable by the Defaulting Party without notice and shall bear interest at a rate per annum equal to 3% above the Prime Lending Rate, determined on a day to day basis.[13]

In the event of a default by one party, the voting strength of the Executive Committee representatives of the non-defaulting party is "increased to the proportion that its actual contributions to working capital (including loans therefore to the Defaulting Party) bear to the total contribution made to working capital by the parties," while the strength of the defaulting party is decreased proportionally.[14]   Further, Article 15(e) of the Agreement specifies that the defaulting party must pay any legal

---

[10] *Id.* at ¶ 30 (Article 7(a)).
[11] *Id.*
[12] *Id.* at ¶ 32 (Article 8(a)).
[13] *Id.* at ¶ 31 (Article 7(e)).
[14] *Id.* at ¶ 25 (Article 7(f)(i)).

expenses required by the non-defaulting party "to protect their interests or defend any action arising out of the Defaulting Party's breach."[15]

As alleged by AWC, several disputes arose during the performance of the contract between the Joint Venture and the Owner.[16]  Although those disputes and accompanying litigation are not directly relevant here, AWC claims (and TMG does not dispute) that by May 2015, the Owner's "wrongful failure to properly compensate the [Joint Venture] created critical cash flow issues for the [Joint Venture]."[17]  These cash flow problems required the Joint Venture to obtain additional capital contributions from its constituent parties—AWC and TMG—in order to continue its work on the Project and to compensate subcontractors.[18]

It is at this point, May 2015, that the disputes within the Joint Venture relevant to the instant litigation started to take hold.  AWC claims that for the first time in May 2015, TMG indicated that it refused to contribute additional capital funding to the Joint Venture despite not denying that additional funding was necessary to complete the Project.[19]  Then, on September 3, 2015, AWC issued correspondence to TMG requesting additional capital contributions approved by the Executive Committee and identifying past failures of TMG to satisfy contribution requests.[20]  About two weeks later, on September 16, 2015, TMG responded to AWC that it refused to provide any additional capital funding.[21]  Again on December 2,

---

[15] *Id.* at ¶ 35 (Article 15(e)).
[16] *Id.* at ¶¶ 38–45.
[17] *Id.* at ¶ 46.
[18] *Id.* at ¶ 47.
[19] *Id.* at ¶¶ 48–49.
[20] *Id.* at ¶¶ 50–52.
[21] *Id.* at ¶ 54.

2015, during an Executive Committee meeting, TMG advised that it would not provide any further funding to the Joint Venture.[22]

On January 20, 2016, AWC sent correspondence to TMG advising TMG of its default on past-due capital contributions of $1,650,00.00 and that, pursuant to Article 7(e) of the Agreement, TMG's past-due contributions "will be deemed to be an on-demand loan made by [AWC] to [TMG] . . . immediately repayable by [TMG] with notice and shall bear interest at a rate per annum equal to 3% above the Prime Lending Rate, determined on a day to day basis."[23]  Throughout 2016, the Executive Committee continued to approve required capital contributions which TMG refused to pay.[24]  AWC advised TMG that TMG's increasingly large past-due amounts were deemed on-demand loans payable to AWC under the terms of the Agreement.[25]

This pattern of TMG refusing to contribute capital to the Joint Venture despite the decisions of the Executive Committee and AWC subsequently advising TMG that the past-due amounts would be deemed interest-bearing loans continued throughout 2017 and 2018 and beyond.[26]  TMG also failed to attend the weekly Joint Venture and Executive Committee meetings throughout this period.[27]  AWC again notified TMG on July 31, 2019 that as of July 11, 2019, AWC had loaned $4,092,144.63 to TMG, comprising "$3,194,250.00 in capital loans and $897,894.63 in interest."[28] AWC avers that as of the date of the filing of this lawsuit, "AWC has loaned TMG

---

[22] *Id.* at ¶ 55.
[23] *Id.* at ¶¶ 57–58.
[24] *Id.* at ¶¶ 61–65.
[25] *Id.* at ¶ 62.
[26] *Id.* at ¶¶ 67–71.
[27] *Id.* at ¶ 72.
[28] *Id.* at ¶ 73.

$6,096,407.00 comprised of $3,811,500.00 in capital loans and $2,284,907.00 in interest."[29]  Due to TMG's increasing indebtedness to AWC as a result of its default on the capital contributions, AWC's voting strength has increased in proportion to its contribution to total working capital.[30]  Likewise, TMG's voting strength has proportionally shrunk.[31]

Besides TMG's alleged failure to provide necessary capital contributions to the Joint Venture, AWC also alleges that TMG breached the Agreement by secretly entering into a separate settlement agreement with the Owner.[32]  AWC avers that on November 11, 2022, it first became aware of an April 29, 2022 document styled "Agreement of Compromise, Release, Assignment, and Settlement, Agreement" entered into by TMG and the Owner (the "Settlement Agreement") in which TMG purportedly assigned its interests in the Joint Venture's claims against the Owner to the Owner in exchange for a "final payment" of $2,700,000.00.[33]  The Settlement Agreement directs the Owner to send the "final payment" to The McDonnel Group, Inc. ("TMG, Inc.") and not to The McDonnel Group, LLC—the member of the Joint Venture and current Defendant—and not to the Joint Venture itself.[34]  AWC claims to have no prior knowledge of or relationship with TMG, Inc.[35]  AWC claims that neither the Joint Venture nor AWC approved the Settlement Agreement, as is

---

[29] *Id.* at ¶ 75.
[30] *Id.* at ¶ 76.
[31] *Id.* at ¶ 77.
[32] *Id.* at ¶ 80.
[33] *Id.* at ¶¶ 80–82.
[34] *Id.* at ¶¶ 83–86.
[35] *Id.* at ¶ 85.

required under Article 4(c)(vi) of the Agreement.[36]  The Settlement Agreement states that TMG "has a fiduciary duty to the [Joint Venture]" and that the Joint Venture "has NOT agreed to the settlement proposal."[37]

AWC filed the present lawsuit against TMG on December 16, 2022, alleging Breach of Contract in Count I, Breach of Fiduciary Duty in Count II, and Enrichment Without Cause in Count III.[38]  In Count I, AWC alleges that TMG breached the Joint Venture Agreement by (1) failing to provide necessary working capital contributions to the Joint Venture; (2) failing to pay back the $6,096,407.00 in loans to AWC, representing capital contributions which AWC paid due to TMG's default plus applicable interest; (3) failing to act in good faith in its participation in the Joint Venture Executive Committee by refusing to approve necessary requests for capital contributions and by refusing to attend and participate in Executive Committee meetings; (4) unilaterally assigning its interest in the Joint Venture's claims against the Owner to the Owner via the Settlement Agreement without the consent of either AWC or the Joint Venture; and (5) directing $2,700,000.00 in settlement funds from the Owner to TMG or TMG, Inc. otherwise due to the Joint Venture itself and the Joint Venture's subcontractors without the approval of either the Joint Venture or AWC.[39]  As to Count I, AWC seeks damages, interest, attorney's fees, and costs,

---

[36] *Id.* at ¶ 93.

[37] *Id.* at ¶¶ 91–92.

[38] R. Doc. 1. The Court ordered AWC to file an Amended Complaint properly alleging the citizenship information of the parties to ensure that the Court has subject-matter jurisdiction over this action. R. Doc. 4. AWC subsequently filed an Amended Complaint. R. Doc. 6. Several months later, AWC filed a Second Amended Complaint clarifying certain factual allegations made in its Amended Complaint. R. Doc. 42. The Court only considers the Second Amended Complaint here.

[39] R. Doc. 42 at ¶¶ 100–16.

including the repayment of the full amount of the monies deemed to be loaned by AWC to TMG.[40]

As for Count II, Breach of Fiduciary Duty, AWC alleges that TMG owes AWC a fiduciary duty as its sole other partner in the Joint Venture and that TMG breached that duty by acting in a manner contrary and prejudicial to AWC's interests, for many of the same reasons discussed above. Specifically, AWC contends that TMG breached its fiduciary duty to AWC by (1) failing to act in good faith in its participation in the Executive Committee; (2) failing to make the required working capital contributions to the Joint Venture; (3) failing to repay the loan amounts to AWC created via AWC's funding of TMG's share of capital contributions; (4) secretly negotiating and entering into the Settlement Agreement with the Owner; (5) directing the $2,700,000.00 in settlement funds to TMG or TMG, Inc. without the knowledge or approval of the Joint Venture or AWC; and (6) damaging the Joint Venture and AWC's litigation and settlement positions with the Owner.[41] AWC seeks damages interest, attorney's fees, and costs for Count II as well.[42]

In Count III, AWC alleges that TMG improperly enriched itself by secretly settling with the Owner for a payment of $2,700,00.00 in exchange for assigning TMG's interest in the Joint Venture's claims against the Owner.[43] AWC contends that TMG had no right to receive these funds and that TMG improperly enriched itself at the expense of the Joint Venture, the subcontractors of the Joint Venture,

---

[40] *Id.* at ¶¶ 117–18.
[41] *Id.* at ¶¶ 119–29.
[42] *Id.* at ¶¶ 130–31.
[43] *Id.* at ¶¶ 132–39.

and AWC.[44]  AWC requests that the Court (1) order TMG to disclose the location of the $2,700,00.00 of settlement funds paid by the Owner to TMG or TMG affiliates; (2) disgorge any sums received by TMG or TMG affiliates as part of the Settlement Agreement; (3) place any sums received by TMG or TMG affiliates as part of the Settlement Agreement in escrow pending the resolution of the lawsuits between the Joint Venture and the Owner; and (4) award attorney's fees and costs to AWC.[45]

TMG has filed two separate motions to dismiss in this case.[46]  Presently before the Court is a Motion to Dismiss for Failure to Join a Required Party and Lack of Subject Matter Jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(7).[47]  In brief, TMG argues that this action must be dismissed because AWC failed to join the Joint Venture itself as a party in this suit.  TMG's argument is three-fold.  First, TMG contends that the Joint Venture is a required party under Rule 19(a) because the claims of AWC are essentially derivative of the Joint Venture's own claims.[48]  Second, because the Court's jurisdiction over this action is based on diversity, and because, as TMG asserts, the inclusion of the Joint Venture would destroy complete diversity, joinder of the Joint Venture is not feasible.[49]  Finally, TMG argues that because the Joint Venture is an indispensable party under Rule 19(b) due to the prejudice that would result to the Joint Venture if the Court were to carry on with just AWC and TMG as parties, the Court must "in equity and good conscience" dismiss this action.[50]

---

[44] *Id.*
[45] *Id.* at ¶¶ 142–43.
[46] R. Doc. 17; R. Doc. 29.
[47] R. Doc. 29.
[48] R. Doc. 29-2 at pp. 4–7.
[49] *Id.* at pp. 7–8.
[50] *Id.* at pp. 8–12.

AWC opposes the Motion, disputing both the first and third of TMG's premises; AWC does not contest that joining the Joint Venture as a party would destroy the Court's subject-matter jurisdiction.[51]  First, AWC argues that the Joint Venture is not a required party under Rule 19(a) because AWC's claims belong to AWC itself and are not merely derivative of the Joint Venture's claims.[52]  According to AWC, the Court can accord complete relief among the existing parties without the presence of the Joint Venture.[53]  But even if the Joint Venture is a required party under Rule 19(a), AWC argues, the Joint Venture is not an indispensable party under Rule 19(b) requiring dismissal of this action because the interests of the Joint Venture are fully represented by the existing parties.[54]  AWC contends that where all the constituent members of a joint venture are present as parties to the litigation, as is the case here, the joint venture itself need not be joined as a party because the joint venture suffers no prejudice from its absence.[55]  Moreover, AWC claims that TMG is not at risk of any duplicative litigation brought against TMG by the Joint Venture if the Joint Venture is not joined as a party because the Court can effectively enjoin AWC, as the effective controller of the Joint Venture, from pursuing any further litigation against TMG.[56]  AWC concludes that because the Joint Venture—even if a required party under Rule 19(a)—is nevertheless a dispensable party, the Court need not dismiss this action and should deny TMG's Motion.

---

[51] R. Doc. 32 at p. 4.
[52] *Id.* at pp. 5–8.
[53] *Id.* at pp. 7–8.
[54] *Id.* at pp. 8–13.
[55] *Id.* at pp. 9–11.
[56] *Id.* at pp. 11–12.

TMG filed a reply in support of its Motion, again asserting that the Joint Venture is both a required and indispensable party to this action.[57] TMG argues that AWC's claims are derivative of the Joint Venture's claims and not, as AWC asserts, of a "direct nature."[58] Regarding the Rule 19(b) analysis, TMG disputes that simply because all members of the Joint Venture are currently present as parties to this litigation that the Joint Venture is adequately represented by the present parties and not prejudiced by its absence.[59]

## II.   LEGAL STANDARD

### A.  Rule 12(b)(1) standard

A motion to dismiss filed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a party to challenge the subject matter jurisdiction of the district court to hear a case.[60] A case is properly dismissed pursuant to Rule 12(b)(1) "for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case."[61] In considering a challenge to subject matter jurisdiction under Rule 12(b)(1), "the district court is 'free to weigh the evidence and resolve factual disputes in order to satisfy itself that it has the power to hear the case.'"[62] Thus, a motion to dismiss for lack of jurisdiction may be decided by the Court based on: (1) the complaint alone; (2) the complaint and the undisputed facts in the record; or (3) the complaint, the undisputed facts in the record, and the court's own

---

[57] R. Doc. 38.
[58] *Id.* at pp. 2–3.
[59] *Id.* at pp. 3–6.
[60] *Ramming v. United States,* 281 F.3d 158, 161 (5th Cir. 2001).
[61] *Krim v. pcOrder.com, Inc.,* 402 F.3d 489, 494 (5th Cir. 2005) (citing *Home Builders Ass'n of Miss., Inc. v. City of Madison,* 143 F.3d 1006, 1010 (5th Cir. 1998)).
[62] *Krim,* 402 F.3d at 494 (quoting *Home Builders Ass'n of Miss., Inc.,* 143 F.3d at 1010).

resolution of disputed facts.[63]  The party asserting jurisdiction carries the burden of proof when facing a Rule 12(b)(1) motion to dismiss.[64]  A motion to dismiss under 12(b)(1) should only be granted "if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief."[65]

### B. Rule 12(b)(7) standard

Federal Rule of Civil Procedure 12(b)(7) requires a district court to dismiss a party's claims for failure to join a Rule 19 required party.  Rule 19 of the Federal Rules of Civil Procedure requires the joinder, if feasible, "of all parties whose presence in a lawsuit is required for the fair and complete resolution of the dispute at issue."[66]  Rule 19 requires a "two-step inquiry" that is "highly practical" and "fact-based."[67]

Step one requires a court to determine if a party is "required" under Rule 19(a).  If so, that party must be joined unless joinder would deprive the court of subject-matter jurisdiction.  The party urging joinder has the initial burden of demonstrating that an absent party is necessary,[68] but "when an initial appraisal of the facts indicates that a possibly necessary party is absent, the burden of disputing this initial

---

[63] *Flores v. Pompeo*, 936 F.3d 273, 276 (5th Cir. 2019) (quoting *Robinson v. TCI/US W. Commc'ns Inc.*, 117 F.3d 900, 904 (5th Cir. 1997)) (internal quotation marks omitted).

[64] *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 762 (5th Cir. 2011) (citing *Ramming*, 281 F.3d at 161).

[65] *Sureshot Golf Ventures, Inc. v. Topgolf Int'l, Inc.*, 754 Fed. App. 235, 235 (5th Cir. 2018) (citing *Wagstaff v. U.S. Dep't of Educ.*, 509 F.3d 661, 663 (5th Cir. 2007)).

[66] *Orpheum Prop., Inc. v. Coscina*, No. CV 17-6480, 2018 WL 1518471, at *3 (E.D. La. Mar. 28, 2018) (Fallon, J.); *accord Pulitzer-Polster v. Pulitzer*, 784 F.2d 1305, 1308 (5th Cir. 1986) ("Rule 19 seeks to bring into a lawsuit all those persons who ought to be there by requiring joinder.").

[67] *Hood ex rel. Miss. v. City of Memphis*, 570 F.3d 625, 628 (5th Cir. 2009).

[68] *Wolf v. Bickham*, 498 F. Supp. 3d 897, 903 (E.D. La. 2020) (Ashe, J.).

appraisal falls on the party who opposes joinder."[69]  A party is "required" under Rule
19(a) if:

> (A) in that person's absence, the court cannot accord
> complete relief among existing parties; or
> (B) that person claims an interest relating to the subject of
> the action and is so situated that disposing of the action in
> the person's absence may:
>> (i) as a practical matter impair or impede the
>> person's ability to protect the interest; or
>> (ii) leave an existing party subject to a substantial
>> risk of incurring double, multiple, or otherwise
>> inconsistent obligations because of the interest.[70]

If a party "required" to be joined if feasible cannot be joined because its joinder will
destroy diversity, the court moves to the second step.

At step two, the court considers whether, "in equity and good conscience, the
action should proceed among the existing parties or should be dismissed."[71]  This step
requires the court to determine if an otherwise required party is "'merely necessary'
to the litigation, or in fact 'indispensable.'"[72]  If the missing party is "merely
necessary," the case can proceed in their absence; if it is "indispensable," the action
must be dismissed.  To decide whether a party is "indispensable," a court considers
the four factors listed in Rule 19(b):

> (1) the extent to which a judgment rendered in the person's
> absence might prejudice that person or the existing parties;
> (2) the extent to which any prejudice could be lessened or
> avoided by:

---

[69] *Pulitzer-Polster*, 784 F.2d at 1309 (citing *Boles v. Greeneville Housing Authority*, 468 F.2d 476, 478
(6th Cir. 1972) (Tuttle, J., sitting by designation)).
[70] Fed. R. Civ. P. 19(a).
[71] Fed. R. Civ. P. 19(b).
[72] *Moss v. Princip*, 913 F.3d 508, 515 (5th Cir. 2019).  Although the 2007 Amendments to Rule 19
removed the term "indispensable" from Rule 19(b), claiming that the term was "discarded as
redundant," the Court, like many others, will employ the "traditional terminology" here for ease and
clarity.  *See* Fed. R. Civ. P. 19 Advisory Committee Notes, 2007 Amendment.

> (A) protective provisions in the judgment;
> (B) shaping the relief; or
> (C) other measures;
> (3) whether a judgment rendered in the person's absence
> would be adequate; and
> (4) whether the plaintiff would have an adequate remedy if
> the action were dismissed for nonjoinder.[73]

No single factor is dispositive[74] and there is no "prescribed formula for determining in every case whether a person is an indispensable party."[75]  The decision to either proceed in a party's absence or to dismiss an action can be made only "in the context of the particular litigation."[76]  "[T]he issue of joinder can be complex, and determinations are case specific."[77]

## III.   ANALYSIS

TMG moves to dismiss the complaint for AWC's failure to join the Joint Venture as a party to this litigation.  Dismissal is appropriate only if the court determines that: (1) the Joint Venture is a "required" party that cannot be joined and (2) the Joint Venture is an "indispensable" party such that, "in equity and good conscience," the action must be dismissed.[78]

### A. The Joint Venture is a Required Party Under Rule 19(a).

The parties disagree over whether the Joint Venture meets the Rule 19(a) definition of a "required" party.  TMG argues that the Joint Venture is a necessary

---

[73] Fed. R. Civ. P. 19(b).
[74] *Wolf*, 498 F. Supp. 3d at 903 (citing *Gensetix, Inc. v. Bd. of Regents of Univ. of Tex. Sys.*, 966 F.3d 1316, 1326 (Fed. Cir. 2020)).
[75] *Provident Tradesmens Bank & Tr. Co. v. Patterson*, 390 U.S. 102, 118 n.14 (1968) (citation omitted).
[76] *Moss*, 913 F.3d at 515 (quoting *Provident Tradesmens Bank*, 390 U.S. at 117)
[77] *Republic of Philippines v. Pimentel*, 553 U.S. 851, 863 (2008).
[78] Fed. R. Civ. P. 19.

party because AWC's claims, except the claims for repayment of loans,[79] are derivative of claims belonging to the Joint Venture itself.[80]   Accordingly, TMG contends that litigating this action without the Joint Venture's presence will result in the Court being unable to accord complete relief among the existing parties, will impair or impede the Joint Venture's ability to protect its rights and interests, and will subject TMG to risks of incurring multiple or inconsistent obligations.[81]

AWC disputes this characterization of its claims as simply derivative of the Joint Venture's own claims.  Although AWC does not deny that some of its claims are derivative in nature, it argues that its "direct claims predominate over any causes of action derivative to the [Joint Venture]."[82]  AWC argues that its claim for repayment of capital contributions, *i.e.*, the loan amounts, against TMG is not derivative of any claim or interest of the Joint Venture because AWC incurred those expenses at its own cost.[83]  The Court can accord full relief among the existing parties, AWC claims, because AWC has "expressly requested" the disgorgement of funds received by TMG under the Settlement Agreement and their placement into escrow pending the resolution of concurrent state court litigation between the Joint Venture and the

---

[79] *See* R. Doc. 29-2 at p. 1 n.1 ("The claims for monies lent are arguably AW[C]'s and is [sic] not included in this Motion.").

[80] *See id.* at pp. 5–6.  TMG also argues that the Joint Venture must be joined as it is "'the real party in interest' within the meaning of Fed. R. Civ. P. 17(a)(1)." *Id.* at p. 6.  This misunderstands the interplay between Rules 17 and 19.  "[T]he question of who should or may be joined in the action must be determined under Rule 19 and Rule 20 rather than Rule 17(a)."  *Moss*, 913 F.3d at 520 (quoting 6A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1543 (3d ed.)).  "The fact that an absent person could bring the action as a real party in interest does not of itself make that person a necessary or indispensable party."  *Id.*  That the Joint Venture *may* be joined as a party to this action does not answer the question relevant here: whether the Joint Venture is *required* to be joined.

[81] *See* R. Doc. 29-2 at pp. 6–7.

[82] R. Doc. 32 at p. 5.

[83] *See id.* at pp. 5–6.

Owner.[84]  Accordingly, AWC argues, the Joint Venture is not required to be joined as a party to this action.

The Court concurs with TMG that the Joint Venture is a "required" party under Fed. R. Civ. P. 19(a).  This action involves one member of a joint venture suing the other member over issues involving the joint venture.  Under Louisiana law, a joint venture, like a partnership, is a unique legal entity separate and distinct from its constituent members.[85]  While a joint venture only acts through the actions of its members, each with their own interests, the joint venture nevertheless possesses its own interests not necessarily coterminous with the collective interests of its members.[86]  What is good for one member may not be beneficial for the joint venture as a whole, and vice versa.

AWC downplays the extent to which its claims alleged against TMG are derivative of the Joint Venture's claims.  In its Second Amended Complaint, AWC asserts that TMG has breached the terms of the Joint Venture Agreement, causing harm to both AWC *and* the Joint Venture.  For example, AWC alleges that TMG failed to make necessary and required capital contributions approved by the

---

[84] *See id.* at pp. 7–8.

[85] *See* La. C.C. art. 688 ("A partnership has the procedural capacity to sue to enforce its rights in the partnership name, and appears through and is represented by an authorized partner.").  In Louisiana, "[w]hile a joint adventure is not identical with a partnership, it is analogous to a partnership and is controlled largely by the principles or rules applicable to partnerships." *Ault & Wiborg Co. of Canada v. Carson Carbon Co.*, 181 La. 681, 688 (1935); *accord Latiolais v. BFI of Louisiana, Inc.*, 567 So. 2d 1159, 1161 (La. App. 3d Cir. 1990) ("[I]n general, joint ventures are governed by the law of partnership." (quoting *Cajun Electric Power Cooperative, Inc. v. McNamara*, 452 So.2d 212, 215 (La. App. 1st Cir. 1984))).

[86] *See Miller v. Barnes*, 135 So. 2d 555, 557 (La. App. 2d Cir. 1961) ("A partnership once formed and put into action becomes, in contemplation of law, a moral being separate and distinct from the persons who compose it.  It is a civil person which has peculiar rights and attributes. . . . The interests of the partners therein are only residuary.").

Executive Committee to the Joint Venture.[87]  By AWC's own argument, TMG's failure to make such contributions harmed the Joint Venture.  Although AWC suggests that the Court should look primarily to AWC's claim to recover these capital contributions from TMG, which AWC classifies as direct in nature, the Court does not ignore the Joint Venture's own interest in the breach of contract claims asserted by AWC. Simply because the interests of the Joint Venture and AWC largely mirror one another does not eliminate the legal distinctiveness between the parties nor does it mean that the Joint Venture's interests would not be "impair[ed] or impede[d]" by continuing this action without it.  The Joint Venture has its own distinct interests in vindicating the Agreement separate and apart from AWC's interests, making the Joint Venture a "required" party within the meaning of Rule 19(a).[88]

AWC's allegations regarding the Settlement Agreement between TMG and the Owner again involve claims properly construed as derivative of the Joint Venture's claims.  As AWC states, "TMG or TMG, Inc. has been, or will be, enriched without cause at the expense of the [Joint Venture], the [Joint Venture]'s subcontractors, and AWC."[89]  This is a quintessentially derivative claim belonging to the Joint Venture itself.  The Court notes its concern about whether it may accord complete relief among the existing parties on this claim due to the Joint Venture's absence.  According to AWC, the funds that AWC urges the Court to disgorge from TMG and place in escrow properly belong to the Joint Venture.  Should AWC prevail on the merits, the Court

---

[87] *See* R. Doc. 42 at ¶¶ 104–105.
[88] *Cf. Whalen v. Carter*, 954 F.2d 1087, 1096 (5th Cir. 1992) (explaining that the rights of a partnership in commendam are distinct from the rights of each partner).
[89] *See* R. Doc. 42 at ¶ 139.

may not be able to award the Joint Venture the funds to which it would be entitled. Further, given the derivative nature of AWC's enrichment without cause claim, adjudicating this action without the Joint Venture's presence might "impair or impede" the Joint Venture's unique interests. Finally, if this action were to progress without the Joint Venture, TMG, may be exposed to "double, multiple, or otherwise inconsistent obligations because of the interest," since the Joint Venture would have an interest in pursuing its own claims against TMG.[90]

AWC provides no support for its argument that so long as the direct claims of an existing party "predominate" over any derivative claims properly belonging to an absent person, then the absent person's joinder is not "required." Nor would such a rule make sense in view of Rule 19's rationale and goal. Rule 19 asks whether an absent person claims such an interest in an action that disposing of the action without that person's presence would "as a practical matter impair or impede" that person's ability to protect their own interests.[91] That the underlying litigation mostly concerns events and claims unrelated to the absent party's interests does nothing to alleviate any concern that the absent party's interests are "impair[ed] or impede[d]" by its absence. The Federal Rules simply provide that a "required" party have "an interest relating to the subject of the action," without any qualification as to the size

---

[90] Fed. R. Civ. P. 19(a)(1)(B)(ii). For the reasons discussed *infra*, Part III.B, this possibility of "double, multiple, or otherwise inconsistent obligations" for TMG can be cured by the Court's enjoining of AWC from acting to assert, via the Joint Venture, any further claims against TMG for the claims brought herein.
[91] Fed. R. Civ. P. 19(a)(1)(B).

of that interest or the proportion of that interest to the action as a whole.[92]  AWC's argument to the contrary is unassailing.

Because the Joint Venture is a required party under Rule 19(a), it must be joined as a party, if feasible.  The parties agree that joinder is infeasible because joining the Joint Venture here would destroy this Court's subject-matter jurisdiction.[93]  A joint venture, like other unincorporated associations, takes the citizenship for diversity purposes of each of its members.[94]  Thus, joining the Joint Venture either as a defendant or as an involuntary plaintiff would destroy the complete diversity of the parties required to invoke diversity jurisdiction.  The Court proceeds to the second step of the Rule 19 analysis.

## B. The Joint Venture is not an Indispensable Party Under Rule 19(b).

At step two, the Court must "determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed."[95]  The Court considers the four factors listed in Rule 19(b) in deciding whether the Joint Venture is an "indispensable" party.

The parties mostly focus their arguments on the first factor of whether there will be prejudice to either the Joint Venture or the existing parties should the Court proceed without the Joint Venture.  TMG contends that the Joint Venture is an "indispensable" party because the Joint Venture will "suffer prejudice if this action

---

[92] *Id.*
[93] TMG is a citizen of Louisiana.  AWC is a citizen of Illinois.  Accordingly, the Joint Venture is a citizen of both Louisiana and Illinois.
[94] *See Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008).
[95] Fed. R. Civ. P. 19(b).

were allowed to proceed in the [Joint Venture]'s absence."[96]   As discussed above, AWC's claims involve the related but distinct interests of the Joint Venture itself. TMG argues that because any ruling on AWC's claims "is likely to affect the [Joint Venture]'s distinct interests . . . the absence of the [Joint Venture] from this action would prejudice its ability to protect those interests."[97]   TMG also claims that if the Joint Venture is absent that TMG will be prejudiced by the potential for duplicative litigation brought later down the line by the Joint Venture against TMG.[98]

In contrast, AWC argues that the Joint Venture's presence in this suit is not necessary to protect the Joint Venture or any party from prejudice because the Joint Venture's interests are fully represented by its two constituent members, both of whom are parties before the Court.  To support its argument, AWC relies largely on a recent Fifth Circuit case, *Moss v. Princip*[99], in which the court examined whether a partnership was an "indispensable" party under Rule 19(b) when all the individual partners were parties.  *Moss* involved a contractual dispute between partners in a partnership in which all parties agreed that the partnership should have been joined if feasible as a "required" party.[100]   Prior Fifth Circuit case law, cited favorably by TMG here,[101] had "held that partnerships were indispensable parties to suits derivatively implicating partnership interests."[102]   Those cases, the *Moss* court

---

[96] R. Doc. 29-2 at p. 10.
[97] *Id.* at p. 11.
[98] *Id.* at p. 10.
[99] 913 F.3d 508 (5th Cir. 2019).
[100] *Id.* at 515.
[101] *See* R. Doc. 29-2 at pp. 10–12 (citing *Whalen v. Carter*, 954 F.2d 1087 (5th Cir. 1992) and *Bankston v. Burch*, 27 F.3d 164 (5th Cir. 1994)); R. Doc. 38 at p. 6 (same).
[102] *Moss*, 913 F.3d at 515.

explained, "hinged on threatened prejudice to the partnership if the case proceeded in its absence."[103]  But in none of those earlier cases "were all constituent partners in the partnership parties to the suit."[104]  In distinguishing the facts of the case before it from its prior precedents, the *Moss* court emphasized that because the "partnership's interests were fully represented by each of its partners, all of whom were before the court . . . the partnership's presence in the suit was not necessary to protect the partnership or any of the parties from prejudice."[105]  As the court in *Moss* explained, several other circuits—the Second,[106] Third,[107] and Sixth[108]—have likewise found "non-diverse partnerships to be dispensable where all partners, or all general partners, were parties to the litigation and could adequately represent partnership interests."[109]  Ultimately, the *Moss* court joined the view of its sister circuits and held that the absentee partnership was a required but dispensable party.[110]

TMG unsuccessfully attempts to distinguish and sidestep the Fifth Circuit's clear holding in *Moss*.  TMG characterizes the *Moss* court's instruction that a

---

[103] *Id.* at 517.

[104] *Id.*

[105] *Id.* at 517 (citing Fed. R. Civ. P. 19(b)(1)).

[106] *Curley v. Brignoli, Curley & Roberts Assocs.*, 915 F.2d 81, 82 (2d Cir. 1990).

[107] *HB Gen. Corp. v. Manchester Partners, L.P.*, 95 F.3d 1185, 1188 (3d Cir. 1996).

[108] *Hooper v. Wolfe*, 396 F.3d 744, 745–46 (6th Cir. 2005).

[109] *Moss*, 913 F.3d at 517–18.  The court also noted that the Fourth Circuit ruled similarly in *Delta Financial Corp. v. Paul D. Comanduras & Associates.  See id.* at 518 n.47 (citing *Delta Fin. Corp.*, 973 F.2d 301 (4th Cir. 1992)).

[110] *See id.* at 520.  TMG chides AWC for citing several of the out-of-circuit opinions cited favorably by the Fifth Circuit in *Moss.  See* R. Doc. 38 at p. 2 ("AW[C] succumbs to citing the law of other federal circuits . . . ."); *see also id.* at p. 4 n.1.  It is lost on this Court how reliance on caselaw viewed favorably by the Fifth Circuit plausibly undermines AWC's argument.  That every circuit to have considered the question presented in this Motion has found the interests of the non-diverse partnership to be ably represented by the presence of all constituent members strengthens, not weakens, AWC's position.

partnership (or joint venture) is typically a dispensable party where all constituent members are present as parties as "one small aspect of the *Moss* decision."[111]   The Court is not convinced.  The presence of each partner as a party to the litigation was not simply "one small aspect" of that decision; rather, it formed the entirety of the basis for the court's conclusion that the partnership itself was not prejudiced by its absence.[112]   TMG also attempts to distinguish *Moss* based on the unique procedural posture of that case.[113]   The Fifth Circuit has directly addressed this argument, however, stating that "[o]ur holding in *Moss* was not dependent upon the procedural posture of the case."[114]   TMG cannot escape the clear import of *Moss*.

In its reply, TMG extensively cites a case from another section of the Court, *Wolf v. Bickham,*[115] in which the court found that an absent partnership was a "required" and "indispensable" party such that dismissal of the action was necessary. TMG's reliance on *Wolf* is misplaced.   The court in that case found *Moss* "distinguishable in several respects," primarily because, unlike in *Moss*, not all of the

---

[111] *Id.* at p. 5.

[112] Nor does the Fifth Circuit dismiss the presence of all partners protecting the partnership itself against potential prejudice as "one small aspect" of the *Moss* decision.   Recently, the Fifth Circuit vacated a district court's determination that an absent person was an "indispensable" party despite the absentee's constituent members all being party to the litigation.   *See Caytrans Project Servs. Americas, Ltd. v. BBC Chartering & Logistics GmbH & Co.*, 861 Fed. App. 556 (5th Cir. 2021). Although the Court recognizes that the case is not precedential pursuant to 5th Circuit Rule 47.5, the Court nevertheless finds it to be persuasive and instructive of the Fifth Circuit's position on "indispensable" parties.   In that case, the Fifth Circuit reaffirmed the holding in *Moss*, emphasizing that the presence of a partnership is not necessary to protect the partnership from prejudice where the individual partners are present.   *See id.* at 560–62. The court further explained that a party seeking dismissal must demonstrate how the individual constituent members fail to protect the interests of the absentee. *See id.* at 561.

[113] R. Doc. 38 at p. 5.

[114] *Caytrans*, 861 Fed. App. at 562.

[115] 498 F. Supp. 3d 897 (E.D. La. 2020) (Ashe, J.).

partners in the partnership were parties to the action.[116]  As the *Wolf* court explained, the chief distinguishing factor between the Fifth Circuit's opinion in *Moss* and its prior holdings finding a partnership "indispensable" was the presence of all partners as parties.[117]  Further, as the court in *Wolf* stated:

> More substantively, in *Moss, all* the partners were parties in the action.  Thus, reasoned the Fifth Circuit, the partnership's interests were fully represented (even by the party presence of the partnership itself), such that *Moss* was more like the decisions in *Hooper, HB General,* and *Delta Financial* holding partnerships to be dispensable . . . than like the Fifth Circuit's own decisions in *Whalen* and *Bankston* holding partnerships to be indispensable to suits derivatively implicating partnership interests.  This is not the case in the present litigation, where at least one partner – Dresneck – is not present.[118]

TMG ignores the obvious factual differences between *Wolf* and the instant action.  If anything, *Wolf* emphasizes the importance of whether all constituent members of an unincorporated entity are present as parties in determining whether the entity itself is an "indispensable" party.  At bottom, *Wolf* is unhelpful to TMG and cuts against its argument.

Although *Moss* makes clear that a partnership is not necessarily an "indispensable" party where every constituent partner is a party to the action, *Moss* also requires a court to make a "highly practical, fact-based decision" about whether a partnership's (or joint venture's) interests substantively vary from the interests of

---

[116] *Id.* at 907.

[117] *See id.* at 906 ("This fact [the absence of one of the partners] distinguishes those cases holding that an absent partnership is not an indispensable party under Rule 19(b) when all its partners are party to the litigation." (citing *Moss,* 913 F.3d at 517–19)); *see also id.* at 908 ("More substantively, in *Moss, all* the partners were parties in the action.").

[118] *Id.* at 908 (internal citations omitted).

its constituent members such that the partnership may still be "indispensable" to the action in spite of the presence of each member as a party.[119]  Here, although the Joint Venture's interests are legally distinct from those of AWC and TMG, the parties have not demonstrated that they vary in reality from those of AWC and TMG.[120]  TMG has not explained how the Joint Venture is prejudiced by its absence.  There is, for example, no allegation that speaks to the Joint Venture committing any wrongdoing such that it might play a distinct role here.[121]  Practically speaking, the interests of AWC and the Joint Venture largely overlap given AWC's large share of the Joint Venture.[122]  And to the extent that the interests of the Joint Venture more closely align with TMG, TMG's presence ensures that AWC does not enrich itself to the detriment of the Joint Venture.  Simply put, both parties can adequately represent the interests of the Joint Venture so that the Joint Venture is not prejudiced by its absence.  To hold otherwise would be to indulge in the type of legalistic formalism disdained by Rule 19.[123]

As to any potential prejudice to TMG from the risk of duplicative litigation if the Joint Venture is not a party to this action, the Court concurs with AWC that that

[119] *Caytrans*, 861 Fed. App. at 561.

[120] *See id.* (faulting the district court for not addressing whether the interests of the absentee "varied in reality" from the present parties).

[121] *See id.*

[122] At the outset, AWC controlled 70% of the Joint Venture.  *See* R. Doc. 42 at ¶ 22.  At present, AWC controls a higher percentage share due to TMG's failure to pay required capital contributions.  *See id.* at ¶ 76.

[123] *See* Fed. R. Civ. P. 19 Advisory Committee Notes, 1966 Amendment (referring to the older Rule 19 as having "directed attention to the technical or abstract character of the rights or obligations of the persons whose joinder was in question, and . . . distracted attention from the *pragmatic considerations* which should be controlling") (emphasis added); *Moss*, 913 F.3d at 518 ("'[G]uided by common sense' as we must be under Rule 19 . . . ." (quoting *HB Gen.*, 95 F.3d at 1193)).

prejudice may be "lessened or avoided" by tailoring any relief in this action to bind the Joint Venture's constituent members from pursuing any further litigation against TMG.[124]   The Fifth Circuit has explained that "any risk of duplicative litigation brought by the partnership itself can be cured through injunctive relief fashioned by the district court."[125]  A joint venture, "like a marionette, cannot make a move unless some human being pulls the strings."[126]   And because both members of the Joint Venture are presently parties before this Court, the Court can enjoin all members from bringing any subsequent suits on behalf of the Joint Venture against TMG. Thus, the second Rule 19(b) factor points toward finding the Joint Venture a dispensable party.

The third factor—whether a judgment rendered in the Joint Venture's absence would be adequate—also favors finding the Joint Venture to be a dispensable party. The Supreme Court has construed the third Rule 19(b) factor as referring to "the interest of the courts and the public in complete, consistent, and efficient settlement of controversies."[127]   This "adequacy of the judgment" factor focuses on the "public stake in settling disputes by wholes, whenever possible, for clearly the plaintiff, who himself chose both the forum and the parties defendant, will not be heard to complain about the sufficiency of relief obtainable against them."[128]   "The presence of multiple litigation and its attendant burdens on the parties and the court system should also

[124] Fed. R. Civ. P. 19(b)(2).
[125] *Moss*, 913 F.3d at 519 (citing *HB Gen.*, 95 F.3d at 1191).
[126] *HB Gen.*, 95 F.3d at 1191.
[127] *Provident Tradesmens Bank*, 390 U.S. at 111.
[128] *Id.*

be considered."[129]  The parties have barely addressed this factor.  However, the Court finds, for the reasons discussed above, that any potential for successive or duplicative litigation can be avoided through by properly tailoring any relief in this matter to prohibit the party-members from bringing any further litigation on behalf of the Joint Venture itself.  Thus, the Court can ensure the "complete, consistent, and efficient settlement" of the issues raised in this litigation without the presence of the Joint Venture.

Lastly, the Court finds that the fourth factor—whether AWC would have an adequate remedy at law if this action were to be dismissed for nonjoinder—is the only factor that weighs toward finding the Joint Venture to be "indispensable."  The Supreme Court has described this factor as a consideration of the plaintiff's interest in a federal forum.[130]  AWC has not demonstrated anything more than a weak interest in the federal forum.  Moreover, AWC has not shown that it would be deprived of a remedy were the Court to dismiss this action and AWC were to refile in state court.  However, in light of the weight of the other factors, the Court does not find that the existence of an adequate remedy in state court necessitates finding the Joint Venture to be an "indispensable" party requiring dismissal of this action.  On balance, the four Rule 19(b) factors lead this Court to conclude that the Joint Venture

---

[129] *Pulitzer-Polster*, 784 F.2d at 1313. While the parties have advised the Court that there is pending state court litigation that may potentially impact these parties, there is no evidence that the state court litigation involves the same issue or would be duplicative of this matter.

[130] *Provident Tradesmens Bank*, 390 U.S. at 109.

is a dispensable party such that the Court, "in equity and good conscience," can "proceed among the existing parties."[131]

## IV.  CONCLUSION

For the foregoing reasons, the Defendant's Motion to Dismiss for Failure to Join a Required Party and Lack of Subject Matter Jurisdiction [132] is **DENIED.**

New Orleans, Louisiana, July 18, 2023.

**WENDY B. VITTER**
**United States District Judge**

---

[131] Fed. R. Civ. P. 19(b).
[132] R. Doc. 29.