## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**ARCHER WESTERN CONTRACTORS, LLC**          **CIVIL ACTION**

**VERSUS**          **NO. 22-5323**

**THE MCDONNEL GROUP, LLC**          **SECTION: D (5)**

## ORDER AND REASONS

Before the Court is a Motion to Dismiss Pursuant to Rule 12(b)(6) filed by the Defendant, The McDonnel Group, LLC.[1]  The Plaintiff, Archer Western Contractors, LLC, opposes the Motion.[2]  The Defendant filed a Reply in support of its Motion[3] and, with leave of Court, the Plaintiff filed a Sur-Reply.[4]  The Motion is fully briefed.  After careful consideration of the parties' memoranda, the record, and the applicable law, the Court **DENIES** the Motion.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

This Court has previously detailed the factual background of the events germane to this lawsuit in the Court's prior Order denying the Defendant's motion to dismiss for failure to join a Rule 19 required party.[5]  Accordingly, the Court summarizes the relevant background only as it relates to the instant Motion to Dismiss.

This case concerns the alleged failure of Defendant The McDonnel Group, LLC

---

[1] R. Doc. 17.
[2] R. Doc. 18.
[3] R. Doc. 25.
[4] R. Doc. 28.
[5] R. Doc. 50.

("TMG") to abide by certain agreements and commitments made in a Joint Venture Agreement with Plaintiff Archer Western Contractors, LLC ("AWC").  On May 2, 2011, TMG and AWC entered into a Joint Venture Agreement (the "Agreement") establishing the McDonnel Group, LLC/Archer Western Contractors, Ltd. Joint Venture (the "Joint Venture") for the purpose of submitting a bid and obtaining a contract for the construction of the Orleans Parish Sheriff's Office Inmate Processing Center/Templeman III & IV Replacement Administration building (the "Project") from the Law Enforcement Division of Orleans Parish, State of Louisiana (the "Owner").[6]  Not long thereafter, on July 28, 2011, the Joint Venture entered into a contract with the Owner to construct the Project for a sum of $144,929,000.00 (the "Contract").[7]

According to the terms of the Agreement, AWC and TMG are to share any profits and any losses accruing to the Joint Venture from performance of the Contract in accordance with their proportional interest in the Joint Venture; at the outset, AWC held a seventy percent share of the Joint Venture while TMG held the other thirty percent.[8]  The Agreement establishes that a party cannot "assign, transfer, pledge or hypothecate its interest . . . in the Joint Venture or in the Contract or in this Agreement or in any property or monies of the Joint Venture except with prior written consent of the other party[.]"[9]  AWC is designated as the Managing Party of the Joint Venture, giving AWC "charge and supervision over the timely and

---

[6] R. Doc. 42 at ¶¶ 19–20.
[7] *Id.* at ¶ 21.
[8] *Id.* at ¶ 22.
[9] *Id.* at ¶ 35 (Article 16).

satisfactory performance of the Contract, subject, however, to the superior authority and control of the Executive Committee."[10]  The Executive Committee is also largely controlled by AWC; the representatives of each party on the Executive Committee have "a vote equal to his party's Proportionate Share."[11]

The Joint Venture's need for working capital to perform the Contract necessitates that TMG and AWC "shall" make certain capital contributions "in accordance with their proportionate share."[12]  Per the Agreement, the Managing Party, *i.e.*, AWC, determines the need for capital contributions and the date on which the capital is to be furnished to the Joint Venture.[13]  All working capital contributions are to be deposited in the Joint Venture bank account opened by AWC.[14]  Article 7(e) of the Agreement provides that:

> Should any party (the "Defaulting Party") be unable or fail or neglect to contribute its Proportionate Share of the working capital within 7 calendar days after the date set for the contribution thereof by the Managing Party, the other Party (the "Non-Defaulting Party") may, at their option, pay the share of the Defaulting Party (the "Defaulting Party's Contribution").  If the Non-Defaulting Party pays all or part of the Defaulting Party's Contribution, such payments shall be deemed to be demand loans made by the Non-Defaulting Party to the Defaulting Party.  Such loans shall be immediately repayable by the Defaulting Party without notice and shall bear interest at a rate per annum equal to 3% above the Prime Lending Rate, determined on a day to day basis.[15]

---

[10] *Id.* at ¶ 26 (Article 5(a)).
[11] *Id.* at ¶ 28 (Article 4).
[12] *Id.* at ¶ 30 (Article 7(a)).
[13] *Id.*
[14] *Id.* at ¶ 32 (Article 8(a)).
[15] *Id.* at ¶ 31 (Article 7(e)).

In the event of a default by one party, the voting strength of the Executive Committee representatives of the non-defaulting party is "increased to the proportion that its actual contributions to working capital (including loans therefore to the Defaulting Party) bear to the total contribution made to working capital by the parties," while the strength of the defaulting party is decreased proportionally.[16]  Further, Article 15(e) of the Agreement specifies that the defaulting party must pay any legal expenses required by the non-defaulting party "to protect their interests or defend any action arising out of the Defaulting Party's breach."[17]

As alleged by AWC, several disputes arose during the performance of the contract between the Joint Venture and the Owner.[18]  Although those disputes and accompanying litigation are not directly relevant here, AWC claims (and TMG does not dispute) that by May 2015, the Owner's "wrongful failure to properly compensate the [Joint Venture] created critical cash flow issues for the [Joint Venture]."[19]  These cash flow problems required the Joint Venture to obtain additional capital contributions from its constituent parties—AWC and TMG—in order to continue its work on the Project and to compensate subcontractors.[20]

It is at this point, May 2015, that the disputes within the Joint Venture relevant to the instant litigation started to take hold.  AWC claims that for the first time in May 2015, TMG indicated that it refused to contribute additional capital

---

[16] *Id.* at ¶ 25 (Article 7(f)(i)).
[17] *Id.* at ¶ 35 (Article 15(e)).
[18] *Id.* at ¶¶ 38–45.
[19] *Id.* at ¶ 46.
[20] *Id.* at ¶ 47.

funding to the Joint Venture. AWC further claims that at no point did TMG deny that additional funding was necessary to complete the Project.[21]   On September 3, 2015, AWC issued correspondence to TMG requesting additional capital contributions approved by the Executive Committee and identifying past failures of TMG to satisfy contribution requests.[22]   On September 16, 2015, TMG responded to AWC that it refused to provide any additional capital funding.[23]   Again on December 2, 2015, during an Executive Committee meeting, TMG advised that it would not provide any further funding to the Joint Venture.[24]

On January 20, 2016, AWC sent correspondence to TMG advising TMG of its default on past-due capital contributions of $1,650,00.00 and that, pursuant to Article 7(e) of the Agreement, TMG's past-due contributions "will be deemed to be an on-demand loan made by [AWC] to [TMG] . . . immediately repayable by [TMG] with notice and shall bear interest at a rate per annum equal to 3% above the Prime Lending Rate, determined on a day to day basis."[25]   Throughout 2016, the Executive Committee continued to approve required capital contributions which TMG refused to pay.[26]   AWC advised TMG that TMG's increasingly large past-due amounts were deemed on-demand loans payable to AWC under the terms of the Agreement.[27]

This pattern of TMG refusing to contribute capital to the Joint Venture despite the decisions of the Executive Committee and AWC subsequently advising TMG that

---

[21] *Id.* at ¶¶ 48–49.
[22] *Id.* at ¶¶ 50–52.
[23] *Id.* at ¶ 54.
[24] *Id.* at ¶ 55.
[25] *Id.* at ¶¶ 57–58.
[26] *Id.* at ¶¶ 61–65.
[27] *Id.* at ¶ 62.

the past-due amounts would be deemed interest-bearing loans continued throughout 2017 and 2018 and beyond.[28]  TMG also failed to attend the weekly Joint Venture and Executive Committee meetings throughout this period.[29]  AWC again notified TMG on July 31, 2019 that as of July 11, 2019, AWC had loaned $4,092,144.63 to TMG, comprising "$3,194,250.00 in capital loans and $897,894.63 in interest."[30] AWC avers that as of the date of the filing of this lawsuit, "AWC has loaned TMG $6,096,407.00 comprised of $3,811,500.00 in capital loans and $2,284,907.00 in interest."[31]  Due to TMG's increasing indebtedness to AWC as a result of its default on the capital contributions, AWC's voting strength has increased in proportion to its contribution to total working capital.[32]  Likewise, TMG's voting strength has proportionally shrunk.[33]

Besides TMG's alleged failure to provide necessary capital contributions to the Joint Venture, AWC also alleges that TMG breached the Agreement by entering into a "secret TMG-Owner settlement."[34]  AWC avers that on November 11, 2022, it first became aware of an April 29, 2022 document styled "Agreement of Compromise, Release, Assignment, and Settlement, Agreement" entered into by TMG and the Owner (the "Settlement Agreement") in which TMG purportedly assigned its interests in the Joint Venture's claims against the Owner to the Owner in exchange

---

[28] *Id.* at ¶¶ 67–71.
[29] *Id.* at ¶ 72.
[30] *Id.* at ¶ 73.
[31] *Id.* at ¶ 75.
[32] *Id.* at ¶ 76.
[33] *Id.* at ¶ 77.
[34] *Id.* at ¶ 80.

for a "final payment" of $2,700,000.00.[35]   The Settlement Agreement directs the Owner to send the "final payment" to The McDonnel Group, Inc. ("TMG, Inc.") and not to The McDonnel Group, LLC—the member of the Joint Venture and current Defendant—and not to the Joint Venture itself.[36]   AWC claims to have no prior knowledge of or relationship with TMG, Inc.[37]   AWC claims that neither the Joint Venture nor AWC approved the Settlement Agreement, as is required under Article 4(c)(vi) of the Agreement.[38]   The Settlement Agreement states that TMG "has a fiduciary duty to the [Joint Venture]" and that the Joint Venture "has NOT agreed to the settlement proposal."[39]

AWC filed the present lawsuit against TMG on December 16, 2022, alleging Breach of Contract in Count I, Breach of Fiduciary Duty in Count II, and Enrichment Without Cause in Count III.[40]   In Count I, AWC alleges that TMG breached the Joint Venture Agreement by (1) failing to provide necessary working capital contributions to the Joint Venture; (2) failing to pay back the $6,096,407.00 in loans to AWC, representing capital contributions which AWC paid due to TMG's default plus applicable interest; (3) failing to act in good faith in its participation in the Joint Venture Executive Committee by refusing to approve necessary requests for capital

---

[35] *Id.* at ¶¶ 80–82.

[36] *Id.* at ¶¶ 83–86.

[37] *Id.* at ¶ 85.

[38] *Id.* at ¶ 93.

[39] *Id.* at ¶¶ 91–92.

[40] R. Doc. 1. The Court ordered AWC to file an Amended Complaint properly alleging the citizenship information of the parties to ensure that the Court has subject-matter jurisdiction over this action.  R. Doc. 4.  AWC subsequently filed an Amended Complaint.  R. Doc. 6.  Several months later, AWC filed a Second Amended Complaint clarifying certain factual allegations made in its Amended Complaint. R. Doc. 42.  The Court only considers the Second Amended Complaint here.

contributions and by refusing to attend and participate in Executive Committee meetings; (4) unilaterally assigning its interest in the Joint Venture's claims against the Owner to the Owner via the Settlement Agreement without the consent of either AWC or the Joint Venture; and (5) directing $2,700,000.00 in settlement funds from the Owner to TMG or TMG, Inc. otherwise due to the Joint Venture itself and the Joint Venture's subcontractors without the approval of either the Joint Venture or AWC.[41]   As to Count I, AWC seeks damages, interest, attorney's fees, and costs, including the repayment of the full amount of the monies deemed to be loaned by AWC to TMG.[42]

As for Count II, Breach of Fiduciary Duty, AWC alleges that TMG owes AWC a fiduciary duty as its sole partner in the Joint Venture and that TMG breached that duty by acting in a manner contrary and prejudicial to AWC's interests, for many of the same reasons discussed above.   Specifically, AWC contends that TMG breached its fiduciary duty to AWC by (1) failing to act in good faith in its participation in the Executive Committee; (2) failing to make the required working capital contributions to the Joint Venture; (3) failing to repay the loan amounts to AWC created via AWC's funding of TMG's share of capital contributions; (4) secretly negotiating and entering into the Settlement Agreement with the Owner; (5) directing the $2,700,000.00 in settlement funds to TMG or TMG, Inc. without the knowledge or approval of the Joint Venture or AWC; and (6) damaging the Joint Venture and AWC's litigation and

---

[41] R. Doc. 42 at ¶¶ 100–16.
[42] *Id.* at ¶¶ 117–18.

settlement positions with the Owner.[43]  AWC seeks damages interest, attorney's fees, and costs for Count II as well.[44]

In Count III, AWC alleges that TMG improperly enriched itself by secretly settling with the Owner for a payment of $2,700,00.00 in exchange for assigning TMG's interest in the Joint Venture's claims against the Owner.[45]  AWC contends that TMG had no right to receive these funds and that TMG improperly enriched itself at the expense of the Joint Venture, the subcontractors of the Joint Venture, and AWC.[46]  AWC requests that the Court (1) order TMG to disclose the location of the $2,700,00.00 of settlement funds paid by the Owner to TMG or TMG affiliates; (2) disgorge any sums received by TMG or TMG affiliates as part of the Settlement Agreement; (3) place any sums received by TMG or TMG affiliates as part of the Settlement Agreement in escrow pending the resolution of the lawsuits between the Joint Venture and the Owner; and (4) award attorney's fees and costs to AWC.[47]

TMG filed two separate motions to dismiss in this case.[48]  As noted above, this Court has already considered and denied TMG's motion to dismiss for failure to join a Rule 19 required party, finding that the Joint Venture is a required yet dispensable party to this litigation.[49]  Presently before the Court is a Motion to Dismiss Pursuant to Rule 12(b)(6).[50]  TMG seeks to dismiss AWC's claims to recover more than six

---

[43] *Id.* at ¶¶ 119–29.
[44] *Id.* at ¶¶ 130–31.
[45] *Id.* at ¶¶ 132–39.
[46] *Id.*
[47] *Id.* at ¶¶ 142–43.
[48] R. Doc. 17; R. Doc. 29.
[49] R. Doc. 50.
[50] R. Doc. 17.

million dollars in loans to TMG as well as AWC's claims for attorney's fees.  In brief, TMG argues that AWC's claim to recover the money which AWC contributed to the Joint Venture on TMG's behalf due to TMG's alleged failure to make required capital contributions has prescribed.[51]   TMG contends that because AWC's claims are properly classified as an "action on money lent," the three-year prescription under Louisiana Civil Code article 3394 applies instead of the default ten-year prescription that otherwise applies to breach of contract actions.[52]  With a three-year prescription, TMG argues, AWC's claims have prescribed because the last demand letter from AWC referenced in the Complaint is from July 31, 2019, more than three years prior to the filing of this lawsuit.[53]   Accordingly, TMG asks the Court to dismiss AWC's claims to recover the money loaned to TMG.  As for AWC's claim for attorney's fees, TMG contends that that claim must be dismissed as well because AWC has failed to cite either a statutory or contractual provision allowing for the recovery of attorney's fees.[54]

AWC opposes the Motion, disputing both that its claims have prescribed and that it failed to sufficiently plead its claim for attorney's fees.[55]  AWC argues that a ten-year prescription period under Louisiana Civil Code article 3499 applies because the true nature of its claims to recover the amounts that it contributed to the Joint Venture on account of TMG's default is an action for breach of contract, not an "action

---

[51] R. Doc. 17-2 at p. 1.
[52] *Id.* at pp. 5–7.
[53] *Id.* at p. 7.
[54] *Id.* at pp. 7–8.
[55] R. Doc. 18.

on money lent."[56]   According to AWC, "where loans or payment obligations arise within the broader context of a partnership agreement, an action for breach of the underlying obligation is properly characterized as a breach of contract."[57]   AWC maintains that the Court cannot separate TMG's failure to repay the money which AWC contributed to the Joint Venture due to TMG's default from TMG's underlying breaches of the Joint Venture Agreement.[58]   Further, AWC argues that the loans are simply an "enforcement mechanism for TMG's obligations" under the Joint Venture Agreement and do not independently exist outside the scope of the Joint Venture Agreement.[59]   Finally, AWC, citing Fifth Circuit and Louisiana state court case law, argues that the joint venture relationship between the parties precludes the application of the shorter three-year prescription period due to the ongoing nature of the relationship.[60]   Regarding TMG's arguments concerning attorney's fees, AWC contends that Article 15(e) of the Joint Venture Agreement provides a contractual basis for attorney's fees sufficient to survive a motion to dismiss.[61]

TMG filed a reply in support of its Motion,[62] largely reiterating its argument that because AWC repeatedly refers to the money it contributed to the Joint Venture on TMG's behalf as a "loan," AWC's claims for recovery of that money is an "action on money lent" subject to a three-year prescription.   Relying on a case from another section of this court, TMG contends that even though the "default prescriptive period

---

[56] *Id.* at pp. 2–3.
[57] *Id.* at p. 4.
[58] *Id.* at pp. 4–8.
[59] *Id.* at pp. 6–7.
[60] *Id.* at pp. 8–11.
[61] *Id.* at pp. 11–12.
[62] R. Doc. 25.

for claims arising out of a joint venture is 10 years, shorter periods still apply to certain types of claims that arise within the context of a joint venture," such as AWC's loan-related claims.[63]   TMG concedes that the ten-year prescriptive period might apply to some of AWC's claims, but contests that that period applies to AWC's claims to recover monies lent.[64]   TMG also attempts to downplay the case law cited by AWC in its response in opposition, arguing that intervening case law has rendered the decisions cited by AWC out-of-date and that, pursuant to the doctrine of *jurisprudence constante*, the Court should not rely on the cases cited by AWC.[65]   Further, throughout its Reply, TMG contends that AWC incorrectly relies too strongly on Louisiana partnership law, arguing that the Court should differentiate between joint ventures and partnerships for purposes of the relevant analysis.[66]   Lastly, TMG repeats its argument that AWC failed to properly plead a claim to recover attorney's fees.[67]

This Court granted AWC leave to file a Sur-Reply responding to the arguments raised by TMG in its Reply.[68]   AWC mostly focuses on TMG's attempt to differentiate between partnerships and joint ventures.   AWC states that it "is not seeking to establish that a general partnership exists between AWC and TMG, [but] only that the *joint venture* relationship is afforded the same protections under principles of

---

[63] *Id.* at pp. 5–6 (citing *Norris v. Causey*, No. CIV 14-1598, 2016 WL 311746 (E.D. La. Jan. 26, 2016) (Barbier, J.)).
[64] *Id.* at p. 6.
[65] *Id.* at pp. 6–9.
[66] *Id.* at p. 3 n.3; *id.* at p. 8.
[67] *Id.* at p. 10.
[68] R. Doc. 27.

Louisiana law."[69]  AWC also chides TMG for ignoring on-point Louisiana case law previously cited by AWC holding that actions between partners to recover amounts lent by one partner to another are subject to a ten-year prescription.[70]  Furthermore, AWC contends that the inclusion of a loan component in its action for breach of contract does not transform AWC's action into an "action on money lent."[71]  As AWC puts it, "[t]his is not an action for delinquent loans based on a segregable loan document, but a lawsuit founded upon TMG's multiple breaches of the obligations at the very heart of the JV agreement."[72]  Accordingly, AWC maintains that the ten-year prescriptive period provided by Louisiana Civil Code article 3499 applies to their action, necessitating the denial of TMG's motion.

## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a defendant can seek dismissal of a complaint, or any part of it, for failure to state a claim upon which relief may be granted.[73]  To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[74]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

---

[69] R. Doc. 28 at p. 3.

[70] *Id.*

[71] *Id.* at pp. 3–5.

[72] *Id.* at p. 4.

[73] Fed. R. Civ. P. 12(b)(6).

[74] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

liable for the misconduct alleged."[75]  But, no matter the factual content, a claim is not plausible if it rests on a legal theory that is not cognizable.[76]

In ruling on a motion to dismiss, the Court accepts all well-pleaded facts as true and views those facts in the light most favorable to the non-moving party.[77]  The Court, however, is not bound to accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions.[78]  "Dismissal is appropriate when the complaint on its face shows a bar to relief."[79]  Dismissal under Rule 12(b)(6) may also be appropriate "where it is evident from the plaintiff's pleadings that the action" has prescribed under the applicable prescription statute.[80]  In deciding a Rule 12(b)(6) motion to dismiss, a court is generally prohibited from considering information outside the pleadings, but may consider documents outside of the complaint when they are: (1) attached to the motion; (2) referenced in the complaint; and (3) central to the plaintiff's claims.[81]

## III.   ANALYSIS

## A. Prescription

Defendant TMG moves to partially dismiss, as prescribed, Plaintiff AWC's claims for damages relating to TMG's alleged breach of the Joint Venture Agreement

---

[75] *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (quoting *Ashcroft*, 556 U.S. at 678) (quotation marks omitted).

[76] *Shandon Yinguang Chem. Indus. Joint Stock Co., Ltd. v. Potter*, 607 F.3d 1029, 1032 (5th Cir. 2010).

[77] *Midwest Feeders, Inc. v. Bank of Franklin*, 886 F.3d 507, 513 (5th Cir. 2018).

[78] *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005).

[79] *Cutrer v. McMillan*, 308 Fed. Appx. 819, 820 (5th Cir. 2009) (quotation and internal quotation marks omitted).

[80] *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003) (citing *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378–79 (5th Cir. 2002)); *see also Anderson v. City of New Orleans*, No. CIV.A. 03-3010, 2004 WL 1396325, at *3 (E.D. La. June 18, 2004) ("A complaint is subject to dismissal for failure to state a claim upon which relief can be granted if the prescriptive period has run.").

[81] *Maloney Gaming Mgmt., LLC v. St. Tammany Parish*, 456 Fed. Appx. 336, 340–41 (5th Cir. 2011).

between the parties.  The parties disagree over the prescription statute applicable to

AWC's claims—the three-year period pursuant to Louisiana Civil Code article 3494

("article 3494") or the ten-year period pursuant to Louisiana Civil Code article 3499

("article 3499").  Article 3494 provides that:

> The following actions are subject to a liberative
> prescription of three years:
> (1) An action for the recovery of compensation for services
> rendered, including payment of salaries, wages,
> commissions, professional fees, fees and emoluments of
> public officials, freight, passage, money, lodging, and
> board;
> (2) An action for arrearages of rent and annuities;
> (3) *An action on money lent*;
> (4) An action on an open account; and
> (5) An action to recover underpayments or overpayments of
> royalties from the production of minerals, provided that
> nothing herein applies to any payments, rent, or royalties
> derived from state-owned properties.[82]

Conversely, article 3499 dictates that "[u]nless otherwise provided by legislation, a

personal action is subject to a liberative prescription of ten years."[83]  Actions sounding

in breach of contract are generally subject to the ten-year period of article 3499,

unless a specific statute supplies a different prescriptive period.[84]

Resolution of the instant Motion requires the Court to determine whether the

cause of action advanced by AWC for recovery of the capital contributions paid to the

Joint Venture by AWC on behalf of TMG is properly classified as an "action on money

lent," as TMG insists, or as a breach of contract, as AWC maintains.  If the former,

then the applicable prescription period is three years pursuant to article 3494,

---

[82] La. C.C. art. 3494 (emphasis added).
[83] La. C.C. art. 3499.
[84] *See Johnson v. Kennedy*, 235 La. 212, 225, 103 So. 2d 93, 98 (1958).

meaning that AWC's claims have since prescribed given that the last date alleged in the Complaint regarding loans is July 31, 2019;[85] this suit was not filed until over three years later on December 16, 2022.[86]   However, if AWC's action is not an "action on money lent" and is instead construed as a breach of the Joint Venture Agreement, then the applicable prescription period is the default ten-year period for personal actions pursuant to article 3499.

## 1.

The Louisiana Supreme Court has not directly considered whether an action to recover money lent by one joint venture member to another (or from one partner to another) is subject to a three-year prescription as an "action on money lent" or to a ten-year prescription.   Accordingly, the Court must make an *Erie* guess as to how the Louisiana Supreme Court would rule on this issue were it to be before them.[87]   An *Erie* guess requires this Court to "employ Louisiana's civilian methodology, [and] first examine primary sources of law: the constitution, codes, and statutes."[88]

At the outset, the Court notes that it is TMG's burden as the party invoking prescription to demonstrate that AWC's claims have prescribed.[89]   "Statutes providing for prescriptive periods are to be strictly construed in favor of maintaining

---

[85] R. Doc. 42 at ¶ 73.

[86] R. Doc. 1.

[87] *Weyerhaeuser Co. v. Burlington Ins. Co.*, 74 F.4th 275, 284 (5th Cir. 2023).

[88] *Id.* (quoting *Apache Deepwater, L.L.C. v. W&T Offshore, Inc.*, 930 F.3d 647, 654 (5th Cir. 2019)).

[89] *State v. Louisiana Land & Expl. Co.*, 2020-00685 (La. 6/30/21), 347 So. 3d 684, 688 ("The party pleading an exception of prescription bears the burden of proving that the action has prescribed."), *reh'g granted*, 2020-00685 (La. 10/19/21), 326 So. 3d 257, and *aff'd on reh'g*, 2020-00685 (La. 6/1/22), 339 So. 3d 1163.

a cause of action."[90]  Indeed, "[t]hose provisions of the Code which establish lesser terms of prescription should be *restrained to the particular cases which they regulate*, and to what is *expressly included* in their dispositions."[91]  That being said, "the clear words of the statute cannot be disregarded for the purpose of maintaining the action."[92]

TMG argues that the Court should reject AWC's attempt to "save its expired claim for money lent by contorting it into a general breach of contract claim" subject to the ten-year prescriptive period because to do so would be to effectively ignore the specific prescriptive period for "action[s] on money lent" provided in article 3494.[93]  Indeed, the Louisiana Supreme Court has explicitly rejected the view that the ten-year period of article 3499 applies anytime an action sounds in contract.  In *Starns v. Emmons*, the Louisiana Supreme Court explained that because all of the actions described in article 3494 "essentially arise from contractual relationships," to apply the ten-year period of article 3499 to all contractual actions would be to "render[] article 3494 useless."[94]  As that court stated, "[a]rticle 3494 does not present a choice between a contract remedy and some other remedy; it merely provides exceptions to the general rule stated in article 3499 that a personal action prescribes in ten years."[95]  Because the specific action in that case fell under a provision of article 3494,

---

[90] *David v. Our Lady of the Lake Hosp., Inc.*, 2002-2675 (La. 7/2/03), 849 So. 2d 38, 47 (citing *Lima v. Schmidt*, 595 So.2d 624, 629 (La. 1992)) (emphasis added).
[91] *Lacoste v. Benton*, 3 La. Ann. 220, 221 (1848).
[92] *David*, 849 So. 2d at 47 (citing *Ruiz v. Oniate*, 97–2412, p. 5 (La. 5/19/98), 713 So. 2d 442, 444–45).
[93] R. Doc. 25 at p. 3.
[94] 538 So. 2d 275, 278 (La. 1989); *accord Grabert v. Iberia Par. Sch. Bd.*, 93-2715 (La. 7/5/94), 638 So. 2d 645, 647.
[95] *Starns*, 538 So. 2d at 278.

the court found that that prescription statute applied instead of the default period of article 3499, even though the action was contractual in nature.[96]

To determine whether article 3494 or 3499 applies to an action, the Louisiana Supreme Court has instructed that "[t]he character of an action disclosed in the pleadings determines the prescriptive period applicable to that action."[97]  Because breach of contract under Louisiana law is "a legal premise, or principle, which gives rise to the right to claim some substantive remedy at law" and "not a free standing cause of action[,]"[98] the Court considers the precise nature of the action and relief sought as pled by AWC in its Complaint.  For the following reasons, the Court determines that AWC's claims are not for an "action on money lent" and, thus, not subject to article 3494's three-year prescription period.

The Louisiana Supreme Court has made clear that an action's superficial resemblance to the actions listed in article 3494 is insufficient to bring an action outside the ambit of the ten-year period provided by article 3499.  That is, the terms of article 3494 are not to be stretched so as to cover every possible action that could conceivably fall within them.  "[P]rescription is *stricti juris* and the statutes on the subject cannot be extended from one action to another, nor to analogous cases beyond the strict letter of the law."[99]  The Louisiana Supreme Court's opinion in *Duer &*

---

[96] *Id.*

[97] *Id.* at 277 (citations omitted); *accord Fishbein v. State ex rel. Louisiana State Univ. Health Scis. Ctr.*, 2004-2482 (La. 4/12/05), 898 So. 2d 1260, 1265 ("The prescriptive period applicable to an action is determined by the character of the action disclosed in the pleadings." (citing *Starns*, 538 So. 2d at 277)).

[98] *Grabert*, 638 So. 2d at 646.

[99] *Duer & Taylor v. Blanchard, Walker, O'Quin & Roberts*, 354 So. 2d 192, 194 (La. 1978) (citing *Gulf Oil Corporation v. State Mineral Board*, *on rehearing*, 317 So.2d 576 (La. 1975); *State v. Stewart Bros. Cotton Co., Inc.*, 193 La. 16, 190 So. 317 (1939); *Garland v. Estate of Scott*, 15 La. Ann. 143 (1860)).

*Taylor v. Blanchard, Walker, O'Quin & Roberts* is particularly instructive.[100]  There, the court confronted whether a ten year or three year prescription applied to an action by one attorney against another attorney to recover, pursuant to a fee sharing agreement, a portion of the fees collected by the attorney from the client.[101]  In that case, the defendants argued that such an action was one for attorney's fees and thus subject to the three-year prescriptive period provided by the then-existing Louisiana Civil Code article 3538.[102]  The Louisiana Supreme Court disagreed, explaining that a suit between attorneys to recover "a portion of the fee collected by the latter party from the client is not one for the recovery of attorney's fees, but rather is one for breach of the agreement to share in the fund resulting from the payment of the fee."[103]  Simply because the action involved a dispute over attorney's fees did not transform it into an action to recover attorney's fees as that term is used in the prescription statute.  Accordingly, the court found that a ten-year prescription applied.[104]

Analogously to *Duer and Taylor*, that AWC's claim involve monies that it lent to TMG does not thereby make it an "action on money lent" as that term is used in article 3494.[105]  Rather, AWC's entire action stems from and is wholly dependent on

---

[100] *Id.*

[101] *Id.* at 194.

[102] *Id.* Article 3538 is the predecessor to current article 3494.

[103] *Id.* at 195.

[104] *Id.*

[105] The term "action on money lent" is not defined in article 3494 and the Court has found no Louisiana caselaw providing an explicit definition.  The parties have not provided any definition either.  At first blush, it would seem to describe any action in which one party seeks to recover monies lent to another party.  That is, an action by a creditor against a debtor for money loaned by the creditor to the debtor.  But an examination of other prescription statutes shows that to be too broad of a definition.  For example, actions on negotiable and nonnegotiable instruments and on promissory notes are subject to a five-year liberative prescription. La. C.C. art. 3498.  Although a suit to recover on a promissory note would fall under a general definition of an "action on money lent," the Louisiana Legislature has clearly and explicitly sought to exclude certain types and forms of loans from the three-year

the underlying Joint Venture Agreement.  In its claim for "Breach of Contract," AWC alleges, *inter alia*, that TMG breached the parties' Joint Venture Agreement by (1) failing to provide necessary working capital contributions approved by the Joint Venture's Executive Committee, (2) failing to pay back over $6 million in loans to AWC, (3) refusing to attend and participate in Joint Venture Executive Committee meetings and refusing to approve necessary requests for capital contributions, and (4) secretly negotiating with Owner without the approval of either the Joint Venture or AWC.[106]  AWC urges the Court to view its attempt to recover the money loaned to TMG as inextricably linked to its other breach of contract allegations such that a ten-year prescription period is applicable across the board.[107]  To answer that question, the Court considers the nature and circumstances of the loans to TMG and their connection to the broader Joint Venture Agreement.

Under the Joint Venture Agreement between TMG and AWC, the parties agreed to furnish working capital to the Joint Venture in accordance with their proportionate share in the Joint Venture whenever a need for additional working capital is determined by the Managing Party, *i.e.*, AWC.[108]  In the event that a party fails to contribute its share of working capital to the Joint Venture, Article 7(e) of the Joint Venture Agreement provides that the non-defaulting party "may, at their

---

prescription period.  Thus, the types of actions which fall under the definition of an "action on money lent" are fewer than the definition might otherwise provide for.  Moreover, the Court is cognizant of the Louisiana Supreme Court's instruction that prescription statutes are to be strictly construed in favor of maintaining an action and that prescription statutes "cannot be extended from one action to another." *Duer & Taylor*, 354 So. 2d at 194 (citations omitted).

[106] R. Doc. 42 at ¶¶ 100–16.
[107] R. Doc. 18 at pp. 5–8.
[108] R. Doc. 42 at ¶ 30 (Article 7(a)).

option, pay the share of the Defaulting Party," and that "[i]f the Non-Defaulting Party pays all or part of the Defaulting Party's Contribution, *such payments shall be deemed to be demand loans* made by the Non-Defaulting Party to the Defaulting Party."[109] The Agreement continues that "[s]uch loans shall be immediately repayable by the Defaulting Party without notice . . . ."[110]

Importantly, the loans at issue here are not freestanding and independent of the Joint Venture Agreement; AWC did not simply loan money to TMG for TMG's own use separate from the Joint Venture.[111] The loans here arise only if one party to the Joint Venture defaults on its obligation to provide required capital contributions to the Joint Venture. That is, the loans only spring into existence if there is an underlying breach of the Joint Venture Agreement. Effectively, Article 7(e) of the Joint Venture Agreement serves as a contractual remedy agreed to by the parties in the event of a default on the obligation to contribute working capital. In this sense, Article 7(e) functions as a contractual means in enforcing compliance with the Joint Venture Agreement and encourages the parties to make required capital contributions.

AWC alleges that, beginning in 2015, Joint Venture partner TMG refused to contribute its share of working capital to the Joint Venture, in violation of the Joint Venture Agreement.[112] It is only due to this antecedent breach that the loans to TMG

---

[109] *Id.* at ¶ 31 (Article 7(e)) (emphasis added).
[110] *Id.*
[111] Moreover, although styled as a "demand loan" by the Joint Venture Agreement, the Court notes that, unlike a typical loan, no money is actually transferred from the non-defaulting party to the defaulting party. Rather, the non-defaulting party may, on its own volition, pay the share of the defaulting party's capital contributions to the Joint Venture. *Id.*
[112] *Id.* at ¶ 48.

at issue here came into fruition. Thus, AWC is correct that the loan amounts and the underlying breach of the Joint Venture Agreement are inextricably linked; TMG may defend against AWC's loan claims by arguing that it never defaulted on its obligations under the Joint Venture Agreement in the first place. Again, the loans owe their very existence to a breach of the Joint Venture Agreement. Yet, TMG does not contest that a ten-year prescription period applies to AWC's claim regarding the underlying breach.[113] The Court finds it absurd to conclude that AWC's claim for breach of the Joint Venture Agreement for failing to contribute working capital has not yet prescribed but that the contractual provision regarding the remedy for such a breach has prescribed. Accepting TMG's argument at face value would allow AWC to recover the damages it sustained from TMG's failure to make capital contributions but not in the form of the agreed-upon Article 7(e) loan arrangement. That is, AWC could still recover under TMG's argument but under a different label. The Court finds no reason to pick every aspect of AWC's claim apart, completely divorced from the contractual scheme, the Joint Venture, underlying this dispute. Such a mechanistic and artificial process is not in line with the command that "[s]tatutes providing for prescriptive periods are to be strictly construed *in favor of maintaining a cause of action*."[114]

*Norris v. Causey,*[115] a decision from another section of this court relied on by TMG, is not to the contrary. In that case, the plaintiffs argued that because they had entered into a joint venture agreement with the defendants, all of their claims—

---

[113] R. Doc. 25 at p. 6.

[114] *David*, 849 So. 2d at 47 (citing *Lima*, 595 So.2d at 629).

[115] No. CV 14-1598, 2016 WL 311746 (E.D. La. Jan. 26, 2016) (Barbier, J.)).

including breach of contract, unjust enrichment, and fraud—were subject to the ten-year prescription period of article 3499.[116]   Although the court agreed with the plaintiffs that "claims arising out of a joint venture agreement, such as breach of fiduciary duty, are subject to the default ten-year period[,]"[117] the court nevertheless held that a five-year prescriptive period applied to plaintiffs' fraud claims because "[a]rticle 2032 specifically provides that a claim for rescission of a contract for fraud is subject to a five-year prescriptive period."[118]   The court further noted that "Plaintiffs' argument ignores the fact that different claims asserted in the same complaint may be subject to different prescriptive periods."[119]

The facts of *Norris* are distinguishable from the facts of this case.  In *Norris*, the plaintiffs did not dispute that they were alleging a fraud claim against the defendants.  The issue there was whether the existence of a joint venture relationship modified the otherwise applicable prescription statute for fraud claims.  The sole question here is whether AWC's claims are properly classified as an "action on money lent" or not.  That is, the parties dispute the nature of the underlying action.  Such was not the case in *Norris* where the plaintiffs agreed that they alleged a claim for fraud.  That different causes of action in a complaint may have different prescriptive periods is not disputed by AWC here.  Accordingly, *Norris* has no bearing on the instant action.

---

[116] *Id.* at *5.
[117] *Id.* (citing *Henley v. Haynes*, 376 So. 2d 1030, 1031 (La. App. 1 Cir. 1979)).
[118] *Id.*
[119] *Id.*

**2.**

Louisiana caselaw also supports the Court's determination that the three-year prescription period of article 3494 for actions on money lent is not applicable to AWC's claim.  Several Louisiana state courts, as well as the United States Court of Appeals for the Fifth Circuit, have addressed the applicable prescription period for actions against one partner (or joint venture member) against another to recover monies lent, finding a ten-year prescription applicable.

The most directly analogous case to the instant action that AWC cites is *Bevpac Properties v. Stakelum*, a Louisiana Fourth Circuit Court of Appeal case.[120]  In that matter, the plaintiffs—a Louisiana partnership and one of the partners—filed suit against one of the other partners for failure to abide by the terms of a partnership agreement.[121]  The sole purpose of the partnership was to own and manage an office building in downtown New Orleans and each partner was obligated under the partnership agreement to lease a certain amount of space on the first floor of the office building.[122]  The plaintiffs claimed that the defendant breached the terms of the partnership agreement by failing to make the required rental payments to the partnership.[123]  In response, the defendant claimed an exception of prescription arguing that because the plaintiffs' action sought arrearages in rent, the action was subject to the three-year prescription period of article 3494.[124]  The Louisiana First

---

[120] *Bevpac Properties v. Stakelum*, 94-0395 (La. App. 4 Cir. 9/29/94), 645 So. 2d 1170, *writ denied*, 95-0107 (La. 3/10/95), 650 So. 2d 1185.
[121] *Id*. at 1171.
[122] *Id*.
[123] *Id*.
[124] *Id*. at 1172.

Circuit disagreed, finding that the plaintiffs' lawsuit was for breach of the partnership agreement, not for arrearages of rent, and thus subject to the ten-year period of article 3499.[125]   The court found that the plaintiffs' action had only a superficial resemblance to an "action for arrearages of rent" because the defendant did not actually have a lease, "only an obligation to lease and make specified rental payments to the partnership," as set forth in the partnership agreement.[126]  The court further explained that the "rental payments" were simply a part of the defendant's required contribution to the partnership "to enable it to pay the mortgage on the building" and that the defendant, "as a partner in the partnership which owns the building, is more than a mere tenant."[127]

The clear import of *Bevpac* is that, similar to *Duer & Taylor*, merely because an action may resemble one of those enumerated in article 3494, a court must look past labels and determine the character of the action in the broader context.  Further, *Bevpac* emphasizes the importance of the partnership relationship to the applicable prescription period, suggesting that when actions arise within the confines of a partnership agreement, the action is properly considered one for breach of contract.[128]  Just as the *Bevpac* court found that the action to collect the money owed by the

---

[125] *Id.*

[126] *Id.*

[127] *Id.*

[128] TMG attempts to distinguish *Bevpac* on the grounds that the lease obligations in that case were set out explicitly in the partnership agreement while the "alleged loans by AW[C] are not specifically set forth within the Joint Venture agreement" and "were subsequently created and deemed 'an on-demand loan' by AW[C]." R. Doc. 25 at pp. 8–9.  This is a distinction without a difference. The existence of the loans here are wholly dependent on the Joint Venture Agreement.  That they come into fruition only upon the occurrence of a condition precedent, *i.e.*, breach of the Joint Venture Agreement, does not separate them from the Joint Venture Agreement.

defendant for his failure to pay his lease obligations under the partnership agreement was not an "action for arrearages of rent," this Court finds that AWC's action to recover the money it advanced to the Joint Venture on TMG's behalf pursuant to the Joint Venture Agreement is not an "action on money lent."

Next, the Court finds the United States Court of Appeals for the Fifth Circuit's opinion in *First National Bank of Commerce v. de Lamaze*[129] to be persuasive.  That case involved a suit by one partner against his co-partner to recover money that the plaintiff partner advanced on behalf of the defendant co-partner for the purchase of partnership property due to the co-partner's lack of the necessary funds.[130]  The defendant co-partner argued that the five-year prescription period for promissory notes set forth in Louisiana Civil Code article 3498 applied because the plaintiff's action was an action on a promissory note.[131]  The Fifth Circuit, applying Louisiana law, rejected the defendant's argument, finding that "a loan from one partner to another for partnership purposes . . . is governed by the 10-year prescriptive period for personal actions provided by Civil Code article 3499."[132]  Importantly, the court distinguished actions on loans between partners from actions on loans in the routine business context.  Citing article 3494, the court explained that "[a] loan between parties dealing at arm's length in a mercantile context is subject to a three-year prescriptive period."[133]  But, the court continued, where the loan arises in the context

---

[129] *First Nat. Bank of Com. v. de Lamaze*, 7 F.3d 1227 (5th Cir. 1993).

[130] *Id.* at 1228.

[131] *Id.*

[132] *Id.* at 1229.  Specifically, the court found that even if the plaintiff's action on the promissory note had prescribed, the underlying obligation had not prescribed because the debt was not extinguished by the note.  *Id.*

[133] *Id.* (citing *Reddick v. White*, 46 La. Ann. 1198, 15 So. 487 (La. 1894)).

of a partnership and is made for partnership purposes, a ten-year prescription period applies.  As the court explained:

> Partners deal with each other in an ongoing relationship. They routinely document and retain records of their dealings during the life of the partnership and accomplish settlement thereafter. These continuing circumstances warrant the allowance of more time for the assertion of claims arising from the partnership relationship than ordinarily would be accorded claims on debts arising in the course of transient commercial encounters.[134]

The Court finds the reasoning of the *de Lamaze* court to be equally applicable to the joint venture at issue in this matter.[135]

In support of its holding, the Fifth Circuit in *de Lamaze* relied on several Louisiana state court cases discussing the applicable prescription period for suits between partners.  Perhaps most important to that decision, and to the decision of this Court, is the Louisiana Supreme Court's 1894 opinion in *Reddick v. White*.[136] There, the court found that in an action between partners over partnership debts the three year prescription period "has no application" to such an action because "[t]hat prescription refers to accounts for goods sold, and merchants' accounts against their customers, and generally to those business or other relations in which accounts are

---

[134] *Id.* (citing *Jones v. Butler*, 346 So. 2d 790, 792 (La. App. 1 Cir. 1977)).

[135] Throughout its Reply brief, TMG futilely attempts to differentiate between partnerships and joint ventures and disclaims the import of *de Lamaze* as that case concerns partnerships.  The very caselaw cited and emphasized by TMG undercuts its argument. Under Louisiana law, "[w]hile a joint adventure is not identical with a partnership, it is analogous to a partnership and is controlled largely by the principles or rules applicable to partnerships." *Ault & Wiborg Co. of Canada v. Carson Carbon Co.*, 181 La. 681, 688 (1935). "[I]n general, joint ventures are governed by the law of partnership." *Latiolais v. BFI of Louisiana, Inc.*, 567 So. 2d 1159, 1161 (La. App. 3d Cir. 1990) (quoting *Cajun Electric Power Cooperative, Inc. v. McNamara*, 452 So.2d 212, 215 (La. App. 1st Cir. 1984)).  Joint ventures and partnerships are legally distinct entities, but it does not follow that the legal principles applicable to one are not largely applicable to the other.  The distinctions that do exist between partnerships and joint ventures are not relevant here.

[136] 46 La. Ann. 1198, 15 So. 487 (La. 1894).

usually rendered."[137]  Instead, the court found a ten-year prescription to be applicable because "prescription against the action for moneys advanced or debts paid by one for another, or for the settlement of a partnership, is ten, not three or five, years."[138]  Similarly, in *Henley v. Haynes*, the First Circuit Court of Appeal of Louisiana held that suits based on a partnership agreement and the obligations of one partner to another are subject to a ten-year prescription period.[139]  Likewise, the Third Circuit Court of Appeal of Louisiana, in *Broussard v. Crocher, Broussard & Co.*, held than an action by one partner against another partner to recover amounts advanced from the partnership is prescribed by ten years, citing *Reddick*.[140]

TMG unpersuasively attempts to distinguish this string of cases primarily on the grounds that more recent caselaw supports TMG's position, and, further, that the Court should not feel itself bound to follow the above cases under the doctrine of *jurisprudence constante*.[141]  The two cases cited by TMG as allegedly calling into question the above caselaw are not helpful to TMG.  Discussed above, *Norris v. Causey* concerns a different issue than that relevant here and does not contradict any of the above cases.[142]  Likewise, *Minor v. Monroe Surgical Hospital, LLC*, does not undermine any case cited by AWC in support.[143]  In *Minor*, the court rejected the plaintiff's attempt to classify his relationship with the defendant as akin to a joint

---

[137] *Id*. at 1207–08.
[138] *Id*. at 1208.
[139] *Henley v. Haynes*, 376 So. 2d 1030 (La. App. 1 Cir. 1979).
[140] *Broussard v. Crochet, Broussard & Co.*, 477 So. 2d 166 (La. App. 3 Cir. 1985).
[141] *See* R. Doc. 25 at pp. 6–7.
[142] Moreover, *Norris* is a decision from another section of this court, not from a Louisiana state court.
[143] 49,367 (La. App. 2 Cir. 11/19/14), 154 So. 3d 665, *writ denied*, 2014-2667 (La. 3/13/15), 161 So. 3d 641.

venture and thus subject his action to a longer prescriptive period.[144]  TMG focuses
on dicta from the court's opinion stating that "regardless of the denomination given
to the relationship between" the plaintiff and defendant, a three-year prescription
applies due to the nature of the underlying action.[145]  That holding is not in tension
with *de Lamaze*, *Bevpac*, or any other case cited by AWC.  Those cases do not, as TMG
suggests, stand for the proposition that a ten-year prescription period applies any
time a joint venture or partnership is implicated; rather, they more narrowly provide
that actions between partners to recover money loaned or advanced from one partner
to another for partnership purposes is subject to a ten-year prescription rather than
a shorter period for an "action on money lent."  That is, they focus on the nature of
the underlying claim in the context of the parties' relationship vis-à-vis one another.
Moreover, *Minor* does not cite to any of the above partnership-specific caselaw and
by no means overrules those prior cases.[146]

In sum, the Court finds that TMG has not met its burden of proving that AWC's
claims have prescribed.  The loans at issue here are sufficiently intertwined with and
dependent upon the underlying Joint Venture Agreement such that the court finds
that this action is one for breach of that agreement and not an "action on money lent."
Moreover, TMG has failed to distinguish the Louisiana caselaw holding that an action
by one partner against another partner for recovery of monies loaned or advanced to

---

[144] *Id.* at *5–7.

[145] *Id.* at *6.

[146] It is not lost on the Court that TMG argues at length that the civil law doctrine of *jurisprudence constante* counsels against relying on *de Lamaze* and the other cases cited by AWC due to the alleged paucity of caselaw while simultaneously relying on a single Louisiana intermediate appellate court decision.

the other partner for partnership purposes has a ten-year prescription period. Louisiana caselaw is clear that prescription statutes should be strictly construed so as not to unnecessarily deprive a litigant of their right of action through open-ended and expansive interpretations of the prescription statutes. Accordingly, the Court holds that the ten-year period provided by Louisiana Civil Code article 3499 applies to AWC's claim to recover money loaned to TMG pursuant to the Joint Venture Agreement. The Court denies TMG's motion.

## B. Attorney's Fees

TMG also contends that AWC's claims for attorney's fees must be dismissed because AWC failed to cite to any statutory or contractual basis providing for attorney's fees.[147] Further, TMG argues that although the Joint Venture Agreement contains a provision allowing for attorney's fees, AWC failed to reference that provision in its Complaint.[148] The Court finds that TMG's arguments have been mooted by AWC's filing of its Second Amended Complaint which explicitly cites to Article 15(e) of the Joint Venture Agreement as a basis for recovery of attorney's fees.[149] That article provides, in relevant part, that "[t]he Defaulting Party further agrees to pay all legal expenses required of or by the Non-Defaulting Party to protect their interests or defend any action arising out of the Defaulting Party's breach, including court costs and disbursements and fees on a solicitor and his own client basis."[150] Indeed, in its motion for leave to file its Second Amended Complaint, which

---

[147] R. Doc. 17-2 at pp. 7–8.
[148] R. Doc. 25 at p. 10.
[149] *See* R. Doc. 42 at ¶¶ 34, 117, 130, 142.
[150] *Id.* at ¶ 34.

TMG did not oppose, AWC explained that its amendment addressed "the specific contractual basis for AWC to recover its attorneys' fees[.]"[151]  Accordingly, the Court finds that AWC has adequately pleaded a claim for attorney's fees and, thus, denies TMG's Motion.

## IV.   CONCLUSION

For the foregoing reasons, the Defendant's Motion to Dismiss Pursuant to Rule 12(b)(6)[152] is **DENIED.**

New Orleans, Louisiana, September 14, 2023.

**WENDY B. VITTER**
**United States District Judge**

---

[151] R. Doc. 40 at p. 2.
[152] R. Doc. 17.