UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ARCHER WESTERN CONTRACTORS, LLC | CIVIL ACTION |
| VERSUS | NO. 22-5323 |
| MCDONNEL GROUP, LLC | SECTION: D(5) |

### ORDER AND REASONS

Before the Court is a Motion for Partial Summary Judgment as to Defendant's Affirmative Defenses filed by Plaintiff Archer Western Contractors, LLC ("AWC").[1] Defendant McDonnel Group, LLC ("TMG") filed a response in opposition to AWC's Motion,[2] and AWC filed a reply brief.[3]  After careful consideration of the parties' memoranda, the record, and the applicable law, the Court **GRANTS** AWC's Motion.

## I.    FACTUAL AND PROCEDURAL BACKGROUND[4]

On May 2, 2011, AWC and TMG entered into a Joint Venture Agreement (the "Agreement"), establishing the McDonnel Group, LLC/Archer Western Contractors, Ltd. Joint Venture (the "Joint Venture").[5]  The purpose of the Joint Venture was to pursue and perform a contract with the Law Enforcement Division of the Parish of Orleans, State of Louisiana (the "Owner") for the construction of a project known as

---

[1] R. Doc. 125.
[2] R. Doc. 129.
[3] R. Doc. 133.
[4] This Court has previously detailed the factual background of the events germane to this lawsuit in the Court's prior rulings on the parties' various motions.  Accordingly, the Court summarizes the relevant background only as it relates to the instant Motion for Partial Summary Judgment as to Defendant's Affirmative Defenses.  *See* R. Docs. 50, 67, 146, 165, and 174.  For the purposes of the factual background, the Court considers AWC's Statement of Undisputed Material Facts in Support of its Motion for Partial Summary Judgment as to Defendant's Affirmative Defenses, R. Doc. 125-1 and TMG's Statement of Contested Material Facts, R. Doc. 129-1.  TMG partially disputes Numbers 1, 2, 14-18, 20, and 28, and TMG disputes Numbers 11, 12, 13, 19, 26, 37, and 39.
[5] R. Doc. 146 at 2; R. Doc. 125-1 at ¶¶ 1-2.

the Orleans Parish Sheriff's Office Inmate Processing Center/Templeman III & IV Replacement Administration Building (the "Project").[6]

On July 28, 2011, the Joint Venture entered into a contract with the Owner to construct the Project for an original contract sum of $144,929,000.00.[7]  During the course of the Project, the Owner caused the Joint Venture to incur additional costs, requiring the Joint Venture to obtain additional capital contributions from its constituent parties—AWC and TMG.[8]  Under the terms of the Agreement, the determination of when working capital is required for the performance of the Agreement involves an initial determination by AWC as the Managing Party and then a subsequent approval by the Executive Committee, which is comprised of representatives and alternates from each AWC and TMG.[9]  The parties agree that beginning in mid-2015 and continuing until mid-2019, AWC made numerous determinations for working capital contributions from the parties and that TMG failed to make any such contributions.[10]  Ultimately, the Joint Venture was forced to pursue a legal action against the Owner, and that lawsuit is currently being litigated in state court.[11]

Thereafter, on December 16, 2022, AWC filed the instant lawsuit in this Court against TMG, alleging Breach of Contract in Count 1, Breach of Fiduciary Duty in

---

[6] R. Doc. 125-1 at ¶¶ 1, 2.
[7] *Id.* at ¶ 5.
[8] *Id.* at ¶¶ 7-10.
[9] R. Doc. 125-4 at 4.
[10] R. Doc. 158 at 4.
[11] R. Doc. 125-1 at ¶ 11.

Count II, and Enrichment Without Cause in Count III.[12]   Relevant to the instant Motion, AWC alleges that TMG breached the Agreement and its fiduciary duty by (1) failing to provide necessary working capital contributions to the Joint Venture; (2) refusing to approve AWC's requests for contribution of working capital; and (3) refusing to attend and participate in Executive Committee meetings.[13]   On September 28, 2023, TMG filed an Answer to AWC's Second Amended Complaint, asserting, among other things, a number of affirmative defenses.[14]

In the instant Motion, AWC seeks summary judgment as eight affirmative defenses, the relevant portions of which provide:[15]

VI.   One or more of the claims raised by AWC are barred by the doctrine of unclean hands.

VIII.   One or more of the claims raised by AWC are barred by failure of consideration, failure of cause, and/or fraud in the inducement of TMG to enter into the JV Agreement . . . .

IX.   One or more of the claims raised by AWC are barred because of AWC's prior breach of and/or failure to perform its obligations under the JV Agreement and/or Louisiana law.

XI.   . . . [AWC's claimed injures were] caused solely through negligence and/or comparative negligence and/or assumption of the risk . . . .

XII.   . . . [C]ontributory and/or comparative negligence . . . .

XIII.   . . . [F]ailure to mitigate damages . . . .

---

[12] R. Doc. 1.  The Court ordered AWC to file an Amended Complaint properly alleging the citizenship information of the parties to ensure the Court has subject matter jurisdiction over this action.  R. Doc. 4.  AWC subsequently filed an Amended Complaint.  R. Doc. 6.  Several months later, AWC filed a Second Amended Complaint clarifying certain factual allegations made in its Amended Complaint.  R. Doc. 42.  The Court considers only the Second Amended Complaint here.
[13] R. Doc. 42 at ¶¶ 112, 123.
[14] R. Doc. 88.
[15] R. Doc. 125-2 at 1.

XIV.   . . . [T]he conditions alleged herein were caused by the negligent, wanton, careless, or unreasonable conduct of AWC and/or third-parties for whom TMG is not responsible.

XV.   . . . [TMG] is entitled to a credit and/or offset for actions and omissions of AWC toward TMG and its interest in the JV.[16]

AWC groups these affirmative defenses into three categories—material breach defenses (defenses VIII and IX), fault-based defenses (defenses VI, XI, XII, XIV and XV), and the failure to mitigate defense (defense XIII)—and argues that it is entitled to summary judgment as to each category.   Specifically, AWC argues that TMG waived the material breach defenses by continuing to participate in the Joint Venture rather than exercising the remedies provided for by the Agreement after it came to learn of AWC's alleged breaches.[17]   AWC argues that TMG's fault-based defenses fail because the Agreement expressly provides that the parties share the risk of loss regardless of fault.[18]   AWC acknowledges that this provision includes an exception for a party acting in bad faith but argues that TMG neither plead nor produced evidence of bad faith.[19]   Finally, AWC argues that TMG's failure to mitigate defense fails for the same reason TMG's fault-based affirmative defenses fail, namely that the Agreement provides for the prorated loss regardless of mitigation efforts.[20]   AWC also argues that even if mitigation affects the calculus, there is no evidence that it failed to mitigate the Joint Venture's damages.[21]

---

[16] *Id.* at 19-21.
[17] *Id.* at 5.
[18] *Id.* at 14.
[19] *Id.* at 15.
[20] *Id.* at 22-23.
[21] *Id.* at 23.

TMG filed a response in opposition which, at the outset, argues that there is outstanding discovery and asks the Court to deny AWC's Motion on this basis or alternatively, defer consideration of the Motion until the discovery is completed.[22] TMG goes on to argue the propriety of each of its affirmative defenses with which AWC takes issue.  First, as to the material breach defenses, TMG argues that it was unable to withdraw from the Joint Venture because such a decision would put TMG "on the hook for performing the Project by itself, which was not a practical option."[23] TMG further attacks AWC's material breach arguments by arguing that the case law on which AWC relies is outdated.[24]  Second, TMG concedes that it does not plead bad faith as an affirmative defense and argues instead that bad faith is merely an element to the fault-based affirmative defenses that it has raised.[25]  TMG also argues that summary judgment as to the fault-based defenses would be premature because this Court cannot "adjudicate whether or not the parties to the Agreement must share in the profits or losses" prior to the resolution of the state court litigation.[26]  TMG does not appear to address AWC's arguments as to the failure to mitigate defense.

In its reply, AWC urges the Court to disregard TMG's request for further discovery, insisting that there is no outstanding discovery that could produce evidence relevant to the instant Motion and that TMG "mischaracterizes a minor, w holly irrelevant discovery dispute in an effort to delay adjudication of AWC's

---

[22] R. Doc. 129 at 14-15.
[23] R. Doc. 129 at 10-11.
[24] *Id*. at 11-13.
[25] *Id*. at 6.
[26] *Id*. at 7.  TMG does not independently respond to AWC's arguments as to Affirmative Defense XIII, the mitigation of damages defense, presumably intending its response to AWC's fault-based defense argument to apply with equal force.

Motion."[27]  AWC then argues TMG has failed to substantively refute AWC's evidence of bad faith.[28]  As to the material breach defenses, AWC disregards as "irrelevant and factually baseless" TMG's position that it had no other choice to continue execution of the Agreement because TMG could not have completed the Project by itself.[29]  AWC argues that TMG knew the terms of the Agreement before it entered into it, and TMG's failure to negotiate for adequate terms is not a basis for denying summary judgment.[30]

## II.   LEGAL STANDARD

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[31]  A dispute is "genuine" if it is "real and substantial, as opposed to merely formal, pretended, or a sham."[32]  Further, a fact is "material" if it "might affect the outcome of the suit under the governing law."[33]  When assessing whether a genuine dispute regarding any material fact exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[34]  While all reasonable inferences must be drawn in favor of the nonmoving party, a party cannot defeat

---

[27] R. Doc. 133 at 2.
[28] *Id.* at 6.
[29] *Id.*
[30] *Id.*
[31] FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).
[32] *Bazan ex rel. Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 489 (5th Cir. 2001) (citing *Wilkinson v. Powell*, 149 F.2d 335, 337 (5th Cir. 1945)).
[33] *Anderson*, 477 U.S. at 248.
[34] *Delta & Pine Land Co. v. Nationwide Agribus. Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008) (citations omitted).

summary judgment with conclusory allegations, unsubstantiated assertions, or "only a scintilla of evidence."[35]  Instead, summary judgment is appropriate if a reasonable jury could not return a verdict for the nonmoving party.[36]

AWC's Motion seeks summary judgment as to certain affirmative defenses on which TMG will have the burden of proof at trial.[37]  When, as here, the nonmoving party will bear the burden of proof at trial on the dispositive issue, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's defense.[38] The burden then shifts to the nonmoving party who must go beyond the pleadings and, "by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"[39]

## III.   ANALYSIS

### A. Whether the Court Should Defer Ruling on AWC's Motion Pending Outstanding Discovery.

At the outset, the Court addresses whether AWC's Motion is premature given TMG's claim that there is relevant outstanding discovery.  TMG explains that the Rule 30(b)(6) deposition of Mr. Whelan, AWC's designee, was continued based on Mr. Whelan's alleged lack of preparation and that the parties have been unable to

---

[35] *Id*. (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)) (internal quotation marks omitted).
[36] *Id*. at 399 (citing *Anderson*, 477 U.S. at 248).
[37] *F.T.C. v. Nat'l Bus. Consultants, Inc.*, 376 F.3d 317, 322 (5th Cir. 2004) (citing *United States v. Cent. Gulf Lines, Inc.*, 974 F.2d 621, 629 (5th Cir. 1992)) ("An affirmative defense places the burden of proof on the party pleading it.").
[38] *See Celotex*, 477 U.S. at 322–23.
[39] *Id*. at 324 (quoting FED. R. CIV. P. 56(e)).

reschedule the deposition.[40]   Based on this, TMG urges the Court to deny or, in the alternative, defer consideration of AWC's Motion until Mr. Whelan's deposition can be taken.

TMG seeks relief under Rule 56(d), which "allows a court to deny a summary judgment motion and extend discovery if the party opposing summary judgment 'shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition.'"[41]   Indeed, "Rule 56(a) motions for additional discovery are broadly favored and should be liberally granted[;]" however, relief is not automatic.[42]   Instead, "the party filing the motion must demonstrate how additional discovery will create a genuine issue of material fact."[43]   "In particular, the party opposing summary judgment 'must set forth a plausible basis for believing that specified facts, susceptible of collection within a time frame, probably exist and indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion.'"[44]   It must also show that it "diligently pursued discovery."[45]

Despite the lenient standard under which Rule 56(d) motions are considered, TMG has failed to meet its burden to show that the Court should defer consideration of or deny AWC's Motion due to the outstanding re-deposition of Mr. Whelan.   In

---

[40] R. Doc. 129 at 15.
[41] *Jacked Up, LLC v. Sara Lee Corp.*, 854 F.3d 797, 816 (5th Cir. 2017) (quoting FED. R. CIV. P. 56(d)).
[42] *Id.* (quoting *Smith v. Reg'l Transit Auth.*, 827 F.3d 412, 422-23 (5th Cir. 2016)) (internal quotations omitted).
[43] *Id.* (quoting *Smith*, 827 F.3d at 422-23) (internal quotations omitted).
[44] *Id.* (quoting *Am. Fam. Life Assur. Co. of Columbus v. Biles*, 714 F.3d 887, 894 (5th Cir. 2013)).
[45] *Id.* (quoting *McKay v. Novartis Pharm Corp.*, 751 F.3d 694, 700 (5th Cir. 2014)) (internal quotations omitted).

support of its request, TMG broadly alleges the topics on which it plans to depose Mr. Whelan.   TMG explains that it seeks information as to the experience of AWC personnel on the project, an oral agreement to pay a fact witness in this case a consulting fee for non-testimonial expertise, and the Joint Venture and AWC's plans, theories, and ability to collect on a state court judgment.[46]  TMG does not, however, specify facts it intends to uncover, nor does it explain how information it hopes to obtain through the deposition will create a genuine issue of fact fatal to AWC's motion for summary judgment.  In short, TMG has failed to tether the limited outstanding discovery to the creation, or even the potential creation, of a genuine issue of fact that would mandate denial of the motion. Without the benefit of this information, granting TMG's request would merely give TMG license to go on a fishing expedition—an exercise not provided for by Rule 56(d).[47]   Accordingly, the Court rejects TMG's invitation to deny or defer ruling on AWC's Motion pending additional discovery.

Moreover, TMG's underlying explanation for why it requests additional time to gather summary judgment evidence is that Mr. Whelan was unavailable to reschedule the Rule 30(b)(6) deposition prior to the deadline for TMG's opposition to the instant Motion.[48]  The Court points out that nearly eight months have elapsed since TMG's Opposition was due and TMG has not filed a supplemental opposition to AWC's Motion or indicated in any way that it has uncovered facts preclusive of

---

[46] R. Doc. 129 at 15.

[47] *Menard v. LLOG Expl. Co.*, 259 F.Supp.3d 475, 479 (E.D. La. 2017) (quoting *Duffy v. Wolle*, 123 F.3d 1026, 1041 (8th Cir. 1997)) (brackets omitted) ("Plaintiff's desire for additional information, without more, does not warrant a continuance under Rule 56(d).  Rule 56(d) 'does not condone a fishing expedition where a plaintiff merely hopes to uncover some possible evidence of value.'").

[48] R. Doc. 12-4 at ¶ 8.

summary judgment or that it has even scheduled or conducted Mr. Whelan's make-up deposition.  In addition to the deficiencies outlined above, this fact calls into question whether TMG has "diligently pursued" the opportunity to depose Mr. Whelan.[49]

### B.  Whether AWC Is Entitled to Summary Judgment as to Certain of TMG's Affirmative Defenses.

As outlined above, AWC seeks summary judgment as to Affirmative Defenses VI, VIII, IX, XI, XII, XIII, XIV, and XV.  TMG insists summary judgment would be inappropriate as to each affirmative defense.  The Court considers the parties' arguments in turn.

### i.   TMG's Material Breach Defenses (Affirmative Defenses VIII and XI)

AWC argues that the so-called material breach defenses must be dismissed because TMG waived its right to object to any breach by AWC through continued participation in the Agreement despite it having knowledge of AWC's breaches.  In support of its argument, AWC cites case law standing for the proposition that, in the event of one party's breach of contract, the nonbreaching party waives its right to object to the breach if the nonbreaching party continues performing the contract.

---

[49] To the extent Mr. Whelan was re-deposed and TMG believes information relevant to the instant Motion exists in the record following any re-deposition, TMG has not pointed the Court to that information.  Indeed, "Rule 56 does not impose upon the district court to sift through the record in search of evidence to support a party's opposition to summary judgment."  *Ragas v. Tenn. Cas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 n.7 (5th Cir.), *cert. denied*, 506 U.S. 832, 113 S.Ct. 98 (1992)).

AWC then points to evidence that TMG had knowledge of AWC's prior breaches but nevertheless continued to execute the Agreement through May 2014.

In its opposition, TMG does not argue that it lacked knowledge of AWC's prior breaches or that it continued operating in the Joint Venture following AWC's breaches. It appears to argue instead that the case law relied upon by AWC is outdated and that Louisiana law no longer requires a nonbreaching party to choose between continued performance and dissolution of the contract. TMG then argues that even if was required to make this election upon learning of AWC's breaches, dissolution would have put it "on the hook for performing the Project by itself, which was not a practical option," and that "AWC cites no law holding that a joint venturer must surrender its interest in its own capital account in the joint venture if it does not wish to waive the right to defend itself against a co-joint venturer's later attempts to run up the joint costs over objections to the mismanagement.."[50]

In its reply, AWC argues that TMG's alleged inability to complete the Project on its own is irrelevant. AWC argues that the "common law doctrine of commercial impracticability has no application under Louisiana law" and even if it did, that TMG, which knew the terms of the Agreement when the parties executed it, should not be afforded special treatment for its failure to properly negotiate the parties' Agreement.[51]

"Similar to other jurisdictions, Louisiana recognizes the principle that where one party substantially breaches a contract the other party to it has a defense and an

---

[50] R. Doc. 129 at 11.
[51] R. Doc. 133 at 6.

excuse for non-performance."[52]  This right may be waived, however, when the non-breaching party fails to protest or notice an objection, thereby waiving its right to do so.[53]  "Waiver occurs when there is an existing right, a knowledge of its existence and an actual intention to relinquish it or conduct so inconsistent with the intent to enforce the right as to induce a reasonable belief that it has been relinquished."[54]

The United States Court of Appeals for the Fifth Circuit, applying Louisiana law, applied this exact scenario in *Autrey v. Williams and Dunlap*.[55]  *Autrey* involved claims by subcontractors that the general contractor overseeing construction of the England Air Force Base Housing Project in Alexandria, Louisiana, failed to properly prepare the construction site, furnish materials, and supervise and coordinate the work of the subcontractors, all in breach of the subcontracts.[56]  The Fifth Circuit ultimately found it unnecessary to decide whether the general contractor breached the subcontracts, however, explaining that the subcontractors waived their rights to object to the contractor's alleged breaches of contract by electing to continue their respective contracts despite knowledge of the alleged breaches.[57]  In so finding, the Court explained "that when a contract not already fully performed on either side is continued in spite of a known excuse, the defense thereupon is lost and the injured

---

[52] *Olympic Ins. Co. v. H.D. Harrison, Inc.*, 463 F.2d 1049, 1053 (5th Cir. 1972) (collecting cases) (footnote omitted); *Andrew Dev. Corp. v. W. Esplanade Corp.*, 347 So.2d 210, 212-23 (La. 1977) ("Where a party refuses and does not merely fail or neglect to comply with his contractual obligation, his refusal constitutes an active breach of the contract which relieves the other party of the obligation of continuing to perform under the contract.").

[53] *Marsh Buggies, Inc. v. Weems Geophysical, Inc.*, No. 98-CV-2767, 1999 WL 731416, at *3 (E.D. La. Sept. 17, 1999) (citing *McNamarra v. Bd. of Com'rs of Tensas Basin Levee Dist.*, 11 So.278 (La. 1892)).

[53] *Autrey v. Williams and Dunlap*, 343 F.2d 730, 736-37 (5th Cir. 1965).

[54] *Id.* (citations omitted).

[55] *Id.* at 736-37.

[56] *Id.* at 733, 736.

[57] *Id.* at 736-37.

party is himself liable if he subsequently fails to perform, unless the right to retain the excuse is not only asserted but assented to."[58]

While the foregoing case law concerns a party's waiver of a claim rather than an affirmative defense, the Court sees no meaningful distinction between a waiver of one's right to bring a claim for breach of contract and waiver of one's right to assert prior breach of contract as an affirmative defense.[59] The policy behind "waiver as an excuse for nonperformance is equitable in nature" and is "designed to prevent the waiving party from lulling the other party into a belief that strict compliance with a contractual duty will not be required and then . . . suing for noncompliance."[60] It would be absurd to protect a breaching party in this way but then to effectively give the originally non-breaching party carte blanche to continue execution the contract

---

[58] *Id.* (citations omitted).  Federal and state courts in Louisiana have continued to apply this rule following *Autrey*.  *See Marsh Buggies*, 1999 WL 731416, at *3 (E.D. La. Sept. 17, 1999); *U.S. ex. rel. Riley v. Diran Co.*, 597 F.2d 446, 447 (5th Cir. 1979) (a party's failure to object to a contractor's work that it knew did not comply with specifications waived his right to object); *Keating v. Miller*, 292 So.2d 759, 761 (La. App. 4 Cir. 1974) ("When plaintiff reduced the square footage from 1,850 square feet to 1,780 square feet by reducing the length of the slab by two feet without prior assent of the defendant, he breached the contract.  It is clear, however, that defendant waived the breach by permitting plaintiff to continue construction after he became aware of the reduced footage.  Under the circumstances, defendant cannot rely on the breach as justification for terminating the contract and completing the construction."); *Austin v. Parker*, 672 F.2d 508, 517 (5th Cir. 1982) (rejecting subcontractors' claims that a general contractor breached the subcontract by failing to supply electricity because the subcontractors "waived their grievance by continuing at the job using their own generators").

[59] *See* 17A Am. Jur. 2d Contracts § 710; 13 Williston on Contracts § 39:32 (4th ed.) ("[T]he nonbreaching party, by electing to continue receiving benefits under the agreement, cannot then refuse to perform its part of the bargain."); 13 Williston on Contracts § 39:33 ("[E]ven an express reservation of rights or remedies is generally ineffective once the party put to an election following a breach of the contract makes its choice.  One who continues to receive benefits under a contract and assert rights under it after learning of a breach that would justify a refusal to continue performance cannot subsequently urge this breach as an excuse for its own nonperformance, even though that party has consistently asserted the excuse from the outset, unless the other party assents to the reservation of rights."); 14 Williston on Contracts § 43:15 (4th ed.) ("[T]he general rule that one party's uncured, material failure of performance will suspend or discharge the other party's duty to perform does not apply when the latter party, with knowledge of the facts, either performs or indicates a willingness to do so, despite the breach, or insists that the defaulting party continue to render future performance.").

[60] 13 Williston on Contracts § 39:15 (4th ed.).

in whatever way it would like, including by materially breaching the terms of the contract without any recourse for the party that originally breached the contract.

Nor does the Court find that this line of cases is outdated as TMG insists. TMG cites to *Giron v. Housing Authority of City of Opelousas*, a case in which then-Justice Dennis, writing for the Louisiana Supreme Court, explained that "the common law election of remedies doctrine is inconsistent with the modern procedural concepts embodied in our present code of civil procedure."[61] TMG insists that this language undercuts prior Louisiana case law requiring a non-breaching party to a contract to choose whether to pursue a breach of contract claim or continue performance of the contract and lose the right to bring such a claim or to exercise its right to dissolution. But TMG misreads *Giron*, which instructs that "there is no requirement that a plaintiff choose irrevocably between the remedies of specific performance and damages *when he files suit* based on a contract."[62] In other words, *Giron* affects the relief a plaintiff may choose to seek when it files suit in the wake of a breach. It does not allow a plaintiff to continue execution of a contract while simultaneously litigating the breach of contract.

The Court further rejects TMG's argument that even if it did waive its right to nonperformance by continuing to execute the Agreement despite knowledge of AWC's breaches, AWC's waiver argument fails because dissolution of the Agreement was "not a practical option."[63] As multiple state and federal courts in Louisiana have

---

[61] 393 So.2d 1267, 1271 (La. 1981).
[62] *Id.* (emphasis added).
[63] R. Doc. 129 at 11.

acknowledged, "[t]he common law doctrine of commercial impracticability has no application under Louisiana law."[64] "The fact that compliance with a contract or agreement may be more expensive than originally anticipated is no defense."[65]

Turning now to the summary judgment record, the Court finds AWC is entitled to summary judgment as to TMG's material breach defenses for each of the instances of prior breach of contract AWC describes. AWC points to the following alleged material breaches for which TMG could have invoked its rights under the Agreement: (1) AWC's failure to bond subcontractors over $250,000 in contract value; (2) AWC's failure to provide proper, experienced, and competent staff and personnel for the Project; (3) AWC's unilateral reduction of the Project bid; (4) AWC's decision to change the Project's insurance carrier; (5) AWC's refusal to approve the return of TMG's initial capital contribution; (6) AWC's approval of bonuses; (7) AWC's attempts to use unlicensed subcontractors; (8) AWC's failure to secure Executive Committee approval of an extension in the scope of work; (9) AWC's failure to approve employee surcharges; and (10) AWC's failure to conduct formal meetings, etc. and adhere to other contract protocols.

Deposition testimony by Alan McDonnel, TMG's president and corporate representative, shows that TMG had knowledge in 2011 or 2012 of many of the

---

[64] *Hanover Petro. Corp. v. Tenneco, Inc.*, 521 So.2d 1234, 1240 (La. App. 3 Cir. 1988); *Superior Oil Co. v. Transco Energy Co.*, 616 F.Supp. 98, 109 (W.D. La. 1985) ("The Court rejects this argument [relating to commercial impracticability] on the grounds that no court in Louisiana has unequivocally embraced this common law doctrine.").

[65] *Martin Forest Prods. v. Grantadams*, 616 So.2d 251, 254-55 (La. App. 2 Cir. 1993). Nor is TMG's alleged inability to fund the Project by itself excused under impossibility of performance, which excuses an obligor's failure to perform only when a fortuitous event makes performance actually impossible. *See, e.g., Payne v. Hurwitz*, 978 So.2d 1000, 1005 (La. App. 1 Cir. 2008).

identified breaches.[66]   The record further shows that at no time after discovering these breaches did TMG seek to dissolve the Agreement or otherwise object to continued participation in the Joint Venture.   Instead, TMG continued to participate in the Agreement through at least May 25, 2014, when TMG received its final capital contribution from the Joint Venture.[67]   TMG does not offer any summary judgment evidence refuting AWC's evidence that TMG waived AWC's prior alleged breaches. Notably, this failure dooms TMG's affirmative defense of waiver even to the breaches for which AWC did not provide evidence of TMG's knowledge.[68]   AWC, as the party attacking an affirmative defense on which TMG will ultimately bear the burden of proof, need only point to the absence of evidence indicating waiver.[69]   AWC has met this burden as to all instances of waiver by AWC.   Accordingly, summary judgment is appropriate as to TMG's Affirmative Defenses VIII and IX.

---

[66] R. Doc. 125-8 at 5 ("Q. And by the summer of 2012, TMG knew about its issues regarding the bonding of subcontractors; is that right? A. That's correct."); *Id.* at 14-15 (discussing frustrations with staffing in late July or August of 2011); *Id.* at 2 ("Q. So is it fair to say that as of May 12th, 2011, you did not believe that the project was on track for a five-percent fee? A. That's correct.   Q. And did you view that as a breach of any kind at the time?   A. I did.   Q.   Did you express your belief that this fee issue we've been discussing was a breach? Did you discuss that with Archer Western at the time?   A. With Kevin Swain, yes."); *Id.* at 16-17 (discussing displeasure in 2011 with Archer Western's decision to change insurers); *Id.* at 17-19 (discussing AWC's failure to return capital "a year or two into the [P]roject"); *Id.* at 27-28 ("I remember Kevin Swain wanting to pay bonuses and we had objected to it."); *Id.* at 18 (AWC's refusal to approve $500 employee overhead charges); *Id.* at 12 (discussing conversations between AWC and TMG regarding AWC's alleged attempt to use unlicensed subcontractors).

[67] *See, e.g.*, R. Doc. 125-8 at 75-76; R. Doc. 125-1 at ¶ 36; R. Doc. 129-1 at ¶ 36.

[68] AWC claims that it offers evidence that TMG had knowledge of each of the alleged breaches.  The pages that AWC claims show that TMG knew AWC failed to approve an extension in the scope of work are not included in AWC's exhibits, however, and the pages AWC claims show TMG's knowledge about the alleged lack of formal meetings, etc., do not discuss these topics.

[69] *F&M Mafco, Inc. v. Ocean Marine Contractors, LLC*, 434 F.Supp.3d 428, 433, 438 (E.D. La. 2020) (citing *Gunderson v. F.A. Richard & Assocs.*, 44 So.3d 779, 790 (La. App. 3 Cir. 2010)).

ii.    **TMG's Fault-Based Defenses (Affirmative Defenses VI, XI, XII, XIV, and XV)**

TMG raises several affirmative defenses to AWC's claims that TMG failed to honor its obligations under the Agreement to provide additional capital contributions. These "fault-based" defenses, which include defenses for unclean hands, contributory/comparative negligence, and credit or offset, rest on the idea that TMG cannot be liable for AWC's relating capital contributions claims because TMG was not responsible for the Joint Venture's need for this capital. These defenses fail, AWC argues, because the parties agreed to share losses in proportion to their interests in the Joint Venture, except in instances of bad faith.[70] AWC then argues that TMG did not plead bad faith in its Answer, nor did it present evidence of bad faith on the part of AWC.[71]

In its opposition, TMG argues it is not required to plead bad faith because bad faith is merely an element of its fault-based affirmative defenses. TMG also argues that questions regarding whether the parties must share in profits or losses cannot be decided until the state court litigation is resolved.[72] Deciding these issues, TMG argues, would be premature because it would require "this to Court to improperly overstep its authority and make a ruling on issues that are not now before this Court."[73]

The Court begins its analysis by turning to the language of the Agreement, which provides, in relevant part:

---

[70] *Id.*
[71] *Id.* at 15, 18.
[72] R. Doc. 129 at 7-8.
[73] *Id.* at 7.

> It is the intention of the parties that all losses incurred by the Joint
> Venture shall be shared by the parties in accordance with their
> Proportionate Shares, whether or not such losses are caused or
> contributed to by any of the parties hereto, the Managing Party, the
> Project Manager, the members of the Executive Committee or any of
> their respective directors, officers or employees, provided that such
> persons are not acting in bad faith.[74]

This language is clear, and it is further undisputed, that the parties agreed to share any losses in proportion to their shares in the Joint Venture, provided that the losses were not caused by a party's bad faith.[75]  Accordingly, TMG's affirmative defenses, to the extent that they allege AWC must bear a greater than seventy percent share of the losses incurred by the Joint Venture, fail absent evidence of bad faith on the part of AWC.  The parties devote considerable time arguing whether the viability of TMG's fault-based defenses hinges on its pleading of bad faith as an affirmative defense.  The Court need not resolve this dispute, however, because even if TMG did plead bad faith, it has failed to offer any evidence whatsoever that AWC acted in bad faith.  TMG merely insists that it "is more than able to argue AWC's bad faith and/or evil (malicious) intent."[76]  Such argument is not enough for TMG to survive summary judgment.[77]

Nor is summary judgment premature.  In support of this position, TMG argues that it would be inappropriate for this Court to determine the parties' losses and profits prior to the winding down of the Joint Venture, a process which cannot begin

---

[74] R. Doc. 125-2 at 14 (quoting R. Doc. 125-4 at 8).
[75] R. Doc. 125-1 at ¶¶ 42, 43; R. Doc. 129-1 at ¶¶ 42, 43.
[76] R. Doc. 129 at 6.
[77] *Little*, 37 F.3d at 1077 n.16 ("Because the moving parties do not bear the burden of proof on these issues at trial, they were not required to negate the existence of facts, and they satisfied their burden."); *Nat'l Bus. Consultants*, 376 F.3d at 322 (citing *Gulf Lines*, 974 F.2d at 629) ("An affirmative defense places the burden of proof on the party pleading it.")

until the resolution of the ongoing state court litigation.[78]  TMG misunderstands the bounds of the Court's Order, however.  In finding that TMG has failed to properly defend against AWC's Motion, the Court is not making a determination as to the final accounting of the Joint Venture.  The Court's ruling is instead limited to a finding that TMG has not offered sufficient evidence of bad faith and that this failure precludes TMG from raising its fault-based affirmative defenses of unclean hands, contributory negligence, and credit or offset to the jury.  This decision does not, as TMG insists, affect what the parties will be entitled to after the dissolution of the Joint Venture.  In short, the ongoing state court litigation does not preclude summary judgment as to TMG's fault-based affirmative defenses.  Accordingly, there is no genuine issue of fact as to Affirmative Defenses VI, XI, XII, XIV, and XV, and AWC is entitled to judgment as a matter of law.

### iii.    TMG's Failure to Mitigation Defense (Affirmative Defense XIII)

Finally, AWC argues that it is entitled to summary judgment as to Affirmative Defense XIII, which is based on AWC's alleged failure to mitigate its damages.  AWC argues TMG's "evidence" of its failure to mitigate is conclusory and unsubstantiated and resolution of this defense would require a determination as to the specific value of the Joint Venture's claim against the Owner.[79]  This, AWC argues, would be inappropriate given that this is the exact question being litigated in the state court lawsuit.[80]

---

[78] R. Doc. 129 at 7.
[79] R. Doc. 125-2 at 22-23.
[80] *Id.* at 23.

For the same reasons it granted summary judgment as to TMG's fault-based defenses, the Court grants summary judgment as to this affirmative defense. As the Court explained above, the parties' Agreement expressly provides that they shall bear the Joint Venture's losses in proportion to their shares in the Joint Venture. The sole exception to this is in the case of bad faith. Again, TMG does not offer any evidence that AWC, in bad faith, failed to mitigate its damages to the Joint Venture. In fact, TMG does not appear to address its failure to mitigate defense in its opposition at all. In the absence of any evidence offered by TMG sufficient to defeat summary judgment, summary judgment is appropriate.[81]

## IV.   CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that AWC's Motion for Partial Summary Judgment as to Defendant's Affirmative Defenses[82] is **GRANTED**. TMG may not invoke Affirmative Defenses VI, VIII, IX, XI, XII, XIII, XIV, and XV.

New Orleans, Louisiana, September 30, 2024.

**WENDY B. VITTER**
**United States District Judge**

---

[81] *Little*, 37 F.3d at 1077 n.16 ("Because the moving parties do not bear the burden of proof on these issues at trial, they were not required to negate the existence of facts, and they satisfied their burden."); *Assure Neuromonitoring La., LLC v. Fairway Med. Ctr., LLC*, No. 21-CV-1489, 2023 WL 5831713, at *3 (E.D. La. Sept. 23, 2023) (quoting LA. CIV. CODE art. 2002)) (internal quotations omitted) ("The failure to mitigate damages is an affirmative defense, and the burden of proof is on the party asserting the defense.").
[82] R. Doc. 125.