## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**ARCHER WESTERN CONTRACTORS, LLC**          **CIVIL ACTION**

**VERSUS**                                                                    **NO. 22-5323**

**MCDONNEL GROUP, LLC**                                    **SECTION: D(5)**

## <u>ORDER AND REASONS</u>

Before the Court are cross Motions for Summary Judgment filed by Plaintiff Archer Western Contractors, LLC (AWC) and Defendant The McDonnel Group (TMG).[1]  Both Motions are opposed.[2]  After careful consideration of the parties' memoranda, the record, and the applicable law, the Court **DENIES** the Motions.

## I.    FACTUAL AND PROCEDURAL BACKGROUND[3]

On May 2, 2011, AWC and TMG entered into a Joint Venture Agreement (the "Agreement"), establishing the McDonnel Group, LLC/Archer Western Contractors, Ltd. Joint Venture (the "Joint Venture").[4]  The purpose of the Joint Venture was to pursue and perform a contract with the Law Enforcement Division of the Parish of Orleans, State of Louisiana (the "Owner") for the construction of a project known as the Orleans Parish

---

[1] R. Docs. 192 and 193.

[2] R. Docs. 194 and 195.

[3] This Court has previously detailed the factual background of the events germane to this lawsuit in the Court's prior rulings on the parties' various motions.  Accordingly, the Court summarizes the relevant background only as it relates to the instant Motions.  *See, e.g.*, R. Docs. 50, 67, 146, 165, 174, 177, and 190.  For purposes of the factual background, the Court considers AWC's Statement of Undisputed Material Facts (R. Doc. 192-1) in support of its Motion for Summary Judgment, as well as TMG's responsive Statement of Contested Material Facts (R. Doc. 195-1).  The Court also considers TMG's Statement of Material Facts Which Present No Genuine Issue (R. Doc. 193-2) in support of its Motion for Summary Judgment, as well as AWC's Statement of Material Facts in Opposition to Defendant's Motion for Summary Judgment (R. Doc. 194-1).

[4] R. Doc. 192-1 at ¶¶ 1-2.

Sheriff's Office Inmate Processing Center/Templeman III & IV Replacement Administration Building (the "Project").[5]

On July 28, 2011, the Joint Venture entered into a contract with the Owner to construct the Project for an original contract sum of $144,929,000.00.[6]  During the course of the Project, the Joint Venture experienced cash flow issues, at least in part, from the Owner's failure to properly compensate the Joint Venture.[7]  Ultimately, litigation between the Owner and the Joint Venture ensued.[8]

In an effort to fund the Joint Venture in the wake of the cash flow issues, AWC, as the Managing Party, made calls for capital contributions.[9]  Under the terms of the Agreement, the determination of when working capital is required for the performance of the Agreement involves an initial determination by AWC as the Managing Party and subsequent approval by the Executive Committee, a committee comprised of representatives and alternates from AWC and TMG.[10]  TMG, in its role as a member of the Executive Committee, declined to approve these calls for capital contributions.  AWC alleges that between mid-2015 through October 2024, it contributed $13,705,000 to the Joint Venture.[11]

On April 29, 2022, TMG separately, and without informing AWC, entered into an agreement with the Owner to settle its claims individually and as to its rights in the Joint

---

[5] *Id.*
[6] *Id.* at ¶ 3.
[7] *Id.* at ¶ 23.
[8] R. Doc. 125-1 at ¶ 11.
[9] R. Doc. 192-1 at ¶ 27.
[10] *See* R. Doc. 146.
[11] R. Doc. 192-1 at ¶ 30.

Venture.[12]  Thereafter, on December 16, 2022, AWC filed the instant lawsuit in this Court against TMG, alleging Breach of Contract in Count 1, Breach of Fiduciary Duty in Count II, and Enrichment Without Cause in Count III.[13]  Initially, AWC alleged in Count I that TMG breached the Joint Venture Agreement by (1) failing to provide necessary working capital contributions to the Joint Venture; (2) failing to pay back $6,096,407.00 in loans to AWC, representing capital contributions which AWC paid; (3) failing to act in good faith in its participation in the Joint Venture Executive Committee by refusing to approve necessary requests for capital contributions and by refusing to attend and participate in Executive Committee meetings; and (4) entering into the settlement agreement with the Owner.[14]

As for Count II, Breach of Fiduciary Duty, AWC similarly alleges that TMG breached its fiduciary duty as its sole partner in the Joint Venture to AWC by (1) failing to act in good faith in its participation in the Executive Committee; (2) failing to make the required working capital contributions to the Joint Venture; (3) failing to repay the loan amounts to AWC created via AWC's funding of TMG's share of capital contributions; and (4) entering into the settlement agreement with the Owner.[15]

After extensive motion practice, a number of AWC's claims and TMG's defenses have been resolved.  In a February 16, 2024 Order and Reasons, this Court found that the capital contributions AWC seeks to recover are not binding on the Joint Venture and dismissed

---

[12] R. Doc. 158 at 4-5; *see* R. Doc. 142-1.
[13] R. Doc. 1.  The Court ordered AWC to file an Amended Complaint properly alleging the citizenship information of the parties to ensure the Court has subject matter jurisdiction over this action.  R. Doc. 4.  AWC subsequently filed an Amended Complaint.  R. Doc. 6.  Several months later, AWC filed a Second Amended Complaint clarifying certain factual allegations made in its Amended Complaint.  R. Doc. 42.  The Court considers only the Second Amended Complaint here.
[14] *Id*. at ¶¶ 100–16.
[15] *Id*. at ¶¶ 119–29.

AWC's breach of contract claim based on TMG's failure to pay the capital contributions called for by AWC.[16]  On June 6, 2024, the Court addressed whether TMG breached the Agreement and/or its fiduciary duty to AWC by entering into the settlement agreement with the Owner.[17]  This Court found that AWC was entitled to summary judgment on its breach of contract claim, and it denied as duplicative AWC's breach of fiduciary duty claim for the same conduct.[18]

Some of TMG's affirmative defenses were likewise dismissed by this Court's September 30, 2024 Order and Reasons, in which this Court granted a partial motion for summary judgment as to certain affirmative defenses.[19]  Of particular relevance to the instant Motions, the Court found that TMG had waived its right to raise AWC's alleged prior material breaches of the Agreement due to TMG's continued participation in the Joint Venture after learning of AWC's alleged breaches.[20]

Following these rulings, AWC's claims for breach of contract and breach of fiduciary duty remain pending.  AWC alleges that TMG breached both duties by: (1) failing to provide necessary working capital contributions to the Joint Venture; (2) refusing to approve necessary requests for capital contributions; and (3) refusing to attend and meaningfully participate in Executive Committee meetings.

### A. Archer Western's Motion for Summary Judgment[21]

---

[16] R. Doc. 146 at 22.
[17] R. Doc. 158.
[18] *Id.* at 38.
[19] R. Doc. 177.
[20] *See id.*
[21] R. Doc. 192.

In its Motion, AWC urges the Court to find that TMG breached the Agreement by failing to approve and make capital contributions to the Joint Venture necessary for the performance of the Project.[22]  In support of its argument, AWC points to Articles 7(a) and 7(c) of the Agreement, as well as the incorporated working capital guidelines.[23]  These provisions, AWC argues, provide that each member of the Joint Venture is liable for its proportionate share of capital contributions when such contributions are required to make accounts payable and subcontractor payments.  AWC further argues that TMG's failure to approve and make capital contributions constitutes a breach of TMG's fiduciary duty to AWC.[24]  AWC argues that "TMG abandoned AWC at a critical phase in the Project.  TMG left AWC to foot the bill for the Project completion and funding the litigation that has been necessary to recover the amounts owed the [Joint Venture] by the Owner under the Contract."[25]  AWC argues that these breaches were committed "without any viable defense or excuse" and specifically outlines how each of TMG's asserted affirmative defenses—including those previously dismissed by this Court—fail to excuse TMG's breaches.[26]  Finally, as a result of these alleged breaches, AWC requests attorney's fees, which it claims are permitted under the provisions of the Agreement.

In opposition, TMG argues that AWC waived its right to assert its claims against TMG by accepting a capital distribution in the amount of $1,300,000.00 from the Joint

---

[22] *Id.* at 1.  Although AWC maintains its claim for breach of contract for TMG's alleged failure to meaningfully participate in the Executive Committee (*see* R. Doc. 208 at 2), the Court does not read its Motion to seek summary judgment as to this claim.
[23] *Id.* at 5.
[24] *Id.* at 16.
[25] *Id.*
[26] *Id.* at 18-23.

Venture following TMG's alleged breaches.[27]  In support of its argument, TMG relies on this Court's September 30, 2024 Order and Reasons in which it found that TMG's continued participation in the Joint Venture through receipt of capital distributions waived its right to raise AWC's material breaches as a defense to AWC's claims.  Specifically, TMG argues that "AWC's claims for breaches occurring must have been waived by their near identical conduct: continuing performance and accepting the return of $1,300,000.00 in capital" after AWC knew that TMG did not approve its earlier capital call requests.[28]  Alternatively, TMG argues that AWC's Motion must be denied because it "calls for the examination of irrelevant, contradicted, and inadmissible evidence."[29]  Specifically, TMG points to expenses and damages which TMG argues were not disclosed in discovery and facts and legal arguments concerning resolved claims surrounding TMG's settlement with the Owner.[30]  TMG further argues that AWC's Motion fails on the merits because there are factual disputes, including: (1) whether AWC was at fault for the cash-flow issues; (2) whether the Agreement required TMG to contribute to post-Project expenses (such as the state court litigation); (3) the parties' intentions regarding TMG's voting rights and responsibilities under the Agreement; (4) whether TMG was required to approve working capital contributions; and (5) the Court's role in the dispute resolution process contemplated by the Agreement.[31]  Finally, TMG argues that AWC's request for attorney's fees is premature.[32]

---

[27] R. Doc. 195 at 3.
[28] *Id.* at 3-4.
[29] *Id.* at 4.
[30] *Id.*
[31] *Id.* at 8-9.
[32] *Id.* at 23.

In reply, AWC reurges many of its initial arguments. It also rejects TMG's contention that there are genuine issues of fact by disposing of TMG's proffered list as either issues of pure contract interpretation or immaterial issues of fact.[33] Finally, AWC insists that its alleged damages are properly before the Court because while the amount of damages may have increased throughout the pendency of this litigation, "AWC properly disclosed its method for calculating damages in its Initial Disclosures and has provided TMG with the [Joint Venture's] financial records identifying AWC's continuing damages throughout this litigation."[34]

## B. TMG's Motion for Summary Judgment[35]

TMG's Motion for Summary Judgment advances the two primary bases for its opposition to AWC's Motion: first, that the Agreement did not require TMG to approve the capital contributions, and second, that this Court's September 30, 2024 Order and Reasons demands a finding that AWC waived its claims against TMG when it received a 2018 capital distribution.[36] In support of its first argument, TMG argues that TMG had a "contractual right to not rubber-stamp every request to the Executive Committee for additional capital."[37] TMG insists that this position is bolstered by the Court's February 16, 2024 Order and Reasons in which the Court determined that the Agreement required unanimous Executive Committee approval of the Managing Partner's determination that a capital contribution was needed before the parties were required to make capital contributions.[38]

---

[33] R. Doc. 196 at 3.
[34] *Id.* at 7.
[35] R. Doc. 193.
[36] R. Doc. 193-3 at 1.
[37] *Id.* at 8.
[38] *Id.*

TMG also argues, like it did in its opposition to AWC's Motion, that AWC is precluded from raising its claims against TMG based on the Court's September 30, 2024 Order and Reasons.[39]

In its opposition, AWC reurges its position that the language of the Agreement and related documents required TMG to approve and make capital contributions.[40]  The only exception to this, according to AWC, is bad faith, of which AWC argues there is no evidence.[41]  Finally, AWC argues that it did not waive its claims against TMG by accepting a capital distribution after TMG's alleged breaches.[42]  In an attempt to distinguish AWC's conduct from TMG's conduct that the Court ruled waived its rights to invoke waiver as an affirmative defense, AWC points to a number of actions which it argues show that AWC did not relinquish its rights.[43]

In its reply, TMG argues that it had a good faith basis to decline to approve the capital contributions, namely, that they were not necessary.[44]  TMG then argues that it was not obligated to make the capital contributions because under the Agreement, there is no obligation on the parties to pay a requested capital contribution absent unanimous approval by the Executive Committee.[45]  Finally, TMG insists that AWC's alleged evidence of reservation of rights fails and that its claims must meet the same fate as TMG's affirmative defense and be dismissed.[46]

---

[39] *Id.* at 11-12.
[40] R. Doc. 194 at 4.
[41] *Id.*
[42] *Id.* at 9.; *see* R. Docs. 192-1 at ¶ 32 and 193-2 at ¶ 13.
[43] *Id.* at 10 (internal citations omitted).
[44] R. Doc. 197 at 3.
[45] *Id.* at 4.
[46] *Id.* at 6.

## II.    LEGAL STANDARD

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[47]   A dispute is "genuine" if it is "real and substantial, as opposed to merely formal, pretended, or a sham."[48]   Further, a fact is "material" if it "might affect the outcome of the suit under the governing law."[49]   When assessing whether a genuine dispute regarding any material fact exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[50]   While all reasonable inferences must be drawn in favor of the nonmoving party, a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or "only a scintilla of evidence."[51]   Instead, summary judgment is appropriate if a reasonable jury could not return a verdict for the nonmoving party.[52]

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial."[53]   The non-moving party can then defeat summary judgment by either submitting evidence sufficient to demonstrate the existence of a genuine dispute of material fact or by "showing that the moving party's

---

[47] FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).

[48] *Bazan ex rel. Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 489 (5th Cir. 2001) (citing *Wilkinson v. Powell*, 149 F.2d 335, 337 (5th Cir. 1945)).

[49] *Anderson*, 477 U.S. at 248.

[50] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008) (citations omitted).

[51] *Id.* (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)) (internal quotations omitted).

[52] *Id.* at 399 (citing *Anderson*, 477 U.S. at 248).

[53] *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991).

evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party."[54]  If, however, the nonmoving party will bear the burden of proof at trial on the dispositive issue, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim.[55]  The burden then shifts to the nonmoving party who must go beyond the pleadings and, "by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"[56]

"When parties file cross motions for summary judgment," the court must "review 'each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party.'"[57]  "This is because 'each party, as a movant for summary judgment, bears the burden of establishing that no genuine dispute of material fact exists and that the movant is entitled to judgment as a matter of law.'"[58]

> The fact that one party fails to satisfy that burden on his own Rule 56 motion does not automatically indicate that the opposing party has satisfied its burden and should be granted summary judgment on the other motion. The court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard. Both motions must be denied if the court finds that there is a genuine dispute of material fact. But if there is no genuine dispute and one or the other party is entitled to prevail as a matter of law, the court will render judgment.[59]

---

[54] *Id*. at 1265.

[55] *See Celotex*, 477 U.S. at 322-23.

[56] *Id*. at 324 (quoting FED. R. CIV. P. 56(e)).

[57] *Cooley v. Hous. Auth. of City of Slidell*, 747 F.3d 295, 297–298 (5th Cir. 2014) (quoting *Ford Motor Co. v. Tex. Dep't of Transp.*, 264 F.3d 493, 498 (5th Cir. 2001)).

[58] *Gruver v. La. ex rel. Bd. of Supervisors of La. State Univ. & Agric. & Mech. Coll.*, 654 F.Supp.3d 539, 545 (M.D. La. 2023) (quoting 10A MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE (Wright & Miller) § 2720 (4th ed. 2022)).

[59] *Id*. (quoting KANE, *supra* note 52).

With these standards in mind, the Court turns to the parties' Motions for Summary Judgment.

## III.    ANALYSIS

The parties' Motions and the briefing thereto requires the Court to make two determinations: first, whether AWC waived its claims through receipt of a capital distribution after it learned of TMG's alleged breaches, and second, whether TMG's failure to approve and make capital contributions constituted a breach of the Agreement and/or TMG's fiduciary duties.  The Court will consider each in turn.

### A. Whether AWC Waived Its Claims Against TMG

"Similar to other jurisdictions, Louisiana recognizes the principle that where one party substantially breaches a contract the other party to it has a defense and an excuse for non-performance."[60]  This right may be waived, however, when the non-breaching party fails to protest or notice an objection, thereby waiving its right to do so.[61]  "Waiver occurs when there is an existing right, a knowledge of its existence and an actual intention to relinquish it or conduct so inconsistent with the intent to enforce the right as to induce a reasonable belief that it has been relinquished."[62]

---

[60] *Olympic Ins. Co. v. H.D. Harrison, Inc.*, 463 F.2d 1049, 1053 (5th Cir. 1972) (collecting cases) (footnote omitted); *Andrew Dev. Corp. v. W. Esplanade Corp.*, 347 So.2d 210, 212-23 (La. 1977) ("Where a party refuses and does not merely fail or neglect to comply with his contractual obligation, his refusal constitutes an active breach of the contract which relieves the other party of the obligation of continuing to perform under the contract.").

[61] *Marsh Buggies, Inc. v. Weems Geophysical, Inc.*, No. 98-CV-2767, 1999 WL 731416, at *3 (E.D. La. Sept. 17, 1999) (citing *McNamarra v. Bd. of Com'rs of Tensas Basin Levee Dist.*, 11 So.278 (La. 1892)).

[61] *Autrey v. Williams and Dunlap*, 343 F.2d 730, 736-37 (5th Cir. 1965).

[62] *Id.* (citations omitted).

The Court previously directed the parties to the United States Court of Appeals for the Fifth Circuit's opinion in *Autrey v. Williams and Dunlap*.[63]  *Autrey* involved claims by subcontractors that the general contractor overseeing construction of the England Air Force Base Housing Project in Alexandria, Louisiana, failed to properly prepare the construction site, furnish materials, and supervise and coordinate the work of the subcontractors, all in breach of the subcontracts.[64]  The Fifth Circuit ultimately found it unnecessary to decide whether the general contractor breached the subcontracts, however, explaining that the subcontractors waived their rights to object to the contractor's alleged breaches of contract by electing to continue their respective contracts despite knowledge of the alleged breaches.[65]  In so finding, the Court explained that under Louisiana law, "when a contract not already fully performed on either side is continued in spite of a known excuse, the defense thereupon is lost and the injured party is himself liable if he subsequently fails to perform, unless the right to retain the excuse is not only asserted but assented to."[66]

In a prior Order and Reasons, this Court found that TMG had waived its right to invoke a number of alleged prior material breaches by AWC based on TMG's knowledge of

---

[63] *Id.* at 736-37.

[64] *Id.* at 733, 736.

[65] *Id.* at 736-37.

[66] *Id.* (citations omitted).  Federal and state courts in Louisiana have continued to apply this rule following *Autrey*.  *See Marsh Buggies*, 1999 WL 731416, at *3 (E.D. La. Sept. 17, 1999); *U.S. ex. rel. Riley v. Diran Co.*, 597 F.2d 446, 447 (5th Cir. 1979) (a party's failure to object to a contractor's work that it knew did not comply with specifications waived his right to object); *Keating v. Miller*, 292 So.2d 759, 761 (La. App. 4 Cir. 1974) ("When plaintiff reduced the square footage from 1,850 square feet to 1,780 square feet by reducing the length of the slab by two feet without prior assent of the defendant, he breached the contract.  It is clear, however, that defendant waived the breach by permitting plaintiff to continue construction after he became aware of the reduced footage.  Under the circumstances, defendant cannot rely on the breach as justification for terminating the contract and completing the construction."); *Austin v. Parker*, 672 F.2d 508, 517 (5th Cir. 1982) (rejecting subcontractors' claims that a general contractor breached the subcontract by failing to supply electricity because the subcontractors "waived their grievance by continuing at the job using their own generators").

the alleged breaches and subsequent performance of the Agreement in the form of accepting capital distributions.[67]   In its current Motion, TMG argues that it is entitled to the same finding.  Specifically, that TMG argues that AWC materially breached the Agreement by accepting the 2018 capital distribution after learning of TMG's alleged material breaches.

TMG's reliance on the Court's Order and Reasons on AWC's Motion for Partial Summary Judgment misses the mark.  The Court's finding that TMG waived its material breach affirmative defense was based in part on TMG's failure to "offer any summary judgment evidence refuting AWC's evidence that TMG waived AWC's prior alleged breaches."[68]  AWC, on the other hand, offers evidence of conduct inconsistent with waiver. The evidence offered by AWC includes that on April 24, 2015, following TMG's alleged breach, AWC notified TMG that it was in default.[69]  Thereafter, AWC continued to reiterate its position that TMG was in default for failure to make the capital contribution.[70]  AWC again restated this position after accepting the 2018 capital distribution.  On July 31, 2019, AWC wrote to Ben McDonnel, TMG's President, stating that: "As of July 11, 2019, [AWC] has loaned [TMG] $4,092,144.63, comprised of $3,194,250 in capital loans and $997,894.63 in interest per the terms of the joint venture agreement . . . . [TMG] remains in default of the Joint Venture Agreement leaving AWC little choice but to continue funding the Joint

---

[67] R. Doc. 177.
[68] *Id.* at 16.  TMG, as the party that would have bore the burden on its affirmative defense, argued that it had not waived its material breach defenses because TMG put AWC in default of its obligations under the Agreement.  R. Doc. 129 at 14.  TMG's statement, however, cites to Record Document 74-3, which was withdrawn from the record.  TMG's assertion was therefore unsupported.  *See Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) ("[U]nsubstantiated assertions are not competent summary judgment evidence . . . . Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.") (internal quotations and citation omitted).
[69] R. Doc. 193-19 at 2.
[70] R. Doc. 193-30 at 2 (informing TMG on May 4, 2016, that it was in default for failure to comply with the Joint Venture's April 21, 2016 capital contribution).

Venture on our own."[71]  AWC continued to restate this position through December 2022.[72] AWC also expressly informed TMG that if it did not comply with required contributions, AWC would "use all legal means at its disposal to recover [the capital contributions] and the other defaulted Joint Venture funds."[73]  Viewing this evidence in a light most favorable to AWC as the non-mover on this issue, this evidence presents, at the very least, an issue of fact as to whether AWC waived its claims against TMG.

TMG rejects this evidence, seemingly arguing that in order to avoid waiver, AWC must show that it reserved its rights contemporaneously with its 2018 receipt of capital. TMG fails to offer any support to show that AWC failed to reserve its rights by not specifically doing so upon receipt of the capital distribution.  To the extent TMG's position is based on the Court's September 30, 2024 Order and Reasons, the Court rejects TMG's position.  The Court did not find that AWC was entitled to summary judgment on TMG's affirmative defense for prior breach because TMG received a capital distribution without reserving its rights.  In that earlier Order and Reasons granting AWC's Motion for Partial Summary Judgment, the Court held:

> [T]he record further shows that at no time after discovering these breaches did TMG seek to dissolve the Agreement or otherwise object to continued participation in the Joint Venture. Instead, TMG continued to participate in the Agreement through at least May 25, 2014, when TMG received its final capital contribution from the Joint Venture. TMG does not offer any summary judgment evidence refuting AWC's evidence that TMG waived AWC's prior alleged breaches.[74]

---

[71] *Id.*
[72] *See* R. Doc. 194–5.
[73] R. Doc. 193-18 at 1.
[74] R. Doc. 177 at 16.

The evidence cited by AWC reveals what TMG failed to show in response to AWC's Motion regarding waiver: that AWC did not express its intent to relinquish its rights.  Accordingly, the Court declines to grant summary judgment in favor of TMG on this basis.

### B. Whether TMG Breached the Joint Venture Agreement by Failing to Approve and Make Capital Contributions

AWC argues that TMG breached the Agreement by failing to approve and/or provide necessary capital contributions to the Joint Venture.  To determine whether it did, the Court must consider whether the Agreement imposed an obligation on TMG to vote to approve capital contributions.  This question of contract interpretation considers "the common intent of the parties."[75]  Under Louisiana law, "[w]hen the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent."[76]  Further, "[t]he words of a contract must be given their generally prevailing meaning."[77]  A court should not construe a contractual term or phrase in isolation.  Rather, "[e]ach provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole."[78] With these principles in mind, the Court turns to the language of the Agreement.

Article 7(a) of the Agreement provides that "[a]ll working capital, when and as required for the performance of the Contract, shall be furnished by the parties in accordance with their Proportionate Share."[79]  This Court has previously held the language of Article

---

[75] LA. CIV. CODE art. 2045.
[76] Id. at art. 2046.
[77] Id. at art. 2047.
[78] Id. at art. 2050.
[79] R. Doc. 192-5 at 9.

7(a) to mean that "the determination of when working capital is 'required for the performance of the Contract' involves an initial determination by the Managing Party and then a subsequent approval by the Executive Committee."[80]  TMG argues that the Court's prior decision allows TMG, as a member of the Executive Committee, to disapprove capital contributions and that it cannot be liable for failing to approve capital contributions.

TMG is correct that the Court's prior ruling holds and requires that in order for a capital contribution to be binding on the parties, the Executive Committee must unanimously approve the contributions.[81]  The Court does not agree, however, that this holding is conclusive of the question before the Court today.  The Court's prior ruling found only what is required for capital contributions to be binding on the parties.[82]  The question before the Court today is distinct and asks whether TMG was obligated to approve the capital contributions at issue.

AWC argues that Article 7(c) of the Agreement imposes such a duty.  Article 7(c) provides that the "Executive Committee will comply with the working capital guidelines attached as Exhibit A."[83]  The working capital guidelines, in turn, state that "[i]t is the intention of the Joint Venture to operate with enough capital to maintain its ability to make accounts payable and subcontractor payments."[84]  Together, these provisions provide that although capital contributions are not binding on the parties until they are approved by the

---

[80] R. Doc. 146 at 11.

[81] *See id.*

[82] TMG incorrectly claims that "this Court has already found that TMG was contractually permitted to decline additional capital contributions under the . . . Agreement."  R. Doc. 193-3.  The issue before the Court in its prior ruling was whether the Agreement requires Executive Committee approval of the Managing Party's determination of the need for capital contributions in order to bind the Joint Venture member or whether the Managing Party's determination alone binds the members.  *See* R. Doc. 146 at 10.

[83] *Id.*

[84] *Id.* at 22.

Executive Committee, the Executive Committee is required to take the steps necessary to ensure that the Joint Venture has sufficient funds to pay its accounts and subcontractors. The wording of the Agreement is clear and explicit, and a provision requiring the Executive Committee to act in a way that keeps it sufficiently funded in no way leads to absurd results.[85]

Moreover, this reading is supported by two other provisions of the Agreement. The first is Article 4(c), which provides first that "all decisions of the Executive Committee shall be unanimous" and further provides that "[i]n the case the parties fail to reach a unanimous decision, the matter in question may be referred to the Senior Officer of each of the parties for resolution pursuant to Article 17."[86] Article 17, in turn, outlines the procedure for disputes, starting first with efforts at good faith negotiation, the option for mediation or arbitration, and, finally, litigation. As AWC notes, that the parties crafted a provision providing for negotiations, mediation, arbitration, and full-blown litigation merely to determine that a decision by the Executive Committee was not unanimous is, at best, doubtful.

Nor does this finding turn the Executive Committee into a rubber stamp committee as TMG suggests. The Agreement does not require the Executive Committee to approve capital contributions simply because AWC, as the Managing Party, raises the issue. It does, however, require action under at least one scenario. Specifically, it requires that the

---

[85] TMG cites case law for the proposition that a party cannot be in breach of contract for exercising its contractual right not to approve the capital contributions. There has been no finding that TMG had a contractual right not to approve the capital contributions, and TMG does not point the Court to any authority for this position other than the Court's February 16, 2024 Order and Reasons. But as explained above, that Order and Reasons did not make this finding.

[86] R. Doc. 192-5 at 6.

Executive Committee take steps to ensure that the Joint Venture has sufficient funds to pay its accounts and subcontractors.

The Court does not, on the other hand, find that the portions of the Agreement cited by AWC require the Executive Committee to fund post-construction litigation. AWC does not appear to argue that the provision requiring the Executive Committee to maintain its ability to make accounts payable and subcontractor payments likewise requires the Executive Committee to vote to make capital contributions to fund Agreement-related litigation. Instead, AWC appears to argue that this obligation arises under the Agreement's instruction that "[a]ll working capital, *when and as required for the performance of the Contract*, shall be furnished by the parties in accordance with their Proportionate Shares."[87] AWC then points to the first page of the Agreement where the term "Work" is defined as "the construction of the Project" and the term "Contract" is defined as the agreement between the Joint Venture and the Owner to complete the Project.[88]

Even assuming that "performance of the Contract" encompasses legal battles arising out of the Agreement and/or the Project, the Court does not find that the Agreement obligates that TMG must vote to approve any and all capital contributions "when and as required for the performance of the Contract."[89] The provision on which AWC relies prefaces the following language: "[t]he need for working capital and the dates on which it is to be furnished shall be determined by the Managing Partner and upon unanimous approval of the Executive Committee, each such determination shall be binding and conclusive on the

---

[87] R. Doc. 192-5 at 9 (emphasis added).
[88] R. Doc. 192-2 at 11-12 (citing R. Doc. 192-5 at 1).
[89] R. Doc. 192-5 at 9.

parties."[90]   The structure of these sentences clearly places the determination of when working capital is required for the performance of the Agreement on the Executive Committee.

This reading is bolstered by the existence of Article 7(c), which the Court outlined in detail above.  That provision imposes on the Executive Committee a specific obligation to vote to approve capital contributions to fund accounts payable and subcontractors. Ensuring payment of accounts payable and subcontractors is surely required for the performance of the Joint Venture.  Thus, AWC's reading of Article 7(a)'s initial sentence would render Article 7(c) completely superfluous.

Having found that the Agreement requires TMG to approve capital contributions to the extent that capital is required to fund the Joint Venture's accounts payable and pay its subcontractors, the remaining question before the Court is whether the Joint Venture needed additional capital to make these payments.  To show that this condition was met, AWC points to two emails sent by AWC to the Joint Venture.  First, on March 17, 2015, AWC's Randy Klaus informed others that "the subs are starting to call and ask for their checks, we really cannot hold them off anymore as they supplied the correct paperwork.  Is there going to be a cash call to fund the account so that some of these sub checks can be release."[91]  Then, on May 20, 2015, AWC wrote "[n]o one will pour [concrete] on this project unless some bills are paid."[92]  The record further reflects that the Joint Venture was exploring options outside of additional capital contributions to cure the cash flow issues.[93]

---

[90] *Id.*
[91] R. Doc. 192-8.
[92] R. Doc. 192-9.
[93] R. Doc. 195-4 at 1, 4.

Indeed, the Joint Venture was contemplating whether receipt of liquidated damages from the Owner could cure the Joint Venture's cash flow issues.[94]   Viewing this evidence in a light most favorable to TMG, the non-mover on this issue, the Joint Venture's efforts to return the Joint Venture to positive cash flow without invoking a call for capital contribution shows, at minimum, a genuine issue of fact as to whether the cash calls were necessary for the performance of the Agreement.[95]   Critically, these facts go to the core of the dispute, namely, whether the capital contributions called for and ultimately made by AWC were necessary.

### C. Whether TMG Breached Its Fiduciary Duty by Failing to Approve and Make Capital Contributions and/or by Failing to Participate in Executive Committee Meetings

AWC's final claim is that TMG breached its fiduciary duties by failing to vote to approve capital contributions, failing to provide necessary capital contributions, and refusing to participate in the Executive Committee meetings.  A claim for breach of fiduciary duty under Louisiana law requires: "(1) the existence of a fiduciary duty on the part of the defendant; (2) an action taken by the defendant in violation of that duty; and (3) the damages to the plaintiff as a result of that action."[96]   "Since the essential elements of a joint venture and a partnership are the same, joint ventures are generally governed by partnership law."[97]   Under Louisiana law:

---

[94] *Id.*

[95] AWC argues that this assertion is without merit because the Owner continued to withhold liquidated damages well past this period.  This does not, in the Court's view, cure the factual dispute.

[96] *Annie Sloan Interiors, Ltd. v. Kappel*, No. 19-CV-807, 2019 WL 2492303, at *2 (E.D. La. June 14, 2019) (quoting *Hall v. Hall*, No. 13-CV-406, 2014 WL 2441177, at *2 (M.D. La. May 30, 2014)) (internal quotations omitted).

[97] *Joyner v. Liprie*, 33 So.3d 242, 251-52 (2d Cir. 2010) (citing *Riddle v. Simmons*, 922 So.2d 1267 (La. 2d Cir. 2006)).

> A partner owes a fiduciary duty to the partnership and to his partners. He may not conduct any activity, for himself or on behalf of a third person, that is contrary to his fiduciary duty and is prejudicial to the partnership. If he does so, he must account to the partnership and to his partners for the resulting profits.[98]

This standard seeks to prohibit activities prejudicial to the partnership and is based on the idea that "[t]he relationship of the partners is fiduciary and imposes upon them the obligation of good faith and fairness in their dealings with one another with respect to the affairs of the partnership."[99]

There is no dispute that the first element—the existence of a fiduciary duty—is met here.[100]  Furthermore, Louisiana law is clear that members of a joint venture, like partners in a partnership, owe fiduciary duties to one another.[101]  What is disputed is whether any action taken (or not taken) by TMG violated its fiduciary duty to AWC.  AWC argues that it did.  Specifically, it argues that "TMG knew and acknowledged that the [Joint Venture] required funds to pay subcontractors to complete the Project.  TMG knew the Owner was not properly compensating the [Joint Venture] . . . . And yet, TMG refused to pay its share."[102]

The Court finds that there are factual issues that preclude summary judgment.  Although AWC presents evidence that the Joint Venture was experiencing cash flow issues, the record shows that the Joint Venture was exploring options at funding the Joint Venture outside of capital contribution calls.  Specifically, the Joint Venture was considering

---

[98] LA. CIV. CODE art. 2809.

[99] *Id.* Comment (b).

[100] R. Docs. 58-1 at ¶ 16 and 63-1 at ¶ 16.

[101] *See White Haul Transp., Inc. v. Coastal Bridge Co.*, No. 06-CV-11260, 2008 WL 23-8858, at *4 (E.D. La. June 3, 2008) ("There is a fiduciary duty between members of a joint venture similar to that which exists between partners in a partnership") (citing *Moroux v. Toce*, 943 So. 2d 1263 (La. App. 3 Cir. 2006)).

[102] *Id.*

whether liquidated damages from the Owner could resolve the Joint Venture's cash flow issues.[103]  As TMG points out in its Motion for Summary Judgment, a party does not breach an agreement by exercising its contractual rights.[104]  Thus, viewing the evidence in a light most favorable to TMG at this juncture, the Court cannot determine that TMG breached its fiduciary duty in failing to approve and/or contribute capital before it is determined whether TMG was required to do so, *i.e.*, whether it was required to make the Joint Venture's accounts payable and pay the subcontractors.  The necessity of the capital calls and TMG's obligation to vote to approve those calls and contribute capital go to material elements of breach of fiduciary duty.  Because there are genuine issues of fact, the Court denies summary judgment as to AWC's breach of fiduciary duty as to TMG's alleged failure to approve and/or make capital contributions.

AWC's claim for breach of fiduciary duty as to TMG's alleged failure to meaningfully participate in the Executive Committee fares no better.  TMG points the Court to evidence that after it placed TMG in default, AWC declined to allow TMG to vote on Joint Venture decisions.[105]  In meeting minutes from at least ten Executive Committee meetings, including meetings during which AWC made calls for capital contributions, it was noted that "McDonnel is in default of the [Joint Venture A]greement and no longer has a vote on [Joint Venture] decisions."[106]  Thus, viewing that evidence in a light most favorable to TMG, a genuine issue arises whether TMG was afforded an opportunity to participate.  That factual dispute goes to whether TMG took any action or nonaction  in violation of its fiduciary duty

---

[103] R. Doc. 195-4 at 1, 4.
[104] *See* R. Doc. 193-3 at 7-11.
[105] R. Docs. 193-4, 193-5, 193-6, R. Doc. 193-7, R. Doc. 193-8, R. Doc. 193-9, and R. Doc. 193-10.
[106] *Id*.

Accordingly, the Court denies AWC's Motion for Summary Judgment as to its breach of fiduciary duty claim.

## C. Whether AWC Is Entitled to Summary Judgment as to TMG's Remaining Affirmative Defenses

AWC argues that it is entitled to summary judgment on TMG's remaining affirmative defenses: Affirmative Defense I, II, III, IV, V, VII, XVI, and XVII. Of these, Affirmative Defenses I, II, V, VII, XVI, and XVII are moot.[107] Moreover, the Court finds that AWC has failed to meet its burden to show that summary judgment is appropriate as to TMG's remaining affirmative defenses—Affirmative Defenses III and IV.

## D. Issues Mooted by the Court's Ruling

Finally, the parties debate several issues which, considering the foregoing ruling, are premature at this time. These issues include (1) whether AWC's cited damages are based on irrelevant, contradicted, or inadmissible evidence; and (2) whether attorney's fees are appropriate. Because these issues are premature[108], the Court declines to address them in this Order and Reasons.

## IV.   CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that the Motion for Summary Judgment filed by Plaintiff Archer Western Contractors, LLC[109] is **DENIED**.

---

[107] Affirmative Defenses I, II, V, and VII were mooted by prior rulings, and TMG agrees that they are not pursing Affirmative Defenses XVI and XVII. However, as TMG notes, while TMG may not invoke these Affirmative Defenses at trial, it is not appropriate to strike them.

[108] And further because the parties have been given an opportunity to brief issues regarding the admissibility of evidence. *See* R. Doc. 213.

[109] R. Doc. 192.

**IT IS FURTHER ORDERED** that the Motion for Summary Judgment filed by Defendant The McDonnel Group[110] is **DENIED**.

New Orleans, Louisiana, January 28, 2025.

**WENDY B. VITTER**
**United States District Judge**

---

[110] R. Doc. 193.