**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**ARCHER WESTERN**                                              **CIVIL ACTION**
**CONTRACTORS, L.L.C.**

**VERSUS**                                                      **NUMBER: 22-5323**

**MCDONNEL GROUP, L.L.C.**                                      **SECTION: "D" (5)**

## REPORT AND RECOMMENDATION

Before the Court is Plaintiff's Motion for Attorneys' Fees and Nontaxable Costs. (Rec.
doc. 253).[1] Defendant opposes the motion. (Rec. doc. 257). Plaintiff did not reply. Having
reviewed the pleadings, the record, and the case law, the Court finds and recommends as
follows.

### I.      Background

The District Court has previously detailed the factual background of this lawsuit in
several prior Orders. (Rec. docs. 50, 67, 146, 158, 215). The Court summarizes pertinent
background information here.

This case concerns the alleged failure of Defendant, The McDonnel Group, L.L.C.
("TMG"), to abide by certain agreements and commitments made in a Joint Venture
Agreement with Plaintiff, Archer Western Contractors, L.L.C. ("AWC"). On May 2, 2011, AWC
and TMG entered into a Joint Venture Agreement (the "Agreement"), establishing the
McDonnel Group, L.L.C./Archer Western Contractors, Ltd. Joint Venture (the "Joint
Venture"). (Rec. doc. 192-1 at ¶¶ 1-2). The purpose of the Joint Venture was to obtain and
perform a contract with the Law Enforcement Division of the Parish of Orleans, State of
Louisiana (the "Owner") for the construction of a project known as the Orleans Parish

---

[1] The District Court referred the motion to the undersigned under 28 U.S.C. § 636(b). (Rec. doc. 255).

Sheriff's Office Inmate Processing Center/Templeman III & IV Replacement Administration Building (the "Project"). (*Id.*) According to the terms of the Agreement, AWC and TMG were to share any profits and any losses accruing to the Joint Venture from performance of the Contract in accordance with their proportional interest in the Joint Venture.

Not long after forming the Joint Venture, on July 28, 2011, the Joint Venture entered into a contract with the Owner to construct the Project (the "Contract"). During the course of the Project, the Joint Venture experienced cash flow issues, at least in part, from the Owner's failure to properly compensate the Joint Venture. (*Id.* at ¶ 23). Ultimately, litigation between the Owner and the Joint Venture ensued. (Rec. doc. 125-1 at ¶ 11).

To fund performance of the Contract, in its capacity as the Joint Venture's Managing Party, AWC initiated a series of capital contribution demands to AWC and TMG in their capacities as the two members of the Joint Venture. (Rec. doc. 58-1 at ¶¶ 37-38). TMG refused to furnish any of the working capital contributions. (*Id.* at ¶ 39). AWC paid TMG's share of capital contributions and deemed such payments to be demand loans made by AWC to TMG. (Rec. doc. 63-12 at 4).

On April 29, 2022, TMG separately, and without informing AWC, entered into an Agreement of Compromise, Release, Assignment and Settlement (the "Settlement Agreement") with the Owner to settle its claims individually and as to its rights in the Joint Venture. (Rec. doc. 158 at 4-5). The Settlement Agreement included a final payment in the amount of $2,700,000 to TMG that TMG deposited into its own bank account. (Rec. doc. 58-5 at 5-6). TMG never shared any of the funds with either the Joint Venture or AWC. (Rec. doc. 58-1 at ¶ 25).

Thereafter, on December 16, 2022, AWC filed the instant lawsuit in this Court against TMG. (Rec. doc. 42). AWC's claims in this litigation can be divided into two groups. First are AWC's claims concerning TMG's alleged failure to make capital contributions to the Joint Venture. Second are AWC's claims regarding TMG's April 29, 2022, Settlement Agreement with the Owner. As to each group, AWC has asserted claims for breach of contract and breach of fiduciary duty. AWC also asserted a claim of enrichment without cause as to TMG's settlement agreement. (Rec. doc. 174 at 1-2).

Extensive motions practice ensued in this case. Ultimately, the Court granted in part AWC's Motion for Summary Judgment as to AWC's breach of contract claim relating to TMG's Settlement Agreement. (Rec. doc. 158). As to AWC's capital contributions claims, a jury found in favor of TMG. (Rec. doc. 252). In accordance with that Order and jury verdict, the Court's Final Judgment ordered any motions for attorney's fees to be filed. (*Id.*). This fee application followed, in which AWC seeks attorneys' fees expended in connection with the Settlement Agreement portion of the case. AWC seeks no attorney fees arising from the capital contribution portion of this case, other than the proportional share of tasks common to both sets of claims at issue. (Rec. doc. 253-1 at 5).

AWC seeks $707,524.99 in billed fees, $24,900.00 in pending unbilled fees, and $10,373.14 in costs on behalf of Watt, Tieder, Hoffar & Fitzgerald, L.L.P., ("Watt Tieder"). AWC also seeks $25,425.00 in billed fees and $910.00 in pending unbilled fees on behalf of Phelps Dunbar, L.L.P. AWC's entitlement to fees is undisputed. Thus, the Court will address only the amount of attorney's fees and costs owed to AWC.

## II.    Law and Analysis

### A.    The Lodestar Approach

As to the law to be applied to its claim for costs and fees, AWC states that a fee award is "governed by the same law that serves as the rule of decision for the substantive issues in the case," then goes on to cite Louisiana law in support of its fee request. (Rec. doc. 253-1 at 3). Defendant does not argue otherwise. Indeed, the District Court applied Louisiana contract law to conclude that TMG violated the parties Joint Venture Agreement. (Rec. doc. 158 at 15-33). Regardless, the Court need not delve deeper into the applicability of Louisiana versus federal law, because "the appropriate framework for that analysis is the same—the well-established "lodestar" method." *Jolie Design & Décor, Inc. v. Gogh*, No. CV 15-0740, 2016 WL 4708210, at *2 (E.D. La. Aug. 11, 2016) (citing *Covington v. McNeese State University*, 118 So.3d 343, 351 (La. 2013)); *Chevron USA, Inc. v. Aker Mar. Inc.*, 689 F.3d 497, 505 (5th Cir. 2012) (describing the similarities between the federal lodestar method and factors considered under Louisiana law).

The United States Supreme Court and the Fifth Circuit have often repeated that a request for attorneys' fees should not spawn major ancillary litigation. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983); *Associated Builders & Contractors of La., Inc. v. Orleans Par. School Bd.*, 919 F.2d 374, 379 (5th Cir. 1990). A court's discretion in fashioning a reasonable attorney's fee is broad and reviewable only for an abuse of discretion, *i.e.*, it will not be reversed unless there is strong evidence that it is excessive or inadequate, or the amount chosen is clearly erroneous. *Hensley*, 461 U.S. at 436-37; *Hopwood v. State of Tex.*, 236 F.3d 256, 277 n.79 (5th Cir. 2000).

To determine a reasonable fee, the Court must provide a concise but clear explanation of its reasons for the fee award, making subsidiary factual determinations regarding whether the requested hourly rate is reasonable, and whether the tasks reported by counsel were duplicative, unnecessary, or unrelated to the purposes of the lawsuit. *Hensley*, 461 U.S. at 437-39; *Associated Builders & Contractors*, 919 F.2d at 379. The Fifth Circuit has noted that its "concern is not that a complete litany be given, but that the findings be complete enough to assume a review which can determine whether the court has used proper factual criteria in exercising its discretion to fix just compensation." *Brantley v. Surles*, 804 F.2d 321, 325-26 (5th Cir. 1986).

In assessing the reasonableness of attorneys' fees, the Court must first determine the "lodestar" by multiplying the reasonable number of hours expended and the reasonable hourly rate for each participating attorney. *See Hensley*, 461 U.S. at 433; *Green v. Adm'rs of the Tulane Educ. Fund*, 284 F.3d 642, 661 (5th Cir. 2002), *overruled on other grounds by Burlington N. & Santa Fe Railway Co. v. White*, 548 U.S. 53 (2006); *Migis v. Pearle Vision, Inc.*, 135 F.2d 1041, 1047 (5th Cir. 1998); *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995). The lodestar is presumed reasonable, but a court may then enhance or decrease it after considering the twelve Johnson factors. *Fessler v. Porcelana Corona De Mexico, S.A. De C.V.*, 23 F.4th 408, 415 (5th Cir. 2022) (citing *Combs v. City of Huntington*, 829 F.3d 388, 392 (5th Cir. 2016)). "'[T]he most critical factor' in determining a reasonable fee 'is the degree of success obtained.'" *Combs*, 829 F.3d at 394 (quoting *Hensley*, 461 U.S. at 436). The fee applicant bears the burden of proof on the lodestar issue, but once calculated, the party seeking modification of the lodestar under the Johnson factors bears the burden. *See Fessler*,

23 F.4th at 416; *Riley v. City of Jackson*, 99 F.3d 757, 760 (5th Cir. 1996); *La. Power*, 50 F.3d at 324; *In re Smith*, 996 F.2d 973, 978 (5th Cir. 1992).

### 1.    Reasonable Hourly Rates

"'[R]easonable' hourly rates 'are to be calculated according to the prevailing market rates in the relevant community.'" *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 381 (5th Cir. 2011) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)). "[T]he burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill." *Blum*, 465 U.S. at 895 n.11. "An attorney's requested hourly rate is prima facie reasonable when [he] requests that the lodestar be computed at [his] 'customary billing rate,' the rate is within the range of prevailing market rates and the rate is not contested." *White v. Imperial Adjustment Corp.*, No. 99-3804, 2005 WL 1578810, at *5 (E.D. La. June 28, 2005) (citing *La. Power*, 50 F.3d at 328) (emphasis added).

In its fee submission, AWC seeks fees on behalf of three attorneys and one paralegal from Watt Tieder: Carter Reid, Dominick Weinkam, Henry Taylor, and Leslie Osman (paralegal). Reid is a senior partner at Watt Tieder who, having been admitted to the bar of the Commonwealth of Virginia in 1986, has over 39 years of experience as an attorney. Reid specializes in complex construction litigation and has achieved successful results for clients on an expansive range of heavy-civil and commercial building projects throughout the United States. He was admitted *pro hac vice* to represent AWC in this matter. Reid seeks a rate of $530.00/hour for his work in this case. (Rec. doc. 253-2 at 1-2).

6

Weinkam is an associate with Watt Tieder and has been with the firm since 2017, the same year he gained membership to the bar of the Commonwealth of Virginia.  He has substantial prior experience representing national general contractors in complex construction litigation and dispute resolution.  Weinkam was listed as a Virginia Super Lawyer Rising Star (Construction Litigation) from 2024-2025.  He was admitted *pro hac vice* to represent AWC in this matter.  Weinkam performed work on this case as a sixth, seventh, and eighth-year attorney, and seeks rates of $415.00/hour, $425.00/hour, and $445.00/hour, respectively.  (*Id.* at 2-4).

Taylor is an associate with Watt Tieder and has been with the firm since 2021, the same year he gained membership to the bar of the Commonwealth of Virginia.  Taylor has prior experience representing national general contractors in complex construction litigation and dispute resolution.  He is admitted *pro hac vice* to represent AWC in this matter. Taylor performed work on this matter as a second, third, and fourth-year attorney and seeks rates of $355.00/hour, $375.00/hour, and $390.00/hour, respectively.  (*Id.* at 4-5).  Osman is a senior paralegal who has been employed by Watt Tieder as a paralegal for 35 years.  She seeks a rate of $305.00/hour.  (*Id.* at 2-3).

AWC also seeks fees on behalf of three attorneys from Phelps Dunbar: Daniel Lund III, Stuart G. Richeson, and Margaret Manning.  Lund is a partner at Phelps Dunbar and has over 36 years of experience as an attorney.  He specializes in complex construction litigation. Lund seeks a rate of $455.00/hour.  Richeson was an associate with Phelps from 2015 to October of 2024 and has been a member of the bar of Louisiana since 1995.  He seeks a rate of $345.00/hour.  Manning was an associate with Phelps from 2022 to 2024 and has been a

member of the bar of Louisiana since 2020. Manning seeks a rate of $260.00/hour. (Rec. doc. 253-3 at 1-2).

As to rates sought on behalf of Watt Tieder, TMG contests the rates of Dominick Weinkam, Henry Taylor, and Leslie Osman. TMG references cases in this District, urging this court to reduce Taylor's rate to $200.00/hour, Weinkam's rate to $290.00/hour and Osman's rate to $125.00/hour. TMG does not challenge the rates sought by Watt Tieder attorney Carter Reid or any of the Phelps Dunbar attorneys. (Rec. doc. 257 at 8-9).

As noted above, "an attorney's requested hourly rate is prima facie reasonable when [he] requests that the lodestar be computed at [his] 'customary billing rate,' the rate is within the range of prevailing market rates and the rate is not contested." *White v. Imperial Adjustment Corp.*, No. 99-3804, 2005 WL 1578810, at *5 (E.D. La. June 28, 2005) (citing *La. Power*, 50 F.3d at 328) (emphasis added). However, the Court may reduce the hourly rate if it determines that the requested rate is not within the range of prevailing market rates. *Richard v. St. Tammany Par. Sheriff's Dep't*, No. CV 17-9703, 2022 WL 4534728, at *11 (E.D. La. Sept. 28, 2022), *appeal dismissed sub nom. Richard v. Smith*, No. 22-30497, 2023 WL 2845201 (5th Cir. Jan. 27, 2023). Thus, although prima facie reasonable, the Court in its discretion will assess whether the uncontested rates, in addition to the contested rates, fall within the range of prevailing market rates.

Some of the requested hourly rates do not reflect the prevailing rates in this community.[2] The Court begins with Reid, who has over 39 years of experience and seeks a

---

[2] AWC does not argue, or make any showing that, the out-of-state Watt Tieder attorneys are entitled to rates reasonable in their home-state rather than this community. This analysis will focus on whether the rates at issue are reasonable in the Eastern District of Louisiana. *United States ex rel McNeil v. Jolly*, 451 F. Supp. 3d 657, 674 (E.D. La. 2020) (". . . reasonable hourly rate should be based on the prevailing market rates in this district, absent a showing of the necessity of out-of-district counsel.") (citing *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 382 (5th Cir. 2011)).

rate of $530.00/hour. Notably, neither Reid, nor any of the other attorneys presently seeking fees in this case, included an affidavit, outside of their own personal testimony, of other attorneys practicing in this District establishing that their fees are in line with prevailing rates in this community. ("Generally, the reasonable hourly rate for a particular community is established through affidavits of other attorneys practicing there."). *Bd. of Supervisors of Louisiana State Univ. v. Smack Apparel Co.*, No. CV 04-1593, 2007 WL 9770644, at *10 (E.D. La. May 23, 2007), *report and recommendation adopted*, No. CV 04-1593, 2007 WL 9770643 (E.D. La. Aug. 28, 2007) (quoting *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002)); *Herbert v. Audubon Comm'n*, No. CV 15-5425, 2017 WL 5900978, at *2 (E.D. La. Nov. 30, 2017) (reminding Plaintiff's counsel that as applicants, they bear burden of producing satisfactory evidence that their rates are in line with other similar services in this District.). Further, not a single case that AWC cites in support of their requested rates awards a rate as high as that requested by Reid. And, most importantly, the rate Reid seeks is not in line with others awarded in this District.

For example, in *Bardales v. Fontana & Fontana, LLC*, the magistrate judge reduced the hourly rate of an attorney with 48 years of experience from $500.00 to $450.00, but the district court concluded that the magistrate judge had clearly erred and further reduced the award to $400.00/hour. No. CV 19-340-WBV-DMD, 2021 WL 2328382, at *2-6 (E.D. La. June 8, 2021). Furthermore, in *Oreck Direct, L.L.C. v. Dyson, Inc.*, the court declared that it was "familiar with the local legal market and knows that the top rate for partner-level attorneys here is between $400 and $450 per hour." No. 07-2744, 2009 WL 1649503, at *4 (E.D. La. June 8, 2009). More recently, in *MGMTL, L.L.C. v. Strategic Tech. Inst., Inc.*, the court found $475.00/hour to $520.00/hour for an attorney with 28 years of experience unreasonable,

9

reducing the requested rate to $450.00/hour, $465.00/hour, and $480.00/hour for 2020, 2021, and 2022, respectively.  No. CV 20-2138, 2025 WL 958208, at *37 (E.D. La. Mar. 31, 2025).  Here, Reid has more experience than the attorney in *MGMTL*, and the instant case was more complex than that in *Bardales*.  Accordingly, only a slight reduction from $530.00/hour to $500.00/hour is warranted.

Some of the other Watt Tieder requested hourly rates are excessive as well. Regarding Wienkam's requested rates of $415.00/hour, $425.00/hour, and $445.00/hour, significant reduction is necessary to reflect rates awarded to other sixth, seventh, and eighth-year attorneys in this District.  *MGMTL,* 2025 WL 958208, at *38 (reducing the rate of an attorney with five to eight years of experience from $280.00/hour to $225.00/hour and awarding a then-current rate of $275.00/hour to an attorney with 11 years of experience);  *Grant v. Gusman*, No. CV 17-2797, 2023 WL 315937, at *13 (E.D. La. Jan. 19, 2023) (reducing a proposed billing rate of $350 per hour to $275 for an attorney with 11 years of experience); *Gros v. New Orleans City*, No. 12-2322, 2014 WL 2506464, at *8 (E.D. La. June 3, 2014), *on reconsideration in part*, No. 12-2322, 2014 WL 3894371 (E.D. La. Aug. 8, 2014) (finding rates of $185.00/hour reasonable for an attorneys with five and six years of experience); *Engender, LLC v. Cypress Zone Prods.*, *L.L.C.*, No. CV 20-1591, 2021 WL 3423589, *2 (E.D. La. Aug. 5, 2021) (finding a rate of $260.00/hour reasonable for an attorney with seven years of experience); *EnVen Energy Ventures, LLC v. Black Elk Energy Offshore Operations, LLC*, 2015 WL 3505099, at *2-3 (E.D. La. June 3, 2015) (finding hourly rate of $275 for associat**e** with seven years of experience to be reasonable).  Given the case law, the Court awards Wienkam hourly rates of $260.00, $270.00, and $280.00 for work conducted in his sixth, seventh, and eighth years of practice, respectively.

Moreover, Taylor requests rates significantly above those typically awarded in this District. For work as a second, third, and fourth-year attorney, he seeks rates of $355.00/hour, $375.00/hour, and $390.00/hour, respectively. Like the other Watt Teider attorneys, Taylor's rate must be reduced to align with awards to attorneys with similar experience in this District. *Girod LoanCo, LLC v. Heisler*, No. CV 19-13150, 2020 WL 3605947, at *8 (E.D. La. July 2, 2020) (stating that "judges in this district award attorneys' fees in the amount of $200 for work performed by an associate with less than five years of experience"); *Johnson v. Big Lots Stores, Inc.*, 639 F. Supp. 2d 696, 701 (E.D. La. June 25, 2009) (finding $225 to be a reasonable hourly rate for associates); *Castellanos v. Saints & Santos Constr., LLC*, No. CV 16-2501, 2019 WL 1367447, at *5-6 (E.D. La. Mar. 25, 2019) (reducing requested hourly rate for an attorney with 3 years of experience from $250.00 to $175.00); *MGMTL,* 2025 WL 958208, at *38 (awarding $200.00/hour to an attorney with zero to three years of experience). The Court awards Taylor $220.00/hour, $230.00/hour, and $240.00/hour for work as a second, third, and fourth-year attorney, respectively.

The case law cited above in conjunction with the reduction of Taylor's hourly rate supports a reduction of the $260.00/hour rate requested by Phelps Dunbar attorney Margaret Manning. Manning was admitted to the bar in 2020, suggesting that at the time she performed work on this case she had two to four years of experience. Accordingly, the Court awards Manning a rate of $230.00/hour for work performed on this case.

As for the remaining two Phelps Dunbar attorneys, Richeson and Lund, their requested hourly rates are reasonable. Lund has 36 years of experience and seeks $455.00/hour. Richeson seeks $345.00/hour and has been barred since 1995, suggesting that he has approximately 30 years of experience. Those rates are both in line with other

11

similar awards in this District. *RedHawk Holdings Corp. v. Schreiber*, No. CV 17-819, 2022 WL 65860, at *5 (E.D. La. Jan. 6, 2022) (finding $425.00 per hour reasonable for a partner with over thirty years' experience); *Jefferson v. Baywater Drilling, L.L.C.*, No. CV 14-1711, 2015 WL 7281612, at *1 (E.D. La. Nov. 17, 2015) (affirming magistrate judge's report and recommendation finding that rates of $500.00 and $450.00 per hour were reasonable for two attorneys with 40 years of experience in maritime litigation).

Lastly, Osman, Watt Teider's senior paralegal's requested rate of $305.00/hour is unreasonable. In recent years, courts in this District have found rates between $100.00 and $150.00 per hour to be reasonable and within the prevailing market rates. *E.g., Dong Phuong Bakery, Inc. v. Gemini Soc'y, L.L.C.*, No. CV 21-1109, 2023 WL 3453885, at *3 (E.D. La. May 15, 2023) (approving hourly rate of $125.00 for paralegal); *Parkcrest Builders, L.L.C. v. Hous. Auth. of New Orleans*, No. CV 15-01533, 2020 WL 2857377, at *4 (E.D. La. May 8, 2020), *report and recommendation adopted*, No. CV 15-1533, 2020 WL 2850167 (E.D. La. June 2, 2020) ("The Court further finds that $150/hour is the prevailing hourly rate for a paralegal in this district."); *Smith v. Bd. of Comm'rs of La. Stadium & Exposition Dist.*, No. CV 17-7267, 2019 WL 7580771, at *6 (E.D. La. Sept. 5, 2019), *report and recommendation adopted*, No. CV 17-7267, 2019 WL 7580772 (E.D. La. Oct. 1, 2019) ("The requested hourly rate for their paralegal, $100 per hour, is supported by similar fee awards in recent years in this district."); *Warder v. Shaw Grp., Inc.*, No. CV 09-4191, 2016 WL 3447950, at *4 (E.D. La. June 23, 2016) (rejecting a paralegal rate of $233.28 and reducing the rate to $130.00 per hour). Given Osman's 35 years of experience, a rate of $150.00/hour is awarded. The Court will now calculate attorneys' fees at the aforementioned hourly rates.

### 2.     Reasonable Hours Expended

The party seeking the fee bears the burden of documenting and supporting the reasonableness of all time expenditures for which compensation is sought. *Hensley*, 461 U.S. at 437. "Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, and otherwise unnecessary . . ." *Id.* at 434. Hours that are not properly billed to one's client are not properly billed to one's adversary. *Id.* The Supreme Court calls on fee applicants to make a fee request that demonstrates "billing judgment." *Id.* The remedy for failing to exercise "billing judgment" is to exclude hours that were not reasonably expended. *Id.* at 434; *Walker v. City of Mesquite*, 313 F.3d 246, 251 (5th Cir. 2002) (quoting *Walker v. HUD*, 99 F.3d 761, 770 (5th Cir. 1996)) ("If there is no evidence of billing judgment, however, then the proper remedy is not a denial of fees, *but a reduction of 'the hours awarded by a percentage intended to substitute for the exercise of billing judgment.'*" (emphasis added)). Alternatively, this Court can conduct a line-by-line analysis of the time report. *See Green*, 284 F.3d at 662; *Cameron v. Greater New Orleans Fed. Credit Union*, No. CV 16-8514, 2017 WL 1426970, at *2 (E.D. La. Apr. 21, 2017).

AWC argues that the hours sought are reasonable because the case involved extensive motions practice, extensive discovery, seven total depositions, procedural hurdles, concurrent litigation, and "entrenched resistance" by TMG. (Rec. doc. 253-1 at 11-15). AWC further argues that the time sought reflects prior reductions after an exercise of billing judgment to exclude unproductive, excessive, and duplicative time, as well as two separate professional courtesy discounts and extensive efforts to remove any hours worked solely on the capital contributions claims. (*Id.* at 11-12). In summary, TMG argues in response that reductions are warranted because AWC's Motion for Partial Summary Judgment only

13

involved transcripts from three depositions, no authority is cited for taxing travel expenses, that time spent on document production cannot be attributed to their favorable ruling, and that AWC need not have staffed five attorneys on the matter.  (Rec. doc. 257).  Attached as Exhibit A is a chart of the time entries to which TMG objects.  (Rec. doc. 257-1).  The details of the parties' arguments are outlined below.

### i.    Depositions

AWC seeks fees for time spent preparing for and taking depositions in this case. AWC's fee Memorandum in support of their fee motion notes that the parties took a combined seven depositions that necessarily implicate the capital contribution and settlement agreement portions of the case, prompting it to proportionally reduce time sought in its fee motion accordingly.  (Rec. doc. 253-1 at 13, 14).  TMG argues that only three depositions were utilized by AWC to secure the relief obtained, so time spent preparing for, traveling to/from, and taking depositions that were not used should be rejected.  (Rec. doc. 257 at 6-7).  More specifically, TMG asserts that AWC is only entitled to fees related to the following three depositions: the deposition attached to AWC's Motion for Partial Summary Judgment, the deposition attached to TMG's Opposition, and the deposition used in TMG's complementary Motion for Partial Summary Judgment.  *Id.*

A fee movant cannot recover attorney's fees it incurred for time spent on preparation for and taking of depositions that are unrelated to the claim for which fees are sought. *Louisiana Newpack Shrimp, Inc. v. Ocean Feast of China, Ltd.*, No. CV 19-12948, 2025 WL 580009, at *21 (E.D. La. Feb. 21, 2025).  However, "simply because defense counsel opted not to specifically refer to one or more of the depositions transcripts in defendant's motion for summary judgment does not mean that reference to the deposition testimony was not

necessary in formulating the motion for summary judgment." *Nance v. New Orleans & Baton Rouge Steamship Pilots Ass'n*, No. CV 03-3092, 2005 WL 8173905, at *7 (E.D. La. July 13, 2005) (making no deduction for costs incurred for procuring transcripts of depositions not specifically referenced in the successful motion for summary judgment).

TMG's sole argument in support of its position that time spent preparing for and taking depositions should be reduced is that only three depositions were referenced in the successful motion for summary judgment and related briefing. That fact alone is insufficient to show that some depositions in this case were unrelated to AWC's successful claim. Failure to reference a specific deposition transcript in the successful motion and related briefing does not necessarily equate to that deposition being unrelated to the claim. Furthermore, AWC has already "proportionally allocated" time spent between its successful and unsuccessful claims for matters that necessarily implicate both portions of the case, including time spent taking and preparing for depositions, based on a 50/50 split, or in some cases, a 75/25 split. (Rec. doc. 253-1 at 13). That reduction is sufficient to account for time unrelated to the successful portion of the case. No further reduction on time spent preparing for and taking depositions is warranted.

### ii.    Document Production and Review

AWC seeks fees for time spent on the extensive document discovery that this litigation entailed. According to AWC, the parties produced roughly 60,000 documents, requiring review of substantially more. (*Id.* at 14). TMG asserts that time sought for document review of AWC's own document production should be reduced because no document filed in support or in opposition to AWC's successful motion for summary judgment bears a Bates stamp showing it was produced by AWC. (Rec. doc. 257 at 3). TMG

argues that because none of the exhibits attached to briefing relevant to AWC's successful motion for summary judgment bore a Bates stamp, AWC's document production and review was not necessary or useful to adjudicating their claim. (*Id.*)

Similar to the Court's conclusion for time spent related to depositions, AWC's choice to not attach any documents from its own document production to its motion for summary judgment and related briefing does not necessarily mean that review of those document was not necessary to adjudicating their claim. Review was necessary to determine whether those documents were needed as exhibits. *See White v. Imperial Adjustment Corp.*, No. CV 99-3804, 2005 WL 1578810, at *14 (E.D. La. June 28, 2005) ("Careful drafting of pleadings and discovery requests and thoughtful review and study of discovery responses is expected, and aids the parties and the Court in considering the respective contentions of the parties."); *Pilkington N. Am., Inc. v. Smith*, No. CV 11-00176-BAJ, 2014 WL 6633096, *2 (M.D. La. Nov. 21, 2014) (declining to reduce time spent on document review in a case that succeeded on summary judgment and involved review of tens of thousands of documents over the course of approximately three years). Furthermore, this Court's review of AWC's time sheet revealed that time sought for reviewing document production for responsive documents has already been reduced by 50% in an exercise of billing judgment. (Rec. doc. 253-2 at 72). That reduction is sufficient to account for the possibility that some of that time was unnecessary to AWC's successful settlement claims, and to satisfy AWC's burden.

### iii.    Out-of-State Counsel

This case involved three out-of-state attorneys admitted *pro hac vice* and three in-state attorneys that served as local counsel and co-counsel. TMG argues that time spent on counsel's pro hac vice admission should be rejected because there is no reason why this case

required out-of-state counsel, and that their failure to remove that time demonstrates a lack of billing judgment. (Rec. doc. 257 at 7). In that same vein, TMG argues because AWC had competent local counsel in this case, that should preclude AWC from recovering for time spent researching basic Louisiana law and this Court's local rules. (*Id.* at 3).

TMG's argument is entirely conclusory. It offers no facts or law in support of its position outside of one case, *Gilmore v. Audubon,* which this Court finds inapposite. 353 F. Supp. 3d 499 (E.D. La. 2018). In *Gilmore*, the court reduced to zero all hours billed by plaintiff's counsel for time spent on a *pro hac vice* application, because that plaintiff had employed only local counsel in prosecuting exactly that kind of case in other lawsuits he had pursued in that same court. *Id.* at 511. TMG points to no such similar facts here and this Court is not aware of any. Furthermore, the Court's review of the time sheet revealed that AWC seeks only 0.10 hours of time for spent on the *pro hac vice* motion. (Rec. doc. 253-2 at 12). That time is negligible, and that entry does not evidence a lack of billing judgment.

AWC does seek significant time for research of Louisiana law. However, there is no evidence that time was unnecessary, and those entries already reflect substantial reductions. TMG does not cite any authority suggesting that counsel cannot seek fees for research of Louisiana law simply because local counsel is involved, and this Court is not aware of any such rule. However, courts do reduce excessive legal research time. *White v. Imperial Adjustment Corp.,* No. CV 99-3804, 2005 WL 1578810, at *15 (E.D. La. June 28, 2005) (reducing 314 hours sought for legal research over the course of 5 years of litigation by 25% where counsel billed too much time given their expertise in the area). This Court's rough addition of time contested by TMG for Louisiana-research totals approximately 55 hours over the course of three years. The research conducted appears related to AWC's successful

17

claims and that amount of time is not excessive. *See Alberti v. Klevenhagen*, 896 F.2d 927, 933 (5th Cir.), *vacated on other grounds*, 903 F.2d 352 (5th Cir. 1990) ("Certainly, [counsel] can be compensated for reasonable amounts of time spent educating himself about topics directly relevant to the litigation"). No further reductions are warranted.

### iv.    Vague and Ambiguous Entries

"Also excluded from a fee petition are hours for which the Plaintiff provides inadequate documentation." *Kuperman v. ICF Int'l*, No. 08-565, 2009 WL 10737138, at *8 (E.D. La. Oct. 13, 2009) (internal quotation marks and citations omitted); *see also Leroy v. City of Houston,* 831 F .2d 576, 585 (5th Cir.1987) (reversing a lower court's fee award when entries were "often 'scanty'" and "many lacked explanatory detail"). Courts have disallowed entries for vagueness in which attorneys state only that they "spoke with" another attorney, or "helped" another attorney prepare for a hearing. *Alfasigma USA, Inc. v. EBM*, No: 17-07753, 2018 WL 3869496, at *6 (E.D. La. Aug. 15, 2018); *see also Walker*, 99 F.3d at 773 (disallowing entries containing "terse listings" like "library research, "analyzing documents," "reading background documents," and "phone interviews," without any further explanation).

"Trial courts need not, and indeed should not, become green-eyeshade accountants" but rather "may take into account their overall sense of a suit" when the party "submit[s] appropriate documentation." *Fox v. Vice*, 563 U.S. 826, 838 (2011) (quoting *Hensley*, 461 U.S. at 437) ("The fee applicant . . . must, of course, submit appropriate documentation to meet 'the burden of establishing entitlement to an award.' But trial courts need not . . . become green-eyeshade accountants. The essential goal in shifting fees . . . is to do rough justice, not to achieve auditing perfection.") (internal citations omitted)). Thus, in recognizing that the "practical considerations of the daily practice of law in this day and age preclude 'writing a

book' to describe in excruciating detail the professional services rendered," the Fifth Circuit has found that a district court does not err "in refusing to reduce the hours in question for vagueness" when it has "familiarity with [the] case, including the quality of the attorneys' work over a period of several years." *La. Power*, 50 F.3d at 327.

TMG argues that some of AWC's time descriptions are vague or ambiguous. However, most of the entries TMG identifies as vague or ambiguous are partially redacted. AWC submitted approximately 180 pages of time entries logged over approximately three years of litigation. There is minimal redaction, and it is clear without need for *in camera* review of the redacted entries that there is no widespread billing for vague or ambiguous time. AWC's documentation is appropriate and reduction on these grounds is unwarranted.

### v.    Excessive or Unnecessary Work

Courts disallow charges for excessive hours or unnecessary work, duplicative or redundant work or personnel, and vague or inadequately documented entries. *Richard*, 2022 WL 4534728, at *8 (citing *McClain*, 649 F.3d at 381); *Alfasigma USA, Inc,* 2018 WL 3869496, at *5 (citing *Walker*, 99 F.3d at 769); *White v. Imperial Adjustment Corp.*, No. CV 99-3804, 2005 WL 1578810, at *9 (E.D. La. June 28, 2005) (reviewing submitted time for "inadequately documented, excessive, redundant or otherwise unnecessary or unreasonable hours"); *see also Grant*, 2023 WL 315937, at *12 (holding that, even when a motion had substantive depth, the excessive time billed to prepare it required a 50% reduction in hours); *Williams v. Res-Care, Inc.*, No. CV 17-10200, 2020 WL 4816141, at *4 (E.D. La. Aug. 19, 2020) (finding two motions excessively billed given the attorney's extensive experience and reducing the hours for motions by 46% and 63%).

As part of excessive billing, courts deduct time spent on unnecessary work, "routinely deduct[ing] time spent on unsuccessful, unfounded, or unnecessary pleadings, motions, discovery requests, and memoranda." *Kuperman*, 2009 WL 10737138, at *7 (quoting *White*, 2005 WL 1578810, at *11) (internal quotation marks omitted) (preserving time spent on some unsuccessful motions but reducing for other motions, and totally deducting for unnecessary work when attorneys drafted letters never sent, objections never filed, or prepared for depositions never taken).

TMG describes what it considers additional objectionable tasks briefly in its Memorandum in Opposition and in a chart of objectionable entries. These objections are best summarized as entries that TMG argues are excessive or unnecessary. Included are entries for time spent drafting requests for admission that were never served, drafting a motion to compel before completing the discovery conference, preparing to defend depositions that were never taken, various entries that TMG alleges are unrelated to the settlement portion of this litigation, time spent communicating between in and out of state counsel, and other excessive, unnecessary, or duplicative entries. (Rec. doc. 257-1; 257 at 3). TMG's 26-page chart of objectionable entries identifies entries it contests and describes in a sentence or less what arguably disallows that entry. For example, "not related to this matter" or "duplicative internal meeting."

TMG's brief descriptions of a hodgepodge of allegedly problematic entries are insufficient to suggest a widespread significant issue with AWC's billing. *See Rosenfeld v. Dep't of Justice,* 904 F. Supp. 2d 988, 1005 (N.D. Cal. 2012) ("Mere generalized allegations of unjustified billing not supported by specific citations to evidence in the record are insufficient to warrant a reduction in the lodestar figure."). Neither did this Court's review

20

of the timesheets.  For example, the communications between counsel that TMG objects to were not unnecessary, and a comparison of the timesheets of local and out-of-state counsel reveals no duplicative entries.  *Lewallen v. City of Beaumont*, No. CV-733TH JURY, 2009 WL 2175637, at *10 (E.D. Tex. July 20, 2009), *aff'd in part*, 394 F. App'x 38 (5th Cir. 2010) ("[C]onsultation and 'sound-boarding' among attorneys is valuable to effective litigation.").

Furthermore, Strategies change during the litigation process.  Especially in a hard-fought, procedurally complex case such as this one.  Simply because AWC did not serve a request for admission that it began to draft does not necessarily render that time unnecessary.  The same goes for preparation for depositions never taken.  *See Kuperman*, 2009 WL 10737138, at *7 (declining to reduce fee award for *every* unfiled or unsuccessful motion); *Alex v. KHG of San Antonio, LLC*, 125 F. Supp. 3d 619, 626 (W.D. Tex. 2015) ("Plaintiffs' counsel undoubtedly won a huge success for their clients and the Court declines to second-guess each strategic action undertaken with the benefit of hindsight.").  Furthermore, the majority of time that TMG flags as impermissible has already been reduced by 50% or greater, demonstrating billing judgment.

However, this Court's review of the timesheets did reveal a proportionately small number of unnecessary, unrelated, or excessive entries.  For example, AWC's timesheets include unreduced time related to AWC's action against the Owner.  (Rec. doc. 253-2 at 9).  Another example is time billed to "analyze documents and defenses posed by TMG for preparation of expert positions," but their Memorandum in Support does not explain how experts were necessary to Settlement Agreement portion of the litigation.  (*Id.* at 28).  As noted above, the party seeking the fee bears the burden of documenting and supporting the

reasonableness of all time expenditures for which compensation is sought. *Hensley*, 461 U.S. at 437. For that reason, a mere 5% reduction is warranted to account for those, and similar entries.

### iv.    Time Spent Preparing the Instant Motion for Attorneys' Fees

In this circuit "[i]t is settled that a prevailing plaintiff is entitled to attorney's fees for the effort entailed in litigating a fee claim and securing compensation." *Cruz v. Hauck,* 762 F.2d 1230, 1233 (5th Cir.1985); *see also Knighton v. Watkins,* 616 F.2d 795, 800 (5th Cir.1980); *Johnson v. State of Mississippi,* 606 F.2d 635, 637–38 (5th Cir. 1979). "If the Plaintiffs' 'natural zeal' resulted in their expending more effort than reasonably necessary to establish and defend their fee claim, the district court may reduce the compensable number of hours accordingly." *Cruz,* 762 F.2d 1234. Also, "if the attorney's initial claims are exorbitant . . ., the district court should refuse the further compensation." *Lund v. Affleck,* 587 F.2d 75, 77 (1st Cir. 1978).

Both law firms that represent AWC in this matter seek fees in connection to the instant Motion for Attorneys' Fees. Those fees are not included in their timesheets, because at the time the instant Motion was filed, those hours had not yet been billed to AWC. (Rec. doc. 253-2 at 6; 253-3 at 4). Watt Tieder seeks $24,900.00 in fees for 41.20 hours expended by two attorneys and 23.8 hours expended by one paralegal to prepare their affidavit, AWC's Motion for Attorneys' Fees, and prepare briefs and issues relating to the entry of final judgment in this matter. (Rec. doc. 253-2 at 6). Phelps Dunbar seeks $1,137.50 in fees for 2.50 hours expended by one attorney to prepare their affidavit and Motion for Attorneys' Fees, including reviewing invoices and revising the Motion itself. (Rec. doc. 253-3 at 4).

22

Collectively, AWC seeks $26,037.50 in fees for 67.50 hours spent in connection with the instant Motion and Entry of Final Judgment. That time is excessive compared to awards in other cases in this District. *Williams v. Res-Care, Inc.*, No. CV 17-10200, 2020 WL 4816141, at *4 (E.D. La. Aug. 19, 2020) (finding 8.0 hours to draft a motion for attorneys fees excessive where the motion contained a notable lack of substantive depth); *Grant*, 2023 WL 315937, at *12 (E.D. La. Jan. 19, 2023) (reducing as excessive the 11.20 hours sought to prepare a motion for attorneys' fees by 50%). AWC's initial claims were not exorbitant, and their Motion did not contain a notable lack of substantive depth. And while the Court recognizes that more time and money is involved in the instant case than the cited cases, the disparity is still too great. 67.50 hours is an excessive amount of time for experienced attorneys to spend on a Motion for Attorneys' Fees and Entry of Final judgment. Furthermore, AWC does not claim to have made reductions of that time. (Rec. doc. 253-2 at 6; 253-3 at 4). Time spent by Phelps Dunbar—2.50 hours—was not unreasonable. The majority time expended on the instant motion was by Watt Teider attorneys and their paralegal. For these reasons, a 50% reduction in time spent by Watt Teider attorneys and paralegal on the instant motion is warranted, bringing the total hours from 65.00 to 32.50 hours.

### C.    The *Johnson* Factors

As noted above, the lodestar is presumed reasonable, but a court may then enhance or decrease it after considering the twelve *Johnson* factors. *See Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 90 (1989). The *Johnson* factors are

> (1) time and labor required, (2) novelty and difficulty of the issues, (3) skill required to perform the legal services properly, (4) preclusion of other employment, (5) customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by client or circumstances, (8) amount involved and

results obtained, (9) experience, reputation and ability of the attorneys, (10) undesirability of the case, (11) nature and length of the professional relationship with the client, and (12) award in similar cases.

*See id.* at 717-19.[3]  "'[T]he most critical factor' in determining a reasonable fee 'is the degree of success obtained.'"  *Combs*, 829 F.3d at 394 (quoting *Hensley*, 461 U.S. at 436).

The lodestar is presumed to yield a reasonable fee.  *La. Power*, 50 F.3d at 324. Additionally, the lodestar should be modified only in exceptional cases.  *Fleming v. Elliott Sec. Sols., LLC,* No. CV 19-2348, 2021 WL 4908875, at *1 (E.D. La. Oct. 21, 2021) (citing *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993)).  Lastly, "to the extent that any *Johnson* factors are subsumed in the lodestar, they should not be reconsidered when determining whether an adjustment to the lodestar is required."  *Migis*, 135 F.3d at 1047.

TMG makes arguments based on factors one, two, five, eight, and twelve.  However, the Court addressed each of those arguments above in calculating the lodestar.  Thus, the *Johnson* factors that are relevant to this case are subsumed in the lodestar.  No further adjustment is merited.

Accordingly, the distribution of fees is as follows:

| **Name** | **Hours[4]** | **Hourly rate** | **Amount** |
| --- | --- | --- | --- |
| Carter Reid | 427.43 | $500.00 | $213,715.00 |
| Dominick Weinkam (6th year) | 94.80 | $260.00 | $24,648.00 |
| Dominick Weinkam (7th year) | 473.45 | $270.00 | $127,831.50 |
| Dominick Weinkam (8th year) | 102.95 | $280.00 | $28,826.00 |
| Henry Taylor (2nd year) | 94.05 | $220.00 | $20,691.00 |
| Henry Taylor (3rd year) | 493.35 | $230.00 | $113,470.50 |
| Henry Taylor (4th year) | 9.75 | $240.00 | $2,340.00 |
| Leslie Osman (Senior Paralegal) | 34.45 | $150.00 | $5,167.50 |

---

[3] The *Johnson* factors are near identical to the factors considered by Louisiana state courts when awarding attorneys' fees.  The Louisiana factors are briefed in AWC's memorandum in support of its attorneys' fees.  (Rec. doc. 253-1 at 7).

[4] Included in the hours listed is time spent on the instant Motion that has been, in the case of Watt Tieder attorneys and paralegal, reduced by 50% for the reasons described above.

| | | | |
|---|---|---|---|
| Daniel Lund | 47.00 | $455.00 | $21,385.00 |
| Stuart G. Richeson | 13.50 | $345.00 | $4,657.50 |
| Margaret Manning | 2.00 | $230.00 | $460.00 |
| | | | $563,192.00 |
| | | | - $27,162.66[5] |
| | | | - $26,801.49[6] |
| | | | |
| | **Total Recommended** | | **$509,227.85** |

## IV.     Costs

AWC is contractually entitled to nontaxable costs pursuant to their Joint Venture Agreement with TMG for "expenses required of or by the Non-Defaulting Party to protect their interests or defend any action arising out of the Defaulting Party's breach, including court costs and disbursements and fees on a solicitor and his own client basis." (Rec. doc. 253-1 at 4). As such, the Court finds that AWC is contractually entitled to such costs within the Court's discretion.

Watt Teider seeks costs in the amount of $10,373.14, which is comprised of various expenses for air travel, ground transportation, hotel lodging, meals in hotels, deposition transcripts, reproductions, filing fees, a court reporter, *pro hac vice* costs, and court fees. No authority is cited in support of the request. Notably, nearly all costs sought have been reduced by 50%. TMG argues that the costs requested should be further reduced for items not necessary or useful, such as travel expenses for out-of-state counsel to attend depositions not used in obtaining summary judgment. (Rec. doc. 257 at 11). TMG further disputes a handful of other items including *pro hac vice* costs and costs for a court reporter. (Rec. doc. 257-2 at 1).

---

[5] This number reflects two professional courtesy discounts offered by Watt Teider. (Rec. doc. 253-2 at 5).
[6] This represents a 5% reduction of the total award for the reasons detailed above.

"Reasonableness remains the touchstone for an award of either costs or litigation expenses. Whether 'expenses are reasonable is committed to the sound discretion of the trial judge,' even when recovery is authorized by statute." *Gilmore*, 353 F. Supp. 3d at 517 (quoting *Associated Builders & Contractors*, 919 F.2d at 380). "Before the court can tax costs, it must find that the costs were necessarily incurred in the litigation and this finding must be based on 'some proof of the necessity.'" *Id.* (citing *Holmes v. Cessna Aircraft Co.*, 11 F.3d 63, 64 (5th Cir. 1994)). A district court has discretion to deny all costs and expenses when the party seeking the costs has not provided an itemized breakdown of the costs incurred and reasons for their necessity. *See Fogleman v. ARAMCO,* 920 F.2d 278, 286 (5th Cir. 1991).

28 U.S.C. § 1920 provides that a court may tax the following costs: [F]ees of the clerk and marshal; fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case; fees and disbursements for printing and witnesses; fees for exemplification and copies of papers necessarily obtained for use in the case; docket fees. . ." In line with § 1920, and the Joint Venture Agreement allowing "court costs," expenses for deposition transcripts, reproductions, filing fees, and court fees are reasonable. However, the Court declines to award $939.75 for fees of a court reporter where AWC's expense item states simply "court reporter." (Rec. doc. 253-2 at 119). It is unclear what proceeding required a court reporter. Thus, AWC failed to state the reason for the necessity of that fee. For that reason, the Court reduces the cost award by $939.75.

For reasons outlined previously, simply because depositions were not cited in AWC's motion for summary judgment does not mean they were not useful or necessary. Likewise, it was not unreasonable to employ out-of-state counsel. Accordingly, related expenses, including deposition travel costs and *pro hac vice* costs are not unreasonable. However, AWC

fails to describe the necessity of those expenses or whether they were "*required* of or by" AWC in the instant action as per the Joint Venture Agreement.  For that reason, a 10% reduction in costs is warranted, bringing the total costs award to $8,490.10.

## V.    Conclusion

For the foregoing reasons,

**IT IS RECOMMENDED** that Plaintiff, Archer Western Contractors, L.L.C.'s, Motion for Attorneys' Fees and Nontaxable Costs (rec. doc. 253) be **GRANTED IN PART** and Archer Western Contractors, L.L.C., be awarded a total of $517,717.95 ($509,227.85 + $8,490.10) in attorneys' fees.

**NOTICE OF RIGHT TO OBJECT**

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 14 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United States Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this ___8th___ day of _____July_____, 2025.

_____

**MICHAEL B. NORTH**
**UNITED STATES MAGISTRATE JUDGE**